# EXHIBIT 11

# AFFIDAVIT OF TERRY J. HULL

State of Oklahoma        )
                         ) ss:
County of Cleveland      )

I, Terry J. Hull, having first been sworn on oath, state the following:

As an attorney employed by the Oklahoma Appellate Public Defender's Office, now known as the Oklahoma Indigent Defense System (OIDS), I represented Karl Allen Fontenot throughout his first direct appeal to the Oklahoma Court of Criminal Appeals in 1985 through 1987. I represented Mr. Fontenot during a portion of his second direct appeal after retrial but left employment with OIDS in the summer of 1992 before his brief-in-chief was filed in his second appeal.

As part of my representation of Mr. Fontenot in his direct appeal, I reviewed trial files from trial defense counsel George Butner, reports from defense investigator Richard Kerner and records obtained by me through court-ordered discovery. My work product, along with trial counsel's files, defense investigator's reports and discovery, were all were retained by OIDS when I left employment there in 1992. I did not retain any of these materials or other records related to Mr. Fontenot's case.

During my representation of Mr. Fontenot in his first direct appeal, skeletal remains later identified as Donna Denice Haraway were discovered on approximately January 20 or 21, 1986, near Gerty in Hughes County, Oklahoma. Due to the timing of this discovery and the unique circumstances of the case, and in anticipation of filing a motion for new trial based on newly discovered evidence, I filed a Motion to Disclose and Produce in Pontotoc County District Court on January 30, 1986, regarding the discovery of the remains, the condition of the remains and the Hughes County crime scene, and any interviews, reports, or investigations in connection therewith. I further requested all material which was exculpatory or favorable to Mr. Fontenot, which might be used to impeach prosecution witnesses who had testified at his trial, or which might lead to the discovery of same. At a hearing on this motion conducted March 3, 1986, I made a supplemental discovery request asking for all statements placing or tending to place any other suspect or suspects at or near the location of the discovery of Ms. Haraway's remains.

On March 3, 1986, the Pontotoc County District Court entered an Order granting all of my discovery requests excepting only oral statements never reduced to writing. In granting my motion, the district court ordered, *inter alia*, that reports, medical examiner findings and photographs pertaining to the discovery of the remains, the examination of the

1

remains, the analysis of the remains and any other physical evidence uncovered at the crime scene be produced. Based upon this Order, the Pontotoc County District Attorney's Office disclosed to me two pages of Oklahoma State Bureau of Investigation (OSBI) Criminalistics Examination Reports and three pages of reports from the Office of the Chief Medical Examiner for the State of Oklahoma. These five documents were appended to the Motion for New Trial on Newly Discovered Evidence I filed with the Oklahoma Court of Criminal Appeals on August 8, 1986. These five documents were the entirety of the records disclosed to me by the State.

In the fall of 2012, Tiffany Murphy contacted me regarding the Oklahoma Innocence Project's (OIP) review of Mr. Fontenot's case. We discussed what law enforcement reports and records were disclosed to me in connection with the above-described discovery proceedings. Ms. Murphy questioned me concerning approximately 860 pages of Bates-stamped OSBI reports, which I did not recall ever having seen. In March of 2013, I reviewed approximately 860 pages of Bates-stamped OSBI reports, apparently obtained by OIDS after I left employment there. After I reviewed these documents, I confirmed to Ms. Murphy that I do not recall ever having seen them before, although I had seen the two OSBI documents and three medical examiner documents described in the previous paragraph when they were disclosed to me by the Pontotoc County District Attorney's office but without Bates stamps on them. In April of 2013, the OIP sent me additional police reports, witness statements and other documents for my review to ascertain whether they were disclosed to me during my representation of Mr. Fontenot.

During litigation of Mr. Fontenot's direct appeal and his motion for new trial based on newly discovered evidence, my main focus was his innocence. To that end, any evidence which would support proving his innocence was paramount. Evidence that law enforcement strongly considered alternate suspects for Ms. Haraway's abduction and murder would have fit into the defense's case for innocence.

Before receiving police reports from the OIP in April of 2013, I was unaware of the extensive investigation done by Ada Police Detective Dennis Smith, OSBI Agent Gary Rogers, or any other law enforcement into Floyd Degraw as a suspect. I do not recall ever knowing that Floyd Degraw was subjected to a polygraph examination by these two officers, or by anyone, nor that Floyd Degraw showed signs of deception when he was asked questions about Ms. Haraway. It also would have been helpful to know that mere days after Ms. Haraway's abduction, Detective Smith himself described to Floyd Degraw the flowered blouse Ms. Haraway was allegedly wearing when she was abducted, as I recall Detective Smith stating that he learned of this blouse description only from the confessions of Tommy Ward and Karl Fontenot many months later. This information would have been helpful to impeach the testimony of Detective Smith and to further undermine the credibility of Mr. Fontenot's confession.

2

Until provided with OSBI reports by the OIP in April of 2013, I do not recall being aware that Ms. Haraway received threatening or obscene telephone calls during the months and weeks leading up to her abduction. I do not recall having seen reports from people, such as Monroe Atkeson, Janet Lyons, David Watts and others, describing Ms. Haraway's expressions of great concern about a man making these telephone calls to her or about her safety while working at McAnally's. Combined with this information, Ms. Lyons' report providing the names of all of Ms. Haraway's ex-boyfriends would have been helpful in determining whether they were the source of these calls or had motive to cause her harm. Further, Ms. Lyons' comments that Ms. Haraway said she hated working at McAnally's because it had no alarm system, complained that the threatening or obscene telephone calls continued to occur and complained that bizarre people came into the store at night would have been helpful to establish Mr. Fontenot's innocence. These reports would have been helpful to further the defense investigation into alternate suspects or people in the vicinity of McAnally's who were watching or stalking Ms. Haraway.

Until provided with OSBI reports by the OIP in April of 2013, I do not recall being aware that Gordon Calhoun was interviewed in November of 1984 and stated he could not remember any party on the 27th of 28th of April, 1984. At the trial, Calhoun testified he specifically recalled a party at his house on April 28, 1984, and he recalled that neither Tommy Ward nor Karl Fontenot were present at that party. Until provided with OSBI reports by the OIP in April of 2013, I was unaware that Gordon Calhoun was interviewed again in December of 1984 and stated his party could have been on the week-end of April 27 or 28, 1984, and that he and a friend named Brad from Konawa, Oklahoma, went to Texas together to get the keg for this party. This information would have been helpful not only to impeach Calhoun at the trial, but to pursue Brad in order to help substantiate Mr. Fontenot's alibi during the time Ms. Haraway disappeared.

Until provided with OSBI reports by the OIP in April of 2013, I do not recall being aware that J.T. McConnell was interviewed in December of 1984 and clearly indicated a pre-existing bias he had held for years against Tommy Ward and people Ward ran around with. Such evidence would have been useful to challenge the motives behind his testimony at Mr. Fontenot's trial.

I do not recall, prior to viewing material shown to me by OIP in April of 2013, seeing the un-rolled register tape or photographs of the un-rolled register tape from McAnally's store the night of Ms. Haraway's abduction. While the register tape or a photograph of it was an exhibit at Mr. Fontenot's trial, I do not recall seeing an un-rolled version of this tape with names, telephone numbers and times written on it showing purchases made the night of Ms. Haraway's abduction or names of people who made some of those purchases that night. Interviewing these people, such as John McKinnis and Greg Keys, or being able to cross-examine Ada Police Officer Richard Holkum or witness Gene Welchel, about the notes

3

written on the actual register tape would have been important to establishing when it was that Ms. Haraway went missing, what occurred in the store that night, whether anyone else was in the store at the time of her disappearance, or whether she was even the female who Gene Welchel saw walk out of the store with a lone male. Further, I do not recall police reports detailing interviews with these individuals being disclosed to me in the discovery proceedings during the appeal, nor do I recall them being in the defense materials I obtained.

During my representation of Mr. Fontenot in the direct appeal, Ms. Haraway's remains were found near Gerty in Hughes County, Oklahoma. When I spoke with medical examiner Dr. Larry Balding about obtaining the entirety of the medical examiner's file, he advised that a court order was required for that disclosure. I do not recall being provided any additional reports from the medical examiner office, beyond those attached to my Motion for New Trial on Newly Discovered Evidence, concerning the finding or the evaluation of skeletal remains identified as Ms. Haraway's. I was unaware that the medical examiner's report in this matter was some 43 pages long until it was provided to me by OIP in April of 2013. I was unaware of the improper procedures engaged in by law enforcement regarding the processing of the Gerty/Hughes County crime scene. I was unaware of information in the full medical examiner's report which would have been very useful to challenge the State's case and the reliability of Mr. Fontenot's confession. I was unaware that the full medical examiners' report contained exculpatory evidence concerning the pieces of clothing found and which do not support Mr. Fontenot's confession. All of this evidence could have been used to support Mr. Fontenot's defense had it been disclosed.

FURTHER THE AFFIANT SAYS NOT.

_____
TERRY J. HULL, Affiant

Subscribed and sworn to before me this 5th day of June, 2013, whereupon Terry J. Hull appeared personally before me, stated her name to me, and stated the above matters were sworn by her freely and voluntarily and are true and correct to the best of her information and belief.

_____
NOTARY PUBLIC

My Commission Number: 00012614
My Commission Expires: 09-05-16

4