Tiffany Murphy (AR Bar No. 2015057)
Out-of-state counsel
Robert Ridenour (Ok Bar No. 16038)
Assistant Federal Defender
Eastern District of Oklahoma
One West Third Street
Tulsa OK 74103

**FILED**

FEB - 1 2017

PATRICK KEANEY
Clerk, U.S. District Court
By_____
         Deputy Clerk

Attorneys for Petitioner
KARL FONTENOT

### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KARL FONTENOT, <br><br> Petitioner, <br><br> v. <br><br> JOE ALLBAUGH, Department of Corrections Interim Director <br><br> Respondent. | **PETITIONER'S SEALED MOTION FOR SUBPOENA DUCES TECUM** <br><br><br> Case No. CIV 16-069-JHP-KEW <br><br> District Judge James Payne <br><br> Magistrate Judge Kimberly West |

### <u>PETITIONER'S SEALED MOTION FOR SUBPOENAS DUCES TECUM</u>

Karl Fontenot, Petitioner, by and through undersigned counsel, requests that this Court issue Subpoenas Duces Tecum for the entirety of the files from the state

1

agencies tasked with handing the investigation into the disappearance and murder of Donna Denice Harraway and the prosecution of Karl Fontenot and Tommy Ward. These agencies include the Pontotoc County District Attorney's Office, the Ada Police Department, the Oklahoma State Bureau of Investigation, and the Pontotoc County Sheriff's Office. In support of this Motion, Petitioner submits the following:

1. This Court, in its initial scheduling order, set out that discovery should be governed by the Federal Rules of Civil Procedure. *See Docket No.* 24. Therefore, Mr. Fontenot seeks subpoenas duces tecum for the agencies in accordance with Fed. R. Civ. Pro 45(a)(1)(D).

2. Prior to the filing of the initial 1080(d) state post-conviction application in 2014, the Pontotoc County District Attorney permitted a limited inspection of the crime scene and line-up photographs to the Oklahoma Innocence Project (OIP). While reviewing those photographs, one interview report written on Pontotoc County Sheriff's Office letterhead was found. This report became an exhibit in the amended 1080(d) application and to Mr. Fontenot's habeas corpus petition. *See Docket No.* 12 Ex. 62.

This report contains an interview with a co-worker of Mrs. Haraway. This report was never disclosed to any trial or appellate counsel for Mr. Fontenot during his two trials. After reviewing the information in the report, an investigator with

2

the OIP obtained an affidavit which is Exhibit 15 *See Docket No.*4. Both the interview report and subsequent affidavit are a critical part of the *Brady* claim raised in the Petition. *Id.*

3. On August 14, 2013, Mr. Fontenot sought discovery during his post-conviction proceedings before the Pontotoc County District Court. In that discovery motion, Mr. Fontenot requested disclosures from the three investigative agencies working on the Haraway case. During the course of that litigation, Mr. Fontenot received approximately 120 pages of reports from OSBI, a statement from the Ada Police Department that they did not have any evidence that undersigned counsel had not already seen, and no response from the Pontotoc County Sheriff's Office. The Ada Police Department's evidence consisted of one or two banker boxes of physical evidence from the search of O'dell Titsworth's truck and related documentation. However, no police reports or interviews that Ada police officers admitted making and taking was included in those boxes. Therefore, post-conviction counsel sought those additional documents.

4. Some of the constitutional claims raised by Mr. Fontenot in his Petition for Habeas Corpus arise from the withheld evidence from these agencies. *See Docket No.* 4 Claims 1 & 2. A prosecutor is obligated to ensure that all impeachment and exculpatory evidence is disclosed to a defendant prior to trial. *See Banks v. Dretke*, 540 U.S. 668, 691 (2004) *quoting Strickler v. Greene*, 527

U.S. at 281-82 (1999). If a petitioner is successful in establishing the actual innocence gateway or satisfying all the elements of a *Brady v. Maryland* violation, he would remove the procedural bars affecting his case and allow this Court to reach the merits of his constitutional claims. As such, Mr. Fontenot seeks subpoenas duces tecum as part of his overall discovery to substantiate his grounds for relief.

5. A habeas corpus petitioner is entitled to discovery so long as he has established good cause for that evidence requested. *See* Rules Governing § 2254 Cases Rule 6. A district court must allow discovery if the records sought establishes his right to a writ of habeas of corpus or establish grounds for the removal of a procedural bar. *See Bracy v. Grimley*, 520 U.S. 899, 908-909 (1997) *quoting Harris v. Nelson*, 394 U.S. 286, 303 (1969). Discussed in detail below, Mr. Fontenot seeks the disclosure of all of the Pontotoc County District Attorney's Offices files and notes concerning this case along with the law enforcement investigative files. Such disclosures are the norm for habeas proceedings. *See Bracy v. Gramley*, 520 U.S. 899, 902 (1997) (disclosure of prosecution materials); *Strickler v. Greene*, 527 U.S. 263, 278 (1999) (court ordered disclosure of all police and prosecution files on the case); *Ross v. Kemp*, 785 F.2d 1467, 1469, 1478-1979 (11th Cir. 1986)(production of documents); *Payne v. Bell*, 89 F.Supp.2d 967, 970-971 (W.D. Tenn. 2000)(granting production of state documents related to

4

official misconduct). The materials requested by Mr. Fontenot satisfy both. He is entitled to discovery of these records.

6.  The disclosure of all of the Pontotoc County District Attorney files, including all notes, is critical to several areas in this case. First, these files and notes will show the scope of the investigation done including the extent of the district attorney's office's involvement. The joint task force of OSBI and the APD had multiple suspects during the six months between Mrs. Haraway's abduction and the arrest and confessions. Petitioner's trial counsel requested information as to what specifically led law enforcement to target Mr. Fontenot. However, none of this evidence or documentation was disclosed. *See* Docket No. 4 Claim II.

An understanding of the involvement of the Pontotoc County District Attorney's Office will ascertain whether their actual knowledge was limited to the prosecutorial or if they knew of other suspects or witnesses who should have been made known to trial counsel. The past obstructionist behavior of the Pontotoc County District Attorney's demonstrates willful withholding of exculpatory and impeachment evidence. Such patterns of behavior have been grounds for determining constitutional violations. *See generally Miller-el v. Dretke*, 545 U.S. 231, 264 (2005).

7.  Having a better understanding of the updates on the progress of the investigation and what turned attention to Petitioner is critical to evaluating the

extent of the misconduct mentioned in Claims V & VI.  Statements made by law enforcement agencies to the press and during the trial proceedings show conflicting evidence as to what happened at McAnally's the night of Mrs. Haraway's disappearance, the alternate suspects, what statements Jeff Miller made to law enforcement and later to the district attorney that led to the arrest of Mr. Fontenot and Mr. Ward. *See* Docket 4 Exs. 26-28, 30, 43, pgs. 7-8; *see also* P/H p. 502. Each of these pieces of evidence illustrates the inconsistencies in the investigative strategy and the prosecution's theory of the case.

7. Second, the district attorney's files and notes are the best evidence illustrating Ada Police Detective Dennis Smith's actions in this case.  He was the lead spokesman concerning the case based on the numerous interviews with the press. *See* Docket No. 4 Exs. 26-28. It was his decision to bring in the OSBI to assist in the investigation shortly after Mrs. Haraway's disappearance.  Detective Smith died several years ago.  However, based on his deposition testimony in the Williamson-Fritz 42 U.S.C. § 1983 lawsuit, he explained that there were certain aspects of the investigation he handled independently of OSBI. *See id.* Ex. 54 at 253-254.  He further stated a lack of any policy about what constituted exculpatory evidence. *Id.* at 341-342.  When meeting with Bill Peterson, then Pontotoc County District Attorney, he was unsure whether he discussed case information not in the prosecutorial. *See id.* at 343-344.  The only way to be certain as to what documents

6

and evidence was handled by the state is to review the files and notes held of the Pontotoc County District Attorney's Office concerning this case.

8. Similarly, requiring the disclosure of all files and records from the law enforcement agencies conducting the investigation will allow Mr. Fontenot to prove his innocence and remove any procedural bars preventing the substantive review of his constitutional claims. Because post-conviction proceedings never settled the scope of the law enforcement investigation, Mr. Fontenot seeks a subpoena for this information now. Respondent attempted to obtain this information during those proceedings, but faced difficulty in doing so.

9. The OSBI's was the lead investigative agency in this case; as such, the case records were stored in their repository. OSBI Agent Gary Rogers was tasked with generating the prosecutorial given to the Pontotoc County District Attorney's Office as the basis of their case against Petitioner and his co-defendant, Thomas Ward. *See Docket No.* 12 Ex. 55. This prosecutorial totaled 146 pages including a table of contents which listed statements and exhibits that supported their case. *See id.* Undersigned counsel has repeatedly sought access to the statements, recordings, and reports listed therein. Specifically, undersigned counsel requested: the taped and videotaped interviews of Terri Holland and Jeff Miller. The failure to disclose Mr. Miller's information is problematic because it was the direct cause of Detective Smith and Agent Rogers interrogating Mr.

7

Fontenot's co-defendant, Tommy Ward, and then arresting and interrogating Mr. Fontenot. As of yet, OSBI has not provided that information in the 860 pages of reports ordered disclosed by the Oklahoma Court of Criminal Appeals or during state post-conviction proceedings.

10. Further, documents referenced in the 860 pages of OSBI records were not disclosed to any of Mr. Fontenot's appellate or post-conviction counsel. For example, one of the alternate suspects, Floyd Degraw, had been arrested by the Amarillo Police Department after having driven through Oklahoma possibly stopping in Ada around the time of Mrs. Haraway's abduction. OSBI sent Agent Gary Davis to Amarillo to question Mr. DeGraw who the Amarillo police arrested for raping another woman. *See Docket No. 7* Ex. 24. OSBI Agent Gary Davis received records from the Amarillo Police Department consisting of Floyd DeGraw's polygraph data, mental health records, records from the Missouri Department of Corrections and courts concerning Jeffrey Johnson, who supposedly accompanied Mr. DeGraw.

Recorded conversations between Mr. DeGraw and Gordon Elliott about Mr. DeGraw's travels through Oklahoma were obtained by law enforcement. *See Docket No.* 4 Claim II. OSBI reports reference the collection of this evidence, and undersigned counsel asked for it but did not receive them. These documents support Mr. Fontenot's claim of alternate suspects establishing not only

8

exculpatory evidence but also support the claim that trial counsel was denied viable investigative avenues to challenge the thoroughness of the police investigation.

11. On these grounds, Mr. Fontenot requests that this Court issue subpoenas duces tecum for the records listed. Counsel asks the Court to set a date certain 30 days from the date of service of the subpoenas for the named agencies to disclose these files. If there are concerns about the sensitive nature of these documents, Mr. Fontenot requests that an in camera inspection be held to alleviate those concerns.

                                              Respectfully submitted,

                                              /S/ Robert Ridenour  
                                              Robert Ridenour

                                              /S/ Tiffany R. Murphy  
                                              Tiffany R. Murphy

Dated: January 31, 2017

## CERTIFICATE OF SERVICE

This Application for Subpoena Duces Tecum was filed under seal therefore service upon opposing counsel is not required.

By: /S/ Robert Ridenour