IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KARL FONTENOT, | |
| Petitioner, | |
| v. | CIVIL ACTION<br>6:16-cv-00069-JHP-KEW |
| JOE ALLBAUGH, WARDEN, | |
| Respondent. | |

**MOTION FOR SANCTIONS, LEAVE TO AMEND PETITION FOR WRIT OF HABEAS CORPUS AND REQUEST FOR A HEARING**

Comes now, Mr. Fontenot, by and through undersigned counsel and requests that this Court permit Mr. Fontenot leave to amend his Amended Petition for Writ of Habeas Corpus based upon newly discovered evidence related to Ada Police Department Reports disclosed on February 6, 2019. These reports contain exculpatory and impeachment evidence which support both Mr. Fontenot's assertion of actual innocence, constitutional claims of *Brady* violations, ineffective assistance of counsel, and defenses to Respondent's procedural bar arguments. In support, Mr. Fontenot states the following:

FACTS

1.) On January 31, 2019, undersigned counsel became aware that the Ada Police Department had released police reports to counsel for Thomas Ward, Mr. Fontenot's co-defendant pursuant to a joint discovery motion. Exhibit Four.

2.) Respondent was served with the Ward subpoenas requesting discovery from various law enforcement agencies including the Ada Police Department. Over 300 pages of police reports were disclosed by the City Attorney of Ada to Ward's counsel and Respondent on

1

January 4, 2019. These documents are not numbered in any way and it is impossible to determine whether this is the extent of the Ada Police Reports.

3)  At no time did Respondent or the City Attorney for Ada contact undersigned counsel regarding the discovery of the Ada Police Reports.

4)  Undersigned counsel was dumbfounded to learn of the "discovery" of the Ada Police Department Reports since Mr. Fontenot had served this Court's subpoena to the Ada Police Department in February 2017 and received nothing in response. Exhibit Three.  The subpoena ordered the Ada Police Department to produce its reports about the investigation of Donna Denise Haraway's disappearance and Mr. Fontenot's prosecution. Exhibit One. In March 2017, Counsel had received a letter in response to the subpoena informing Counsel that the City Attorney Frank Stout had asked about responsive documents but been told the police department "no longer has any of the documents requested."  Exhibit Three

5) Undersigned counsel contacted Counsel for Respondent on January 31, 2019, concerning the news that previously undisclosed police reports had been received by Ward's attorneys.  Exhibit Six. Rather than acknowledge the existence of the records and admit their disclosure, Counsel instead feigned ignorance as to Mr. Fontenot's federal subpoena to the Ada Police Department.

6)  In response to Counsel's inquiry about reports that had been withheld from a federal court's subpoena, Respondent's attorney told Mr. Fontent's attorney that "we are not aware of any subpoena being served on the Ada Police Department during your habeas corpus action."[1]  Exhibit Seven. Respondent's Counsel asserted that he would contact Ada City

---

[1] In truth, Counsel for Respondent in his "Reply to Petitioner's Response to Respondent's Objection to Issued Deposition subpoenas and Discovery" filed June 8, 2017, (Dkt. #71) had told the Court that he had been provided copies of the subpoenas by Mr. Fontenot's Counsel. Dkt. 71, Pg. 5, fn 4.  That filing was in response to Mr. Fontenot's Response (Dkt. #66) in which undersigned counsel had referenced the subpoenas that were served on

Attorney Frank Stout but "he is out of town right now, but he will look into whether they were ever served with a federal subpoena." *Id.*

7) On Wednesday, February 6, 2019, Ada City Attorney Frank Stout forwarded several files containing Ada Police Department reports that had never been provided to Mr. Fontenot during 35 years of litigation and imprisonment. Mr. Stout wrote that he was, "now supplementing my response and forwarding the email with attached reports/evidence in the possession of the Ada Police Department which I previously sent to Mr. Barrett and Mr. Haire in response to Mr. Barrett's subpoena in the Ward case." Exhibit Eight. It appears from the email chain associated with Mr. Stout's communication that Respondent's Counsel had received the Ada Police reports on January 7, 2019.

8) Undersigned counsel has preliminarily reviewed the entirety of the few hundred pages of documents produced by Mr. Stout and the Ada Police Department, and examples will be cited below. However, the obvious bears stating: Respondent's Counsel has an ongoing duty to disclose exculpatory evidence, particularly in a litigation involving decades of suppression of evidence.

THE RECORDS

What follows is a list of some examples of exculpatory and impeachment evidence that Undersigned counsel have found in the new reports. First, and most distressing, are what appear to be Mr. Fontenot's confidential letters written by Mr. Fontenot on pages from a yellow legal pad to his trial attorney, George Butner. Exhibit Twelve. In these letters, he discusses his fears and concerns about the upcoming trial, provides names of people who can corroborate his alibi,

---

the Ada Police Department, the Pontotoc Conty Sheriff's Office, the Oklahoma State Bureau of Investigation, and the Pontotoc County District Attorney's Office. Dkt. #66, pg. 2.

and expresses his frustration with the people in the Pontotoc County Jail playing games with him. More importantly, he recants his confession and detailed police attempts to make him confess. Given that the Pontotoc County Jail probably did not have a color photocopier in 1984-1985, finding the original letters from a client to his defense counsel in the police records is alarming and vexing on various levels.

Other exculpatory reports include a previously undisclosed handwritten report taken from Gene Whelchel about his description of men he had seen in McAnally's. Exhibit Nine. The prosecution had argued that Mr. Whelchel was one of the men who discovered Mrs. Haraway was missing from McAnally's. The report was made on April 30, 1984, two days after Mrs. Haraway went missing provides extremely detailed descriptions of the men, down to Suspect #2 having a muscular arms, a narrow waist and larger shoulders. He describes acne scars on Suspect #2. He describes Suspect #1 as a "neat looking guy" with an athletic build and probably right handed. These details were never provided to defense counsel and would have been essential to cross examining Mr. Whelchel and other witnesses. Further, these details were not part of his testimony in any proceeding. Mr. Fontenot was neither muscular like Suspect #2, or a neat looking guy. He is slightly built, and does not have the blond hair that Mr. Whelchel attributed to Suspect #1, In sum, this was extremely pertinent information. It goes to the efficacy of police investigation and the original description put out to the public. It goes to impeachment of Mr. Whelchel.

Exhibit Ten is an interview with James Boardman, an employee with the Ada newspaper. Mr. Boardman's statements or existence have never before been disclosed to Mr. Fontenot. Apparently Mr. Boardman was in the McAnnally store at 5 p.m. on April 28, 1984, and encountered two men that in his opinion were "acting funny." He saw Mrs. Haraway there.

Ada Police officers went back to Mr. Boardman after Mr. Fontenot was arrested in October 1984. Apparently he was shown pictures of Mr. Fontenot, Ward, and Titsworth. He did not identify Mr. Fontenot as one of the men he saw, but he did make an identification in the Ward photo spread. Exhibit Ten.   His testimony is a bombshell in undersigned counsel's estimation. It provides alternative suspects. Mr. Boardman could have testified that he was at McAnally's and saw men acting strangely while Mrs. Haraway was there. It puts in doubt the timeline the prosecution used at Mr. Fontenot's trial, which tried to show Mrs. Haraway disappeared later in the day.  It certainly provided an avenue of investigation that was denied Mr. Fontenot.

Additionally, two of the witnesses whose names were written on the McAnally's register tape provided almost the exact information to the Ada Police that they did to post-conviction investigators when they provided their affidavits.  Exhibit Eleven. In Mr. Haney's notes the police wrote, " John McKinnis 8:05 PM bought pop. Man standing at counter. Large guy with full beard. He purchased Liter bottle of Pepsi. $ .50 - $1.69 + tax. WM 5'11", 195-200, 26-30 years old. Dark jeans, buttoned up shirt. Didn't see any other vehicles parked outside." Exhibit Twelve.  This report not only substantiates their affidavits, but provides concrete proof that the Ada Police Department had numerous citizens coming forward providing descriptions of men in the store and the gray pick-up before Gene Whelschel and his nephews arrived.

In addition to the exhibits attached, undersigned counsel avers that much exculpatory evidence remains to be examined in these records.  The records contain many "Tip Sheets" wherein citizens were calling into the Ada Police Department with sightings of potential suspects or calling to let know police that they had been in McAnally's.  Within the reports are a number of references to Floyd Degraw, an alternative suspect interviewed by the OSBI but never divulged to Mr. Fontenot. There were several leads on pickups that matched the description of

5

one seen by witnesses outside McAnally's when Mrs. Haraway disappeared. In addition to excellent direct evidence of suspects, alibi, or a false confession, the materials provide a wealth of impeachment, both as to the state-sponsored eyewitnesses and the police investigation.

ARGUMENT

The first reason such disclosure is problematic is due to the direct violation of this Court's subpoena to the Ada Police Department and the state court order which focused on these very documents. Exhibit 1 & 2. In his March 17, 2017, response to service of this Court's subpoena, the Ada City Attorney stated that, "I inquired of Chief Miller regarding the requested documents and he has informed me that the City of Ada Police Department no longer has any of the documents requested." Exhibit 3. Ada Police Department had similarly told counsel in Mr. Fontenot's state post-conviction proceedings that there were no records to be produced. That the police department has now "found" records for Mr. Fontenot's co-counsel that were "unavailable" in the instant and prior proceedings is exceedingly troubling.

As Mr. Fontenot has pled repeatedly, the pattern and practice of law enforcement and prosecutors of withholding and hiding records and evidence it was constitutionally bound to produce is blatant. In all instances - from Mr. Fontenot's jury trial in 1985 to the current day - his defense counsel requested these documents, yet the state feels the need to continue to play "hide and seek" Nearly 35 years later. Exhibit 1 & 2. "A rule thus declaring "prosecutor may hide, defendant must seek," is not tenable in a system constitutionally bound to accord defendants due process. "Ordinarily, we presume that public officials have properly discharged their official duties." *Banks v. Dretke*, 540 U.S. 668, 696 (2004). Yet, that does not seem to apply to the Ada Police Department.

Respondent's Counsel was in possession of exculpatory evidence for weeks without ever disclosing its existence to Mr. Fontenot or the Court.  It was only when Mr. Fontenot's Counsel confronted Respondent's Counsel – and he stonewalled – that the reports finally came. Sadly, no one should be surprised.  This is simply the latest chapter in a sorry tale of willful non-disclosure of exculpatory evidence and official abuse. But this cannot be abided. Respondent's Counsel had a duty that evidence shows he did not fulfill.  Likewise, the Ada City Attorney had received a federal subpoena specifically ordering the Ada Police Department to produce the salient reports to Mr. Fontenot. Whether it was 2017 when the reports were requested, or 2019, when they were allegedly "found," Mr. Stout had a duty to the Court comply with the subpoena.  He willfully failed to fulfill that duty.

The second concern realized by these  withheld records is the reek of unclean hands it places on Respondent.   As Respondent desperately clings to the laches doctrine to prevent this Court reaching the merits of Mr. Fontenot's claims, all the while the Respondent's  attorneys willfully ignore their continuing obligation to disclose exculpatory, impeachment, and evidence that aids a defense. *Brady vs. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 153-56 (1972); *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).   Supreme Court precedent and the Tenth Circuit Court of Appeals make clear the duty to disclose such information continues throughout the judicial process.  *Pennsylvania v. Ritchie*, 480 U.S. 39, 60, 94 L. Ed. 2d 40, 107 S. Ct. 989 (1987);  *Douglas v. Workman*, 560 F.3d 1156, 1173 (10th Cir. 2004) citing  *Smith v. Roberts*, 115 F.3d 818, 820 (10th Cir. 1997).

Respondent's attorney is counsel in both the instant case and in Mr. Ward's state post-conviction proceedings.  As such, he agreed to discovery in Mr. Ward's case in much the same

7

manner as he did in Mr. Fontenot's. Exhibit 5.  Further, he knew a state court subpoena had been issued to the Ada Police Department in late November 2018. Exhibit 5.  Yet, instead of notifying undersigned counsel when speaking about a continuance in mid-December, no word was made about the "now discovered Ada Police Reports."  The Respondent also never advised this Court of Ada Police Department's flagrant disregard of this Court's subpoena. Instead, undersigned counsel learned of the undisclosed documents' existence from Mr. Ward's counsel.  Such behavior speaks to willful ignorance at best and intentional deception at worst. It certainly obviates Respondent's laches argument.

      The actions of the City Attorney for Ada and the Ada Police Chief are tantamount to deliberate deception upon Mr. Fontenot and his defense counsel, and defiance of this Court's subpoena.  The actions of these various entities is warrants immediate remedy by this Court. Federal Rules of Civil Procedure 37 (b) (2) (A) permits the issuance of sanctions when ". . . a party or a party's officer, director, or managing agent—or a witness designated under Rule fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders."   The Court is also authorized to prohibit "the disobedient party from supporting or opposing claims or defenses" or may render a default judgment against the disobedient party. FRCP 37 (b) (2) (A) (ii) and (vi). Here, the Ada Police Department was served a subpoena issued by this Court and the City Attorney and Chief of Police made false declarations as to the evidence in their possession.

      Exacerbating the harm done to Mr. Fontenot is the domino-effect this had throughout his trial, direct appeal, state post-conviction, and proceeding through this filing.  By withholding documents requested at every facet of his case by his defense attorneys, and being denied the totality of the evidence he should have received, it has been made impossible for Mr.

Fontenot to prove his constitutional violations. The facts demonstrate that the Pontotoc County District Attorney, Oklahoma Attorney General's Office, Ada Police Department, and Oklahoma State Bureau of Investigation violated 3 different courts' orders: the Oklahoma Court of Criminal Appeals, the District Court of Pontotoc County, and the Federal District Court for the Eastern District of Oklahoma.

The impact of their defiance of these orders robbed Mr. Fontenot his ability to properly and fully present Mr. Fontenot's claims in state post-conviction proceedings and thwarted his ability to properly plead and present his evidence in state court as 42 U.S.C. § 2254 (b)(1) & (2) intended. The State's actions likely impacted the state court's decision regarding laches and stole from Mr. Fontenot the ability to present further evidence of his innocence and constitutional violations. Respondent argued in these proceedings that Mr. Fontenot failed to pursue discovery in state court by moving for summary judgment, arguing the state district court had resolved the claims. But now it comes to light that all the while - same as it ever was - that Ada Police Department and the representatives of the state had hidden information from Mr. Fontenot to this day. The four and half years that have transpired from the initial state court order and the two years from the federal subpoena make this more than an inadvertent mistake. Sanctions against these actors is necessary to demonstrate the substantial harm done to an innocent man and to redress the defiance shown to this Court. *See Sheet Metal Workers vs. EEOC*, 478 U.S. 421 (1986) ("[S]anctions in civil contempt proceedings may be employed "for either or both of two purposes: to coerce the defendant into compliance with the court's order and to compensate the complainant for losses sustained." *Id*. At 443, *quoting United States v. Mine Workers*, 330 U.S. 258, 303 (1947).

Further, Respondent's failure to alert defense counsel to these records while the case is pending is equally troubling. These reports came to light just after the Court had ordered the parties to submit proposed orders on issues like laches and exhaustion of state claims. Respondent knows that the records had a bearing on the defenses he was raising to Mr. Fontenot's claims. But counsel for Respondent stayed quiet, only acting when the fact of the newly-discovered reports came to light. He knew and agreed with the state court order for Ada Police Reports. He was aware of the Court's subpoena for the same. When he learned that these records did exist, his ethical and legal obligations was to alert undersigned counsel which he failed to do.

WHEREFORE, undersigned counsel requests:

1. A protective order for all files within the State's custody concerning the investigation and prosecution of Mr. Fontenot and Thomas Ward. This includes the Oklahoma Attorney General's Office, the Pontotoc County District Attorney's Office, the Oklahoma State Bureau of Investigation, the Pontotoc County Sheriff's Office, the Ada Police Department, the Clerk of the Court for the District Court of Pontotoc County, and the City Attorney of Ada. This protective order in no way limits or impacts upon Thomas Ward's attorneys from fully investigating and obtaining documents in his state court proceedings.

2. That Mr. Fontenot be released on bond pending the resolution of his claims. It is apparent that the actors have unclean hands and will not comply with court's orders or agreements. This Court has jurisdiction and the ability to grant bail as part of habeas corpus proceedings. *See In Re Shuttlesworth*, 369 U.S. 35, 82 S. Ct. 551, 7 L. Ed. 2d 548 (1962); (A Petitioner must "raised substantial constitutional claims upon which he has a

high probability of success, and also [that] extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." *Calley v. Callaway*, 496 F.2d 701, 702 (5th Cir. 1974) (citing *Aronson v. May*, 85 S. Ct. 3, 13 L. Ed. 2d 6 (1964) (Douglas, J. on application for bail); *Glynn v. Donnelly*, 470 F.2d 95 (1st Cir. 1972); *Woodcock v. Donnelly*, 470 F.2d 93 (1st Cir. 1972) (per curiam); *Benson v. California*, 328 F.2d 159 (9th Cir. 1964); *Boyer v. Orlando*, 402 F.2d 966 (5th Cir. 1968); *Baker v. Sard*, 420 F.2d 1342 (D.C.Cir. 1969)).   It is indisputable that the State's actions have delayed these proceedings to the detriment of Mr. Fontenot.  Further investigation must be performed into these new records, and it should not be time levied against Mr. Fontenot while he is incarcerated.

3. That Mr. Fontenot have leave to Amend his Amended Petition for Writ of Habeas Corpus including leave to investigate the other information in the Ada Police Reports regarding alternative suspects and facts related to other constitutional violations.

4. That all exhaustion bars be deemed waived by the Respondent's actions. FRCP 37 (b) (2) (A) (ii) and (vi).   Further, undersigned counsel prays this Court assess these actions when considering the veracity of Respondent's laches argument given the blatant violations of two court orders.

5. Mr. Fontenot requests a hearing wherein the parties answer to the details of these documents being "discovered" and may explain to the Court how such actions have delayed a proceeding that was almost at its end.  This hearing may also be necessary to determine whether an evidentiary hearing is necessary and other procedural issues that have now arisen in this case.

                                         */S/  Tiffany R. Murphy*

                                            Attorney at Law
                                            Arkansas Bar No. 2015057
                                            790 N. Cliffside Drive
                                            Fayetteville, AR 72701
                                            (479) 575-5036
                                            /S/ *Robert Ridenour*
                                            Robert Ridenour
                                            Assistant Federal Defender
                                            OBA #16038
                                            One West Third Street, Ste. 1225
                                            Tulsa, OK  74103
                                            (918) 581-7656

## CERTIFICATE OF SERVICE

     I hereby certify that on February 7, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Oklahoma by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


     <u>By: /S/ Robert Ridenour</u>
     ROBERT RIDENOUR