## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KARL FONTENOT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. CIV-16-69-JHP-KEW |
| | ) | |
| JOE ALLBAUGH, Director, | ) | |
| | ) | |
| Respondent. | ) | |

## RESPONSE TO PETITIONER'S MOTION FOR SANCTIONS, LEAVE TO AMEND PETITION FOR WRIT OF HABEAS CORPUS AND REQUEST FOR A HEARING

Comes now the Respondent and replies, by expedited Order of this Court (Doc.115), and responds to Petitioner's Motion for Sanctions, Leave to Amend Petition for Writ of Habeas Corpus and Request for a Hearing filed February 7, 2019 (Doc. 114). Petitioner's Motion is primarily based upon a sealed subpoena,[1] one of several, issued by this Court two years ago and served. Petitioner seeks to amend his Petition for Writ of Habeas Corpus and Motion for Evidentiary Hearing already before this Court. Petitioner also asks that sanctions be levied against Entity A and the Attorney General, and that this Court free him on bond pending the resolution of his case.

Respondent has no objection to Petitioner amending his Writ of Habeas Corpus and/or his Motion for Evidentiary Hearing. However, Respondent does object to any finding of "unclean hands," the ordering of any sanctions, bond, or any type of protective order. Respondent states the following:

1. On February 8, 2017, Petitioner served several subpoenas under seal. Aside from the brief – but unused – sixty-day opportunity Petitioner was granted to seek discovery memorialized

---

[1] Although Petitioner has attached a similar subpoena to his Motion, the subpoena remains under seal; thus, Respondent will not fully reveal its contents and only reflect the subject as "Entity A."

in a minute order (Doc. 23), Respondent has never been aware of any leave to conduct discovery ordered by this Court in compliance with Rule 6(a), *Rules Governing § 2254 Cases*, 28 U.S.C.A. foll. § 2254, or any reasons supporting such requests as required by Rule 6(b), *Rules Governing § 2254 Cases*, 28 U.S.C.A. foll. § 2254.[2] Respondent has continually objected to Petitioner's ability to conduct discovery in habeas proceedings at all, particularly under seal (*See, e.g.*, Doc. 42). Despite Respondent's objections, Respondent has never known exactly when it began or even precisely when it ended. Petitioner's complaints here have resulted from this practice.

2.      One of the sealed subpoenas was issued on February 8, 2017, together with others, and identified here as Subpoena A.      Respondent was never served with notice of Subpoena A.

3.      On March 7, 2017, Frank Stout, representing Entity A, responded that Entity A had nothing to respond to the Subpoena. Respondent was never notified by either Stout or Petitioner's attorneys when there was a response to Subpoena A, and Mr. Stout's response to it remained shielded from Respondent's view.

4.      On May 10, 2017, Petitioner sent Respondent copies of the sealed subpoenas *via* email with notice not to disseminate them (Exhibit 1). These copies contained only proof of service.

---

[2] Petitioner had been given a sixty-day period – none of it he utilized – to conduct discovery until September 26, 2016 (Doc. 23). After Petitioner's time expired, during which Respondent was ordered not to respond to Petitioner's petition, Respondent requested that this Court set a date certain for Respondent's answer to the original petition as such directive was based upon Petitioner's discovery window (Doc. 26). This Court struck the previous order on November 29, 2016, with a new scheduling order to be reset later (Doc. 29). In February 2017, Respondent became aware of one sealed subpoena (not Subpoena A) and that Petitioner was apparently commencing discovery. On March 15, 2017, this Court set a new scheduling order, with a new discovery cutoff (Doc. 44) and Respondent has repeatedly objected to any discovery without Rule 6 procedures. Respondent has never seen the bases or a concomitant order granting Petitioner leave to conduct discovery other than a generic time frame.

The sealed subpoenas did not notify Respondent of what was ever received in response to those subpoenas. Petitioner's counsel never provided Entity A's response to Subpoena A to Respondent.

5.    Petitioner conducted his last deposition in this case on June 16, 2017. No further discovery has ever been conducted in this case. Respondent has presumed any discovery that had been ordered by this Court had at least ended on this date; none to Respondent's knowledge has ever been conducted since.[3]

6.    Petitioner filed an Amended Petition for Writ of Habeas Corpus, based upon additional discovery, on August 18, 2017 (Doc. 77). Likewise, on August 18, 2017, Petitioner filed a new Motion For Evidentiary Hearing (Doc. 86).

7.    On December 8, 2017, Respondent filed a Motion to Dismiss Habeas Corpus Petition as Procedurally Barred by the Statute of Limitations and the State Bar of Laches, And Because It Includes Unexhausted Claims, as well as a Response in Opposition To Petitioner's Motion For Evidentiary Hearing (Doc. 96, 98-99). The matter has been briefed and is pending before this Court.

8.    On January 4, 2019, Stout called Respondent's Counsel Haire while he was on extended medical leave. Stout was under a pending discovery order in the state district court of Pontotoc County in the matter of *Ward v. State*, CRF-1984-183. Ward is currently in state post-conviction proceedings and was the co-defendant of Petitioner. Counsel for Respondent is litigating that case as well. Ward was also granted limited discovery by the state district

---

[3]   The Court originally allowed Petitioner's depositions to last no longer than June 15, 2017. However, when Petitioner was unable to meet this deadline for his final deposition of George Butner, the Court granted a one-day extension over Respondent's objection.

court, had an order to that effect, and Stout was attempting to fulfill a subpoena in that case. That subpoena was similar in all material respects to Subpoena A.

9.    In the context of only complying with Ward's subpoena, Stout advised that a more thorough search of Entity A revealed the existence of a sealed box and some written materials pertaining to this and Ward's case. Counsel Haire was advised that Ward's counsel had been aware of all this material for at least a week; the only question was whether a state district court order would be needed to open the sealed box to examine its materials. Counsel Haire responded that any opening of a sealed box should be done correctly under court approval. Stout never mentioned Petitioner's case, or any action he may need to take or would be taking regarding any previous response to Subpoena A in Petitioner's case. This information was also delivered to co-counsel by Counsel Haire the same day. On January 7, 2019, Stout emailed images of the box and the written materials to Counsel for Respondent. Neither counsel were aware of any response to Petitioner's sealed Subpoena A that had been provided by Entity A in March 2017, as Petitioner was collecting most of his discovery in this case privately.

10.   Respondent's counsel began assisting Ward's attorneys in discovery as ordered by the state district court which at that time was ending on January 31, 2019. That included the crafting of agreed and court-ordered access to the unsealed box held at Entity A.

11.   On January 31, 2019, Respondent's counsel Haire received an email from Petitioner's counsel. Petitioner's counsel had learned about the materials and sealed box held by Entity A from Ward's attorneys (Petitioner's Exhibit 7). Petitioner's counsel requested all copies of the materials, all of which would have been included within Subpoena A.

4

12.    On February 1, 2019, Respondent's counsel received a phone call from Petitioner's counsel demanding that sanctions be placed upon Entity A for non-compliance with Subpoena A. Respondent's counsel reminded Petitioner's counsel they had no knowledge of Stout's original 2017 response to Subpoena A. Respondent's counsel advised the more appropriate avenue would be to contact Stout and revise the response to Subpoena A to include any additional material. Respondent's counsel offered to call Stout for this purpose.

13.    During the discussion with Petitioner's counsel, Respondent's counsel was asked about having been provided a copy of Subpoena A. Counsel Haire did not recall and responded, inaccurately, in the negative. Counsel Haire's memory was quickly corrected two hours later; Petitioner's counsel finally provided the response to Subpoena A[4] that had been received from Stout (Doc. 114, Exhibit 7) and counsel reviewed his files to be sure if he was correct or not.[5] This was the very first time Respondent has ever seen a response to

---

[4]  Exhibit 1 to Petitioner's Motion is not the sealed subpoena served on Entity A. Rather, it is Doc. 40, p. 1-4, that Petitioner's counsel sent to Respondent. Although the substance is the same, the subpoena looks entirely different from that which is being represented as a true copy of what was actually served.

[5]  Petitioner's case has thousands of pages of materials. Petitioner's counsel has litigated this case for five (5) years with dozens of others, and has two (2) co-defendants who waited decades to bring their legal claims involving agencies who may have stored their materials in different places over time and are making good faith efforts to accommodate them. Respondent has also been unusually thwarted at times in this case by a mass of sealed documents. That Entity A might have found more after trying to carry out a court order in *Ward* does not mean there has been an attempt at "willful non-disclosure" (Doc. 114, p. 7) against Petitioner; it means the opposite: that Entity A is trying its best to locate as much as possible and Respondent's counsel – when he is appropriately informed of an issue in *this* case – has swiftly responded to it. Counsel simply forgot at the time, was quickly corrected, and moved fast and appropriately afterward. The personal attacks launched in this Motion are unfounded, unnecessary, and an unfortunate style of litigation before this Court.

Subpoena A (Exhibit 2). By the end of this telephone call, Petitioner's counsel appeared satisfied with Respondent's assistance in the matter.

14. Within fifteen (15) minutes of being provided Stout's response to Subpoena A for the first time, counsel Haire contacted Stout – who was out of town at the time – and responded to Petitioner's counsel. Petitioner's counsel was notified of Stout's status, and that Stout would return on February 5, 2019, to check the original 2017 letter he sent to Petitioner's counsel and do an appropriate revision if necessary (Exhibit 2). This was the first time, on February 1, 2019, that Respondent ever became aware that Stout had not taken any action at all toward revising Subpoena A for Petitioner. Counsel advised Petitioner's counsel by phone that if no word was received from Stout by the end of the week of February 8, 2019, on the matter to call Respondent so that any remedial matters could be expedited. Petitioner's counsel again appeared satisfied with the action taken by Respondent's counsel toward Subpoena A.

15. By February 5, 2019, Respondent's counsel had not heard from Stout, and decided to phone Stout again to remind him that revising his response to Subpoena A would be necessary in light of the previous response Petitioner's counsel had finally revealed to Respondent's counsel. Respondent's counsel called Petitioner's counsel to let her know that Stout would be revising the response to Subpoena A. Petitioner's counsel appeared fully satisfied with this course.

16. On February 6, 2019, Stout formally revised his response to Subpoena A to include the materials and sealed box at issue here. Stout emailed the documents to Petitioner's counsel and pictures of the sealed box.

6

17.     On February 7, 2019, at 5:28 p.m., Petitioner's counsel filed the instant motion complaining about the  conduct of Respondent and Entity A.  Petitioner's counsel seek sanctions in the form of a protective order, that all exhaustion bars be deemed "waived," and  release of Petitioner on bond.

## DISCUSSION

The instant motion has  no merit as it represents a vast over reaction to a situation involving Subpoena A.   Initially, Respondent  continues  its  objection  to  all  discovery in this matter. Petitioner's complaint regarding sanctions and a default judgment is centered on Federal Rule of Civil Procedure 37(b)(2)(A).   This Rule permits the Court to sanction a party for "[n]ot [o]beying a [d]iscovery [o]rder."  FRCP 37(b)(2)(A).  Respondent has never seen a discovery order or even a request for discovery in this case; only cut off periods and sealed subpoenas.  In fact, Respondent has specifically objected – and continues to object – to all discovery in this case.[6]  There has never been discovery appropriately requested or granted under Rule 6, *Rules Governing § 2254 Cases*, 28 U.S.C.A. foll. § 2254.  Respondent's counsel is aware of no request filed by Petitioner's counsel for leave to conduct discovery in this case, and federal law requires habeas corpus petitioners to justify, in specific terms, all requests for discovery. *See Bracy v. Gramley*, 520 U.S. 899, 903 (1997).  On this ground alone, Petitioner's Motion should be denied for his fault is great under the law compared to Respondent having to litigate mostly eyeless.

Petitioner's complaint does not appear to be about access to the materials – he has them.  Nor is this really about the sealed box – a state court is supervising its unsealing in *Ward*.   And

---

[6]   In the same vein, Respondent continues to object to the sealing of Petitioner's documents in this case.

Petitioner's complaints do not really implicate Subpoena A – Stout has corrected it. The anger in this Motion is mostly directed toward the fact Petitioner's counsel were not immediately told by Respondent's counsel about Entity A's materials once they were discovered until they found out about them in Ward's case – a period of twenty-seven (27) days from January 4, 2019, to January 31, 2019 (*see* Doc. 114, p. 7). In operatic fashion, Petitioner's has now dramatically asked this Court to "protect" the materials, sanction Respondent and Entity A, remove from Respondent all his legitimate procedural defenses, and free Petitioner even though he waited decades to come to court with his claims. Such requests are not warranted.

**A.   Respondent Has No Objection to Petitioner Being Permitted to Further Amend His Petition and Motion for Evidentiary Hearing, But No Sanctions Are Warranted.**

A subpoena (although sealed) was issued and served in 2017. Stout's response on behalf of Entity A is not consistent with what Entity A now holds. It is important to point out that Petitioner's counsel now already have all documentary materials from Subpoena A; only the sealed box remains at issue here. As laid out above, it is undisputed that Entity A has material covered by Subpoena A.

What Petitioner actually wishes is to escape the formidable procedural bars he faces in this Court with Entity A's discovery of these additional materials. Petitioner finds this flagrant enough that he requests a default judgment under Federal Rules of Civil Procedure 37(b)(2)(A)(ii) and (vi) (Doc. 114, p. 8). As noted above, Respondent has never seen a "discovery order" permitting specific subpoenas, depositions, and whatever else Petitioner has sought in this proceeding, only cutoff dates. Much less has Respondent been privy to any justification that was required to conduct it, particularly since Petitioner never utilized any of his original sixty-day period. Hence, the Rule under which he proceeds now for a remedy is somewhat unfair as Respondent is blind to whatever orders this Court

has apparently issued without notice to Respondent or an opportunity to be heard.  Be that as it may, Petitioner was permitted to have subpoenas issued under seal in this case and those are still orders of this Court.

The declarations here, to Respondent's knowledge, were not "false" simply because Entity A was later able to locate material that fell under the subpoena.  And Petitioner fails to provide any evidence that Entity A or Stout knew the materials or the sealed box existed at the time Subpoena A was answered in March 2017.  Petitioner's counsel assigns a nefarious motive simply because another court order discovered its whereabouts.  Respondent never knew of the existence of these materials or the sealed box when Petitioner was in state court and they were never hidden deliberately.  Petitioner has provided no proof at all other than the fact that it must be so because he would like it to be.   That is not proof of anything.  Petitioner waited many, many years before bringing his legal claims to any court at all.  Petitioner's case was tried over the years in two (2) different counties.  It is more reasonable to assume the materials and boxes associated with his case belonging to agencies he served with subpoenas, including Entity A, stored them after so many years and had to then look for them afterward.  It is also reasonable to believe that during storage, some of that material might have become separated.  Moreover, it is reasonable to believe that when looking for it all – and there is a lot associated with Petitioner's case – that Entity A might have inadvertently missed something it had.  What is not reasonable to believe is that licensed attorneys and those at Entity A would conspire deliberately to hide materials and conceal a sealed box to ensure that an Order of this Court would be disobeyed, and in turn willfully make sure that Petitioner was treated unfairly in this forum.

9

Finally, it cannot be forgotten that what might be "new" to Petitioner's counsel does not automatically mean that it was not available to trial counsel.  Although, we are told, this material is "exculpatory" and "impeachment" evidence that was "never provided to defense counsel," there is no proof at all that what Entity A has in its possession was *not* available to trial counsel many years ago (Doc. 114, pp. 4-6).  It is just there.  Petitioner's discussion regarding whether any of it forms the basis for a legal claim in this Court is premature and, so far, without any factual or legal basis in a habeas corpus action.  Hence, Petitioner's arduous attempt to make this much more than it seems at this point is not very convincing.

Petitioner's counsel specifically mention not "notifying" them in mid-December about the material (Doc. 114, p. 8).  As the facts above make clear, Respondent's counsel did not know about the material until January 2019; therefore, they could not have advised them of such.  Even when advised on January 4, 2019, by Stout, Stout made no mention at all of this case and spoke only of his obligation under Ward's discovery order; Respondent's response of an appropriate court order regarding unsealing could have applied to this Court as well so long as it was done appropriately.  But counsel at that time did not know Stout's plans, if any, to deal with Subpoena A in this case.  Once counsel learned that a response to Subpoena A had been made in error, counsel acted very fast to cure it so that Petitioner's counsel could move appropriately.  That is not willful and deliberate action so flagrant such that a default judgment is warranted.  FRCP 37(b)(2)(A)(vi).  And Petitioner certainly has not demonstrated the high culpability that is considered for the types of sanctions requested here.  *See, e.g., Jones v. Norton*, 809 F.3d 564, 581 (10th Cir. 2015) (upholding trial court's refusal to find culpability where a party had no independent duty to even produce evidence).

Discovery sanctions are a matter within the Court's discretion.  *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011).   Petitioner desires that his "exhaustion bars be deemed waived by the Respondent's actions" and that Respondent be prevented from raising one of its most powerful defenses against him (Doc. 114, p. 11).   In other words, Petitioner believes he should automatically be granted one of the highest sanctions possible because the conduct at issue is allegedly so terrible. In *Ehrenhaus v. Reynolds*, 965 F.2d 916, (10th Cir. 1992),[7] the court has issued guideposts for what should be considered under Rule 37(b) when determining whether a dismissal sanction is warranted:

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions.

*Ehrenhaus*, 965 F.2d at 921 (internal quotes omitted).

Though Petitioner's counsel blames much, he really proves nothing.  First, it should be noted that there is no "blatant violation of two court orders" (Doc. 114, p. 11).  Petitioner refers to a state court order and the subpoena in Ward's case.  The entity discovered more material when served with a new subpoena.  That alone does not show a "blatant violation" of anything.  Had Petitioner's discovery in this case not been conducted on the odd track where Petitioner served subpoenas under seal and received returns where Respondent never even knew about them until months later, then never knew of the formal response for nearly *two years later*, because all was sealed, perhaps a more open process would have occurred.  Petitioner's counsel cannot do his discovery in secret under seal in this Court and then complain later that he was never properly assisted in the effort by Respondent.

---

[7] Petitioner neither cites nor discusses the *Ehrenaus* factors in his Motion.

11

Respondent assisted as soon as the operative facts became available and did so very quickly. Petitioner does not show any deliberate attempt to keep material from him.

The facts above show that Stout informed Petitioner's counsel – without Respondent ever knowing – back in March 2017 that Entity A had nothing in its possession that would respond to Subpoena A. Sometime around January 2019, however, in response to a state subpoena during discovery in *Ward*, Entity A searched again and found other material. Stout's notification to Respondent's counsel of the other material concerned a sealed box and how it should be appropriately opened was in the context of Ward's discovery order. Respondent's counsel still had no knowledge at that time of what Stout's response in March 2017 had been to Subpoena A in this case, nor whether any action would be taken toward it. When Petitioner's counsel learned about the sealed box and material from Ward's counsel, they contacted Respondent's counsel. Respondent's counsel finally learned that Subpoena A had not been fully complied with after Petitioner's counsel finally provided a response from Stout – written two years before – and complained. Within minutes of learning about the noncompliance of Entity A, Respondent's counsel immediately acted to ensure that an updated response would be provided. Such an updated response was in fact provided so that Petitioner could make any appropriate requests of this Court for access to the materials. Because Petitioner's counsel represent they have had neither time nor an opportunity to weave anything from Subpoena A into a petition before this Court, it is appropriate – and Respondent has no objection given the Court's prior permission that Petitioner be granted the opportunity to amend his petition – that Petitioner be able to further amend his petition. Further, although Petitioner's counsel have made no specific request to unseal the box at issue, Respondent has no objection to Petitioner's

12

counsel having any access to that either.[8]  Petitioner, at most, has been denied access to material known to Respondent's counsel for only twenty-seven (27) days before him, and Respondent had absolutely no knowledge during that time whether Stout would respond in kind to Subpoena A, which remained sealed.  This fact cannot be stated more emphatically – it was a different case and it was *Petitioner* who chose to place Subpoena A under seal such that no discussion about it was or could be ever had about it.   Respondent's counsel cannot and will not willfully discuss the substantive contents of any subpoena sealed by this Court even if Petitioner's counsel have revealed that to him *via* emails.  It should be remembered that Petitioner has sealed his documents *from* Respondent's view, not *with* it.  This Court has given no authorization to Respondent to freely reveal any of the sealed material even when Petitioner decides to share bits of it.  Respondent's counsel was even directed by Petitioner's counsel not to reveal anything about the sealed subpoenas, which included Subpoena A (*See* Exhibit 1).  All Respondent's counsel can do, which was done in this case, is urge an entity subject to a subpoena to amend its response to a subpoena if it was incorrect. Petitioner cannot, on the totality of circumstances, expect this Court to believe he is so prejudiced by this that he is deserving of the highest sanctions possible.

Likewise, there has been little, if any, interference with the judicial process.   Both Respondent and Stout have notified Petitioner's counsel of this action, Respondent's counsel has all the material save the sealed box (which is now under the control of the state courts), and Respondent has no objection to Petitioner proceeding with his petition with additional information from this oversight that is now cured.  Petitioner obviously desires to take this route if this Court approves.

---

[8]  As Petitioner's counsel note, Respondent has been agreeable to Ward's access to these materials so long as there is state-court oversight (Doc. 114, p. 10).  There is.

There is no culpability here on Respondent regardless of Petitioner's counsel's attempt to place it. As already stated, Petitioner's complaint is reduced to only a small item that has been discovered, most of which he already has. Respondent has moved fast to ensure that the recipient of Subpoena A corrected any response previously given in 2017 so that Petitioner now has an updated response and may act upon that. Respondent also worked in good faith thinking that Petitioner's counsel were satisfied with the curative action and was given no indication after that action was taken of this current response. It is Respondent who has been working in good faith to move this case along by offering Petitioner no objection to amending his petition and motion for evidentiary hearing.

There has been no "warning" in advance about discovery obligations in this case. Respondent has never seen such a discovery order, has not heard of Petitioner making a Rule 6 showing and being granted leave of Court, and knows only of sealed subpoenas after they were served on the recipients. Thus, this Court has never beseeched Respondent to increase any discovery obligations in this case because of any alleged malfeasance.

Finally, Petitioner has offered no type of lesser sanctions even if they are appropriate here. Again, Respondent disagrees any type of sanction is appropriate given Petitioner's failure to prove any adequate reason or prejudice arising from this additional development. The only remedy Petitioner is entitled to is to have an adequate opportunity to amend his petition for writ of habeas corpus and motion for evidentiary hearing. That is an adequate remedy considering these circumstances. Petitioner has made none of the *Ehrenhaus* showings.

Therefore, Petitioner should be able to amend his pleadings without objection from Respondent. No sanctions are warranted. Petitioner has failed to prove any type of willful and

14

flagrant conduct, much less anything that was so prejudicial to him that dismissal or removal of defenses or procedural bars is the only reasonable remedy under the circumstances. Should this Court consider any remedies for Petitioner short of Respondent's concessions to allowing him to amend his pleadings, Respondent expressly requests to be heard in person.

**B.     A Protective Order Is Not Necessary.**

Petitioner has requested a sweeping "protective order for all files within the State's custody" which, among other entities, would also include those of the "Attorney General" (Doc 114 p. 10). Petitioner's requested protective order "in no way limits or impacts upon Thomas Ward's attorneys from fully investigating and obtaining documents in his state court proceedings" (Doc. 114, p. 10). It is important to note that neither Entity A, nor any of the other five (5) entities Petitioner wishes to bind by his Motion have ever been served with notice of this Motion and given an opportunity to respond. Respondent's counsel phoned Petitioner's counsel Ridenour on February 8, 2019, to inquire as to what such an order would require; counsel Ridenour could not describe such an order. Respondent objects to this protective order. Rule 26(c)(1) FRCP requires that any such motion include a "certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Nowhere has Petitioner taken this required course for a protective order. In fact, Petitioner's counsel have done the opposite by ignoring Respondent's good faith attempts and immediately proceeding to this Court. Petitioner's counsel have filed no motion including such a certification, nor has a legitimate attempt to resolve their problem without this Court's action been previously taken. A protective order under these circumstances has not been properly shown and is unnecessary.

No such order can reasonably be placed on the Attorney General, for any files pertaining to this case also contain work product and privileged information to which others might also have access.   Further, if Petitioner has already subpoened the other entities, then he already has any information to which he is entitled.   Regarding the sealed box, as Petitioner has already noted, the state district court is already supervising the control of that material.   Petitioner does not explain how such an order can be implemented, why it should be implemented, or how it would not "limit or impact" Ward's control of the sealed box.   At some point, the box will be unsealed by the state court; Petitioner appears to acknowledge and be okay with that process.   There is no indication that, with a federal subpoena in hand from this Court controlling the box, that Petitioner will lose control of his access in any way.   Petitioner also, by his statement for relief, acknowledges Ward's access to the sealed box in state court by an agreed order with Respondent (Doc. 114, p. 10).   A protective order might permit Ward (and Petitioner) full access, but it does not account for Respondent's access as the state court order does.   The better course is to continue to allow the state court to supervise and permit access to the sealed materials, and to that Respondent has no objection.

Petitioner's requested protective order should be denied in its entirety.   Should this Court enter any type of order in this regard, Petitioner should only allow agreed access with Respondent to the sealed material. Respondent expressly requests to be heard in person if a broader order is considered more appropriate.

## C.   **Petitioner's Request for Bond Should Be Denied.**

Among the requests for sanctions made in Petitioner's motion, Petitioner asks that he be released on bond pending the resolution of his habeas corpus petition.   Petitioner avers that this Court has the ability to grant bail as part of habeas corpus proceedings, citing *In Re Shuttlesworth*,

369 U.S. 35 (1962).   Ignoring his own decades-long delay in beginning to seek collateral relief, Petitioner alleges that the State's actions with regard to the recently discovered box of material from Entity A have delayed these collateral proceedings to his detriment.   Because Petitioner is under a lawful state judgment and sentence for murder to which he confessed, and no Court has ever determined that Petitioner did not commit the crimes against Mrs. Haraway, Petitioner should remain incarcerated pending the outcome of this federal habeas corpus proceeding.

In *Pfaff v. Wells*, 648 F.2d 689 (10th Cir. 1981), the Tenth Circuit Court of Appeals noted that "[d]espite the lack of specific authority, it is within the inherent power of a federal district court to enlarge a state prisoner on bond, pending hearing and decision on a petition for habeas relief." *Pfaff*, 648 F.2d at 693.   "However, a showing of exceptional circumstances must be made for such relief, or a demonstration of a *clear case* on the merits of the habeas petition." *Id.* (emphasis added).[9]   *See also Stow v. Merrill*, Case No. 94-1282, 1994 WL 377629, *1 (10th Cir. Jul. 20, 1994)[10] (unpublished) (court would review district court's denial of bail pending district court's determination of habeas petition under 28 U.S.C. § 2241 "under a deferential standard, deciding whether petitioner has raised a substantial issue on which he is likely to prevail, and whether exceptional circumstances exist which warrant granting bail.").   Moreover the Supreme Court in *Hilton v. Braunskill*, 481 U.S. 770, 776-777 (1987), recognized that when determining release from

---

[9]  Other Circuit Courts have required a showing of both extraordinary circumstances *and* a clear case on the merits before bond could be considered in a habeas proceeding.  *See, e.g., Mapp v. Reno*, 241 F.3d 221, 226 (2d Cr. 2001); *Landano v. Rafferty*, 970 F.2d 1230, 1239 (3d Cir. 1992); *Martin v. Solem*, 801 F.2d 324, 329 (8th Cir. 1986); *Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993).  Respondent was unable to find any published case from the Tenth Circuit wherein the Tenth Circuit revisited this issue since *Pfaff*.

[10]  Unpublished decision by the Tenth Circuit Court of Appeals cited for its persuasive value only pursuant to Fed. R. App. P. 32.1 and Tenth Circuit Court of Appeals Rule 32.1.

custody, additional factors such as petitioner's danger to society, length of sentence, and risk of flight should be considered.

Although the District Court is authorized in the exercise of its discretion to release a habeas petitioner on bail or bond where the judge deems it advisable, this power is exercised only in very unusual cases. *Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993) ("Since a habeas petitioner is appealing a presumptively valid state conviction, both principles of comity and common sense dictate that it will indeed be the very unusual case where a habeas petitioner is admitted to bail prior to a decision on the merits in the habeas case.") As the Supreme Court instructs:

> A habeas petitioner is incarcerated because he has been tried, convicted, and sentenced by a court of law. He now attacks his conviction in a collateral proceeding. It is obvious that a greater showing of special reasons for admission to bail pending review should be required in this kind of case than would be required in a case where applicant had sought to attack by writ of habeas corpus an incarceration not resulting from a judicial determination of guilt. In this kind of case it is therefore necessary to inquire whether, in addition to there being substantial questions presented by the appeal, **there is some circumstance making this application exceptional and deserving of special treatment in the interests of justice.**

*Aronson v. May*, 85 S. Ct. 3, 5 (1964) (citations omitted) (emphasis added). As Respondent has previously noted, the only thing "exceptional" about the instant habeas corpus action is the unprecedented amount of discovery that was apparently granted to Petitioner – though Respondent has never seen a formal request for discovery or discovery order short of a simple cutoff date in a minute order – in this type of proceeding.

Therefore, this case is not deserving of the special treatment which Petitioner requests in asking this Court to release him on bond. This is especially true in light of the danger to society posed by the release of Petitioner and the length of the sentence imposed against him, which

18

necessarily suggest a flight risk. While Petitioner has alleged his actual innocence, Respondent has repeatedly demonstrated that his habeas petition fails to show his actual innocence, that is, that Petitioner actually did not do the crimes for which he was found guilty. *See Gilbert v. Scott*, 941 F.2d 1065, 1068 n.2 (10th Cir. 1991) (reasoning "[c]ases involving a fundamental miscarriage of justice 'are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.'" (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). In this case, Petitioner was found guilty of Robbery With a Dangerous Weapon, Kidnaping, and Murder in the First Degree. *Fontenot v. State*, 881 P.2d 69, 73-74 (Okla. Crim. App. 1994). The Court of Criminal Appeals found that Petitioner's confession to murder was corroborated in nine separate ways, which showed the trustworthiness of Petitioner's confession and thus its competence. *Fontenot*, 881 P.2d at 78-79. Petitioner's co-defendant Ward also confessed to the crimes, and implicated Petitioner. *Id.* at 76.

Moreover, Petitioner narrowly avoided the death penalty in this case, agreeing to accept a sentence of Life Without Parole rather than face a third sentencing jury. As the Supreme Court noted in *Hilton*, "[t]he State's interest in continuing custody . . . will be strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served." *Hilton*, 481 U.S. at 777. The State's interest is at its greatest where the sentence is life imprisonment. *See Franklin v. Duncan*, 891 F. Supp. 516, 521 (N.D. Cal. 1995) ("Where, as here, petitioner has a life sentence and the remaining portion of the sentence to be served is long, this factor weighs against release."). Again, there has been no determination by any Court that Petitioner did not commit the crime. Petitioner has a lawful judgment and sentence after having twice been found guilty by Oklahoma juries of committing murder and two other very serious

offenses.  *See Franklin*, 891 F. Supp. at 521 ("Murder is an extremely serious charge which by its nature would seem to pose a heightened risk of flight"); *Etherly v. Schwartz*, 590 F.3d 531, 532 (7th Cir. 2009) (reasoning that the State's interest in continuing custody was strong due to the fact that Petitioner was convicted by a jury for first-degree murder).  Even if this federal habeas proceeding were to ultimately result in the granting of a conditional writ requiring a new trial for Petitioner, Petitioner would be incarcerated during the preparation for such a subsequent trial.

For these reasons, the strong interest of the public in not having a confessed murderer released during the pendency of his habeas proceeding weighs in complete favor of incarceration during the remainder of this habeas process.  To grant Petitioner bond as a "sanction" for the fact that certain materials were discovered in response to Petitioner's co-defendant's subpoena in state court, which were inadvertently not found following a prior search pursuant to Petitioner's subpoena in 2017, would be unreasonable and would ignore the considerable risk to public safety posed by such an order.  Petitioner has not shown that the failure to discover this additional material by Entity A was anything other than an oversight.  Indeed, it appears that the subpoena in *Ward* in late 2018 merely caused Entity A to make a fresh search after Subpoena A had been served and answered in early 2017.

Moreover, Respondent has also demonstrated herein that as soon as Entity A's prior response to Petitioner's 2017 subpoena was brought to Respondent's attention, Respondent promptly contacted the attorney for Entity A who, in turn, promptly corrected the original oversight.  In spite of the fact this material was promptly turned over to Petitioner's counsel once it was determined he had not previously received it, Petitioner nevertheless has filed this unnecessary motion for sanctions.  While Respondent does not object to Petitioner having additional time to look through

20

the material in question and even further amending his habeas petition if Petitioner's counsel truly believe that is in Petitioner's best interest at this stage of the litigation, Respondent submits that nothing in the material in question changes the fact that Petitioner is guilty of all the crimes charged. Much less has Petitioner shown that any of the material in question was withheld in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).[11]

For all the above reasons, as well as for the reasons previously set forth in Petitioner's Motion to Dismiss, Reply to Response to Motion to Dismiss, and other pleadings, Petitioner's request for bond should be denied. Petitioner confessed his guilt to murdering the victim in this case and it is "obvious that a greater showing of special reasons for . . . bail pending review should be required" and Petitioner has not demonstrated the existence of some exceptional circumstance deserving of special treatment in this case. *Aronson*, 85 S. Ct. at 5.

Petitioner's request for bond as a sanction should be denied. Should this Court consider bond or any other type of release of Petitioner, Respondent expressly requests to be heard.

**D.    Hearing.**

Respondent welcomes a hearing on this motion for sanctions, if necessary. Petitioner's discovery in this case also implicates when he ever showed good cause for discovery as required under Rule 6(b), *Rules Governing § 2254 Cases*, 28 U.S.C.A. foll. § 2254. And Petitioner should have produced reasons justifying any leave of court granted Petitioner to pursue discovery pursuant to Rule 6(a), *Rules Governing § 2254 Cases*, 28 U.S.C.A. foll. § 2254. Finally, Petitioner has never

---

[11]   Indeed, this begs the question how a letter between Petitioner and his trial counsel, George Butner, could ever be considered "withheld" from Petitioner in violation of *Brady*. By its existence, the letter demonstrates that Petitioner and his trial attorney were aware of the letter's contents.

enunciated the legally protected interest he has apparently been showing to continually file so many documents in this Court under seal in this case pursuant to LCvR 79.1(a).

Respondent has not delayed this proceeding. Respondent has offered a reasonable remedy that will allow Petitioner to revise his matter before this Court that will not change his arguments at all, but merely add to those he already has in his petition.

**E.    Conclusion.**

Respondent has always acted in good faith in these proceedings. Thus, Petitioner is not entitled to sanctions against Respondent. Petitioner is also not justified in receiving sanctions against Entity A for he has shown no cause for such. Petitioner is entitled, without objection from Respondent should this Court permit it, to amend his petition for writ of habeas corpus and motion for evidentiary hearing based upon updated Subpoena A. However, Petitioner has shown no legitimate cause for a protective order other than Subpoena A now being corrected and the state court supervising the sealed materials at this time. Petitioner may appropriately petition this Court for any supervised viewing and/or copying of the sealed materials and Respondent will not object to such. Petitioner – a confessed convicted murderer serving a life without parole sentence – should not be freed to society on bond for any of the reasons cited. Finally, Respondent specifically asks for a hearing on all these issues should this Court be inclined to grant Petitioner the relief he requests. And Respondent requests that such hearing include all issues surrounding discovery in this case to include Petitioner's right to it, the cause justifying it, the order allowing it, and the opening of all appropriate sealed documents in this case so that Respondent may know their contents.

22

Respectfully submitted,

**MIKE HUNTER**
**ATTORNEY GENERAL OF OKLAHOMA**

**s/ MATTHEW D. HAIRE**
**MATTHEW D. HAIRE, OBA #14916**
**ASSISTANT ATTORNEY GENERAL**

313 NE 21st Street
Oklahoma City, OK 73105
(405) 521-3921
(405) 522-4534 Fax
Service email: fhc.docket@oag.ok.gov

**s/ THEODORE M. PEEPER**
**THEODORE M. PEEPER, O.B.A. #19909**
**ASSISTANT ATTORNEY GENERAL**

313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
(405) 522-4534 (Fax)
Service email: fhc.docket@oag.state.ok.us

**ATTORNEYS FOR RESPONDENT**

23

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of February, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Robert Ridenour, OBA # 16038
Assistant Federal Defender
One West Third Street, Ste. 1225
Tulsa, OK 74103

Tiffany R. Murphy, Arkansas Bar # 2015057
790 N. Cliffside Drive
Fayetteville, AR 72701

s/ MATTHEW D. HAIRE

s/ THEODORE M. PEEPER