# EXHIBIT

# 97

**TERRY J. HULL**
**Attorney at Law**

P.O. Box 1453
Norman, OK   73071
(405) 837-9700 [text only]


March 8, 2019


Ms. Tiffany R. Murphy
Assistant Professor of Law
University of Arkansas School of Law
Law School Legal Clinic
1045 W. Maple Street
Waterman Hall – Room 107
Fayetteville, AR   72701

Re:   Receipt and Review of Letter from Karl Fontenot to George Butner (Ex. 12); and of report of Interview of Dorothy Edwards dated 11-27-84

Dear Tiffany:

    Thank you for emailing me an un-dated 12-page hand-written letter signed by Karl Fontenot to (apparently) George Butner, appearing on yellow legal pad paper and recently disclosed by the Ada Police Department or its agents, which I received on March 5, 2019, and have since reviewed.  On March 7, 2019, you also emailed me a copy of typed "Interview with Dorothy Edwards" reflecting her 1-page statement taken by a "D.W. Barrett Reporting Officer" on 11-27-84, which I have also reviewed.

    To the best of my recollection and belief, I have never before seen either the above-described letter or this report of interview with Dorothy Edwards.

    You will recall that, in anticipation of filing a motion for new trial based on newly discovered evidence in the first direct appeal, I engaged in formal discovery in the Pontotoc County District Court in late January through March of 1986, beginning approximately 10 days after the discovery of Ms. Haraway's remains.  In March of 1986, the District Court entered a formal Order granting all of my discovery requests (with the exception of request for oral statements never reduced to writing) including, *inter alia*, any material which was exculpatory or favorable to Karl Fontenot, which might be used to impeach prosecution witnesses who testified at his trial, or which might lead to discovery of same.

Ms. Tiffany R. Murphy			March 8, 2019			Page Two

In Spring of 2013, 27 years after entry of the discovery Order, you showed me some 860 pages of OSBI reports, and then an additional several hundreds of pages of law enforcement materials, not previously provided me but in existence in March of 1986. Thus, I should be inured to learn that you and Mr. Ward's counsel have only recently been provided yet more materials that fell within the 1986 discovery Order, yet not previously disclosed. But, I find that I still have the ability to be shocked and saddened by the State's continual suppression of evidence in Karl's and Tommy's cases. This is especially so in the face of the State's defense of "laches."

The discovery of the second crime scene after Karl's first trial provided crucial defense evidence, in that on every point capable of independent corroboration from what was not allowed to be destroyed at that scene, Karl's confession was proven false. But two additional categories of evidence were necessary to overcome the power of a videotaped confession and the failure to secure complete evidence from both crime scenes: (1) impeachment of material State's witnesses' testimony (on subjects such as when the lavender flowered blouse description was given to the police and whether Ms. Haraway was even wearing it; whether the couple and the pickup Gene Welchel and his nephews saw were even related to the disappearance of Ms. Haraway; the time at which Ms. Haraway actually disappeared from the store; Karl Fontenot's alibi; etc.) and (2) a viable alternative suspect for whom connective evidence existed. The materials you have shown me since 2013 provided actual and contemporaneous evidence bearing on both of these categories. While I was appellate and not trial counsel in Karl's case, I would have presented many of these materials to the appellate court in my Motion for New Trial Based on Newly Discovered Evidence appellate proceedings, and I would have provided all of these materials to Karl's attorney for a second trial to use to effectively defend him.

As to the 12-page hand-written letter signed by Karl Fontenot and (apparently) written to "George" Butner and what I would have done had it been disclosed to me. During the first direct appeal, George Butner provided me his trial file, which I copied and returned to him. Had this letter been provided to me in discovery, I would first have tried to determine why I was looking at what appears to be an original client letter and why I had not seen it in Mr. Butner's trial file. Also, I would have had evidence of Karl's early protestation of innocence and statement that his "confession" was false. I would have compared Karl's list of alibi witnesses (Page 9 of letter) to George Butner's trial file to determine who had been interviewed and who needed to be either newly or re-interviewed. This new or re-interview process would have been substantially informed by law enforcement reports of contemporaneous interviews with some of these witnesses which you provided to me in Spring of 2013. If, that is, I had been provided with those reports. I would also have sought to discover the identity of

Ms. Tiffany R. Murphy                March 8, 2019                Page Three

and to have interviewed the female deputy/police officer whose son may have told her he was present during the keg party which formed Karl's alibi (Page 10 of letter); this is something I have never known anything about until seeing it in the 12-page hand-written letter you emailed me on March 5, 2019.

As to the 1-page Interview with Dorothy Edwards report by D.W. Barrett dated 11-27-84, I would have uncovered an independent character witness who could also relate Karl's early protestation of innocence. Moreover, when viewed with the whole content and tenor of Karl's 12-page letter, I would have had a far better understanding of how Karl could be brought to confess to something so horrible if he did not do it. Read together, I would have better understood the confusion and vulnerability and hopelessness of this young man suffering from the trauma of being orphaned after watching his mother die. This would have been important information to provide to trial counsel to better help him or her prepare for exploring and presenting expert assessment and testimony to explain at his second trial the particular phenomenon of Karl's false confession.

Sincerely,

*Terry J. Hull*

Terry J. Hull