IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

_____

KARL FONTENOT,                                    :
                                                  :
            Petitioner,                           :
                                                  :            CIVIL ACTION
      v.                                          :        6:16-cv-00069-JHP-KEW
                                                  :
JOE ALLBAUGH, WARDEN,                             :
                                                  :
            Respondent.                           :
                                                  :
_____                 :

_____

**RESPONSE TO RESPONDENT'S SECOND MOTION TO DISMISS
AND BRIEF IN SUPPORT OF MOTION TO DISMISS MR. FONTENOT'S
SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS**
_____

Tiffany R. Murphy
Attorney at Law
Arkansas Bar No. 2015057
790 N. Cliffside Drive
Fayetteville, AR 72701
(479) 575-4573

Robert Ridenour
Assistant Federal Defender
OBA #16038
One West Third Street, Ste. 1225
Tulsa, OK  74103
(918) 581-7656

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... i

ARGUMENT .............................................................................................................1

    I.     Mr. Fontenot's Second Amended Petition for Writ of Habeas Corpus is
           Properly Before this Court ...................................................................1

    II.    Mr. Fontenot's Claims Should Be Considered Exhausted Based Upon the
           Futility of Returning to State Court as a Successor ................................3

    III.   Mr. Fontenot's Fundamental Right to Counsel was *Per Se* Violated by the
           Ada Police Department's Interference with Attorney-Client Privilege Sixth
           and Fourteenth Amendment Violation.................................................10

    IV.   Laches is an Invalid Affirmative Defense and Should Not Preclude this Court
           Reviewing Mr. Fontenot's Claims on the Merits...................................13

        A.  Respondent's Assertion Of Laches Is Moot Due To Their Unclean Hands..........14

        B.  Mr. Fontenot Meets The Cause And Prejudice Standard If The Procedural Bar
            Is Found To Be Valid.....................................................................16

        C.  Respondent's New Witness ................................................................20

    V.    Mr. Fontenot Established the Actual Innocence Gateway that Removes all
           Procedural Defaults.........................................................................21

CERTIFICATE OF SERVICE .................................................................................26

# TABLE OF AUTHORITIES

## Cases

*Banks v. Dretke*, 540 U.S. 668 (2004) ............................................................. 16, 19
*Bear v. Boone*, 173 F.3d 782 (10th Cir. 1999).......................................................... 4
*Brady v. Maryland, 373 U.S. 83 (1963)*............................................................... 5, 12
*Case v. Hatch*, 731 F.3d 1015 (10th Cir. 2013) ....................................................... 21
*Coleman v Thompson*, 501 U.S. 722735 (1991) ........................................................ 4
*Doe v. Jones*, 762 F.3d 1174 (10th Cir. 2014).................................................... 1, 3
*Douglas v. Workman*, 560 F.3d 1156 (10th Cir.  2009)..................................... 8, 15, 18
*Duckworth v. Serrano*, 454 U.S. 1 (1981) .............................................................. 4
*Edwards v. Carpenter*, 529 U.S. 446 (2000) ........................................................... 9
*Goodwin v. Oklahoma*, 923 F.3d 156 (10th Cir. 1991)................................................ 7

*Gradiz v. Gonzales*, 490 F.3d 1206 (10th Cir. 2007)..................................................................9

*Granberry v. Greer*, 481 U.S. 129 (1987) .........................................................................3, 8, 9

*Harris v. Champion*, 15 F.3d 1538 (10th Cir. 1994) .............................................................3, 9

*Harris v. Reed*, 489 U.S. 255 (1989) ........................................................................................4

*Holland v. Florida*, 560 U.S. 631 (2010)................................................................................14

*House v. Bell*, 547 U.S. 518 (2006) ...........................................................................9, 21, 24

*Johnson v. State*, 823 P.2d 370 (Okla. Crim. App. 1991)..........................................................4

*Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992)..........................................................................25

*Kuhlmann v. Wilson*, 477 U.S. 436 (1986) ............................................................................25

*Kyles v. Whitley*, 514 U.S. 419 (1995).....................................................................................19

*McClesky v. Zant*, 499 U.S. 467 (1991) ................................................................................25

*McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013)...................................................................1, 3

*Milone v. Camp*, 22 F.3d 693 (7th Cir. 1994) ..........................................................................9

*Moore v. Gibson*, 27 P.3d 483 (Okla.Crim. App. 2001) .........................................................13

*Moore v. State*, 889 P.2d 1253 (Okla. Crim. App. 1995).........................................................4

*Murray v. Carrier*, 477 U.S. 478 (1996).............................................................................3, 24

*Nancy Jones v. Estate of Cole*, 483 Fed. App'x 468 (10th Cir. 2012) ....................................14

*Picard v. Connor*, 404 U.S. 270 (1971)....................................................................................3

*Rose v. Lundy*, 455 U.S. 509 (1982) .........................................................................................3

*Schlup v. Delo*, 513 U.S. 298 (1995) ..........................................................................1, 9, 21

*Shillinger v. Haworth*, 70 F.3d 1132, 1140 (10th Cir. 1995)...............................................12

*Slaughter v. State*, 108 P.3d 1052 (Okla. Crim. App. 2005)....................................................6

*Smith v. Baptist Foundation of Oklahoma*, 50 P.3d 1132 (2002) ..........................................14

*Smith v. Roberts*, 115 F.3d 818 (10th Cir. 1997) ...................................................................15

*Story vs. Hefner*, 540 P.2d 562 (Okla. 1975)..........................................................................14

*Strickler v. Greene*, 527 U.S. 263 (1999)..............................................................................16

*Stugis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts*, 908 F.3d. 313 (8th Cir. 2018).......14

*United States v. Bagley*, 473 U.S. 667 (1985)...............................................................17, 18

*Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464 (1st Cir. 2009)...................................14

*Williamson vs. Reynolds*, 904 F. Supp. 1529 (E.D. Okla. 1995) ...........................................16

*Yeager v. Fort Knox Sec. Products*, 602 F. App'x 423 (10th Cir. 2015) .................................14

## Statutes

22 O.S. § 1086 .....................................................................................................................4, 13

22 O.S. § 1089(D)(8)(b)(2) ........................................................................................................6

28 U.S.C. § 2254(c) ...................................................................................................................3

28 U.S.C. 2254(b)(l)(B)(ii) ........................................................................................................4

## Rules

Oklahoma Rules of Professional Conduct Rule 1.7.....................................................................1

Rule 9.7(G)(3), Rules of the Court of Criminal Appeals, 22 OKLA. STAT. Ch. 18, app'x (2003)............8

Rule 5.5, Rules of the Oklahoma Court of Criminal Appeals, 22 OKLA. STAT. Ch. 18, app'x (2003)......8

I.   **MR. FONTENOT'S SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS IS PROPERLY BEFORE THIS COURT**

Mr. Fontenot's Second Amended Petition is properly before this Court based on his actual innocence for the crimes he was convicted.  *See* Docket. No. 99 at 7.   The Supreme Court has recognized that a manifest injustice cures the procedural defects plaguing a habeas petition. "A credible showing of actual innocence provides an outright equitable exception to AEDPA's statute of limitations." *Doe v. Jones*, 762 F.3d 1174, 1182 (10th Cir. 2014) (*quoting McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931-33 (2013)). Mr. Fontenot must provide "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  Both in state post-conviction and in the current proceedings, Mr. Fontenot has presented witness statements, police reports, expert records and other evidence establishing his actual innocence.  This evidence falls within the "new reliable evidence" prescribed by both *Perkins* and *Schlup*.

*Perkins* does require diligence, so Mr. Fontenot is obligated to address any delay in filing his post-conviction application.  Contrary to Respondent's suggestion, Mr. Fontenot has never pled nor alleged ineffective assistance of post-conviction counsel.  However, to explain any delay, the Court must consider causes external to Mr. Fontenot for an undue delay.  The delay in filing was occasioned by an actual and constructive conflict that existed from Mark Barrett's improper actions.[1]  Under Oklahoma Rules of Professional Conduct Rule 1.7:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

---

[1] Mark Barrett continues to represent Thomas Ward in his state post-conviction litigation.

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Notwithstanding subsection (a), subsection (b) regulates possible concurrent conflicts of interest by permitting a lawyer to engage in dual representation of clients if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

As Mr. Fontenot has previously asserted, his innocence claims conflict with Thomas Ward's, Mr. Fontenot's co-defendant.  Docket No. 4, pp. 87, 127.  That conflict is the reasons why there has been a difference in the claims presented by Mr. Fontenot and Mr. Ward.  Further, as Mr. Fontenot has previously explained, there is no release or authorization from Mr. Fontenot to Mr. Barrett to obtain his files or to co-representation.

A repeated pattern of failing to comply with court orders and subpoenas plagues the State and resulted in the necessity of the Second Amended Petition.  During state post-conviction, Mr. Fontenot requested the very records from the Ada Police Department that are now at issue.  Post-conviction counsel was told that the records did not exist. *See* Ex. 5.  Mr. Fontenot again sought these records in federal habeas corpus proceedings.  The City of Ada Attorney informed undersigned counsel that there were no records. *See* Ex. 6.  Clearly, both statements were lies.

Even more egregious is the fact that no one requested the evidence technician look for the requested records. *See* Docket No. 146 at Pg. 137, lines 4-10.

As this Court assesses Mr. Fontenot's actual innocence and constitutional claims, it must also consider the Respondent's, Pontotoc County District Attorneys' Office, and law enforcement's repeated attempts to thwart the full disclosure of exculpatory, impeachment, and evidence that aids a defense over the last three decades.   Many of the procedural hurdles Mr. Fontenot now faces are due to the unethical and cavalier actions of the State.  For these reasons, the Supreme Court recognizes the need to excuse procedural defects upon a showing of a manifest injustice. *See Murray v. Carrier*, 477 U.S. 478, 496 (1996); *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013), *Doe v. Jones*, 762 F.3d 1174 (10th Cir. 2014).

## II.     MR. FONTENOT'S CLAIMS SHOULD BE CONSIDERED EXHAUSTED BASED UPON THE FUTILITY OF RETURNING TO STATE COURT AS A SUCCESSOR.

While Mr. Fontenot concedes that his second amended habeas corpus petition is now a mixed petition, i.e. containing both exhausted and unexhausted constitutional claims, his entire petition can be reviewed on the merits by this Court due to the futility of exhaustion.  According to 28 U.S.C. § 2254(c), constitutional claims must be fairly presented to the state court prior to being raised in a federal habeas corpus petition. *See Picard v. Connor,* 404 U.S. 270, 277, 278 (1971); *Rose v. Lundy*, 455 U.S. 509 (1982).  Although interests of federalism and comity create a presumption in favor of requiring a petitioner to exhaust available state remedies, the failure to exhaust is not an absolute bar to federal jurisdiction over a habeas petition. *See Granberry v. Greer*, 481 U.S. 129, 141 (1987); *Harris v. Champion*, 15 F.3d 1538, 1554-55 (10th Cir. 1994). Courts recognize it is futile for a petitioner to return to state post-conviction when state courts

fail to provide substantive review of constitutional claims. *See Bear v. Boone*, 173 F.3d 782, 785 (10th Cir. 1999).

If a state routinely imposes a procedural bar on those claims which are being exhausted, the exhaustion requirement may be bypassed. *See Duckworth v. Serrano,* 454 U.S. 1, 3 (1981) ("An exception is made only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief.") *Coleman v Thompson*, 501 U.S. 722735 n. 1 (1991); *Harris v. Reed*, 489 U.S. 255, 269 (1989) *concurring opinion*. Okla. Stat. tit. 22 § 1086 delineates when successor post-conviction applications are permitted.

> All grounds for relief available to an applicant under this act must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily, and intelligently waived in this proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was no asserted or was adequately raised in the prior application.

Oklahoma's successor state post-conviction process is ineffective in providing any hope of substantive review of Mr. Fontenot's constitutional claims. In practice, the claims that Respondent asserts that Mr. Fontenot needs to exhaust would be procedurally barred in a successor application.[2] *See Johnson v. State*, 823 P.2d 370, 372 (Okla. Crim. App. 1991); *Moore v. State*, 889 P.2d 1253 (Okla. Crim. App. 1995). Therefore, federal habeas relief is available. 28 U.S.C. 2254(b)(l)(B)(ii).

---

[2] Respondent argues that the ineffective assistance of appellate counsel claim is unexhausted while Mr. Fontenot asserts that is exhausted. (*see* Docket No. 111 at Pg. 6), but this section addresses Respondent's assertion in an abundance of caution.

Specifically, if Mr. Fontenot returned to state post-conviction on a successor action to exhaust his fundamental denial of counsel, *Brady v. Maryland,* 373 U.S. 83 (1963)*,* ineffective assistance of appellate counsel, and newly discovered evidence of innocence claims based upon the new facts uncovered from the Pontotoc County District Attorney's Office and Ada Police Reports, those claims would be procedurally barred based upon a consistent pattern and practice of the Oklahoma Court of Criminal Appeals (OCCA).  As Respondent points out, the litigation of Beverly Moore's actual innocence in federal court is illustrative of the futility of returning to state court.

As Respondent explained, the federal district court found that Ms. Moore established the actual innocence gateway but grew concerned over the unexhausted constitutional claims that happen to mirror Mr. Fontenot's.  *See* Dkt. No. 148, at 85-86.  However, Respondent fails to explain the plight of Ms. Moore's case upon filing a successor state post-conviction application. Her successor state post-conviction application consisted of the following claims:

1.   Petitioner is entitled to relief because of the ineffective assistance of her trial counsel for failing to investigate the cause and timing of the child's fatal injuries, including the failure to timely consult with, retain, and present expert testimony.

2.   Ms. Moore is entitled to relief because her trial counsel suffered from an impermissible conflict.

3.   The State of Oklahoma violated *Brady v. Maryland* when it failed to disclose exculpatory evidence.

4.   Ms. Moore's appellate counsel was ineffective for failing to raise a claim of ineffectiveness of trial counsel arising out of trial counsel's failure to investigate the medical issues and present expert testimony.

5.   Ms. Moore's appellate counsel was ineffective for failing to discover and present evidence of trial counsel's impermissible conflict of interest.

6.   Ms. Moore's appellate counsel was ineffective for failing to uncover and raise the *Brady* violation.

Ex. 1.  After almost six years of litigating her unexhausted claims,[3] the state district court found all claims procedurally barred.  *See id*.  During this process, Ms. Moore repeatedly requested that the federal court find the state post-conviction proceeding inadequate to provide any substantive review of her constitutional claims.  *See* Ex. 2.  The unnecessary delay in the state evidentiary hearing process due to the decisions to bifurcate based on the elements of each constitutional claim, scheduling issues, and transcription complications demonstrates the failings of state process to promptly handle successor claims.

Ms. Moore properly filed an appeal with the OCCA.  The OCCA found all six claims procedurally barred and refused to reach the merits.  *See id*.  Two interrelated facts are troubling in the OCCA's opinion.  First, during federal habeas proceedings, the respondent in Ms. Moore's case argued that her actual innocence finding could provide her a way to circumvent the normal procedural bars that would apply in successor applications.[4]  *See* Ex. 3.  Respondent's argument rested on *Slaughter v. State*, 108 P.3d 1052 (Okla. Crim. App. 2005)[5], a capital case where a successor application was filed on actual innocence.  *See id*.  However, upon returning to state court, the district attorney's office, representing the state, promptly argued that all of Ms.

---

[3] During that six-year period, Ms. Moore obtained only a partial evidentiary hearing on the deficient performance prong of her ineffective assistance of counsel claim.  The district court judge opted to bifurcate the hearing for each claim, however, testimony was taken on the first prong of ineffective assistance of counsel.  Ex. 2 at 5-6.

[4] As an aside, Respondent recognized that procedural bars were usually applied to successor claims. Dkt. #148, Pgs 85-86.

[5] The non-capital provision of 1086 does not contain an actual innocence exception.  Under 22 O.S. § 1089(D)(8)(b)(2), "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for the alleged error, no reasonable fact finder would have found the applicant guilty of the underlying offense."  This language does not apply in non-capital cases such as Mr. Fontenot's and did not apply for Ms. Moore.

Moore's claims were procedurally barred due to her successor application status. *See* Ex. 1 at 5. The likelihood of procedural bars being imposed upon Mr. Fontenot, as they were on Ms. Moore, are almost certain. That is because Mr. Fontenot would find himself in the same precarious position as Ms. Moore in attempting to satisfy one habeas requirement while being slammed with another. The fair solution to this quandary is for this Court to recognize that a return to state court is absolutely futile.

Second, is the terse handling of the federal court's finding of actual innocence of Ms. Moore by the OCCA. The OCCA completely disregarded and misstated the federal court's finding of actual innocence.

> Petitioner made oblique references to her claims for habeas corpus relief currently pending in the United States District Court for the Western District of Oklahoma to contest the claim of procedural bar, alleging the federal court made a finding of actual innocence in this case based on this "new evidentiary material." This claim is not supported by the record and is not persuasive with regard to the procedural bar issue in this case. Petitioner's brief reference overstates the relevance of Petitioner's federal proceeding. According to an order entered in Petitioner's federal habeas case on October 28, 2011, by the Honorable Robin J. Cauthron, United States District Judge for the Western District of Oklahoma, the only issue addressed in the federal court's various orders relied upon by Petitioner was whether or not Petitioner's procedurally defaulted federal claims would be eligible for federal habeas review. Judge Cauthron specifically stated that "Judge Bacharach did not propose, nor would it be proper to make, a determination of actual innocence.

Ex. 1 at 5-6. However, the federal district court judge clearly found that Ms. Moore established the actual innocence gateway to remove the time bar to her petition. Ex. 4.

Based on the similarity of his claims and Ms. Moore's, Mr. Fontenot would face the same procedural bar imposition by the OCCA based on the similarity of claims with Ms. Moore's. When the highest state court can be counted on to impose a procedural bar, exhaustion is futile. *See Goodwin v. Oklahoma*, 923 F.3d 156, 157 (10th Cir. 1991) (exhaustion is not required "where the state's highest court has recently decided the precise legal issue petitioner seeks to

raise on his federal habeas petition."); *Richie v. Simmons*, 563 F. Supp. 2nd 1250, 1274 (ND OK 2008) (finding that an ineffective assistance of counsel concerning undiscovered statements would be procedurally defaulted by state courts concerning exhaustion); *Rojem v. State*, 925 P.2d 70 (Okla. Crim. App. 1996).

Even in capital cases where new evidence is found in federal habeas establishing a *Brady* violation, a return to state court in a successor petition results in the imposition of a procedural bar.  In *Douglas v. Workman*, the OCCA denied both Mr. Powell's and Mr. Douglas' successor applications on strictly procedural grounds, holding that the claims were barred by Rule 9.7(G)(3), Rules of the Court of Criminal Appeals, 22 OKLA. STAT. Ch. 18, app'x (2003),[6] which requires successive postconviction petitions to be filed "sixty (60) days from the date the previously unavailable legal or factual basis serving as the basis of the claim for the new issue is . . . discovered."  *Douglas v. Workman*, 560 F.3d 1156, 1167-68, 1171-72 (10th Cir.  2009). There is no basis for this Court to find that the state court has any available means for substantive review through a successive state application.

Further, as Mr. Fontenot has argued his actual innocence, it constitutes a manifest injustice for him to return to state court thereby delaying his right to substantive review of his wrongful conviction.  As noted *supra*, the failure to totally exhaust state remedies does not divest this Court of jurisdiction over the merits of Mr. Fontenot's constitutional claims.  *See Granberry v. Greer*, 481 U.S. 129, 131 (1987).   In determining whether the "interests of justice" warrant

---

[6] This rule applies in successor capital cases.  The non-capital rule does not have a sixty-day time period.  Under Rule 5.5, Rules of the Oklahoma Court of Criminal Appeals, "[o]nce this Court has rendered its decision on a post-conviction appeal, that decision shall constitute a final order and the petitioner's state remedies will be deemed exhausted on all issues raised in the petition in error, brief and any prior appeals. A petition for rehearing is not allowed and these issues may not be raised in any subsequent proceeding in a court of this State. The Clerk of this Court shall return to the movant any petitions for rehearing tendered for filing. *See* Section 1086 of Title 22.

requiring Mr. Fontenot to pursue additional state remedies, the Court should consider the interests of comity and federalism. *Granberry*, 481 U.S. at 134; *Harris v. Champion*, 15 F.3d 1538, 1555-57 (10th Cir. 1994) (holding that excessive delays in state system in resolving claims for relief justified the federal court excusing the prisoner from having to exhaust the state remedies). Similarly, this case presents unusual circumstances or circumstances of peculiar urgency that warrant the federal court taking action. *Granberry*, 481 U.S. at 134; *Harris v. Champion*, 48 F.3d 1127, 1133 (10th Cir. 1995) (noting that the federal court should determine whether "the interests of comity will be better served by hearing the merits" of the claims). The entire reason for discussing a mixed petition rests upon the continued bad behavior by state actors in failing to abide by numerous court orders and subpoenas to disclose records.

The Tenth Circuit has stated that a petitioner able to satisfy the "miscarriage of justice" standard could be excused from the habeas exhaustion requirement. *See Gradiz v. Gonzales*, 490 F.3d 1206, 1209 (10th Cir. 2007) (looking to habeas law to carve the exception to statutory exhaustion requirement under Immigration and Nationality Act). The Seventh Circuit also has determined that "actual innocence" is a ground upon which a federal court can relax the total exhaustion requirement. *Milone v. Camp*, 22 F.3d 693, 699-701 (7th Cir. 1994). Moreover, it should be noted that the exhaustion rule and the procedural default rule both serve the same general purposes of principles of comity and federalism, *see, e.g., Edwards v. Carpenter*, 529 U.S. 446 (2000), and there is no question that actual innocence serves as a narrow exception to the procedural default rules. *House v. Bell*, 547 U.S. 518, 536-67 (2006); *Schlup*, 513 U.S. 298 (2005). Because Mr. Fontenot satisfies the "miscarriage of justice" exception by establishing his actual innocence, he has established the unique and compelling circumstances sufficient to warrant being excused from having to return to state court.

III.    **MR. FONTENOT'S FUNDAMENTAL RIGHT TO COUNSEL WAS *PER SE* VIOLATED BY THE ADA POLICE DEPARTMENT'S INTERFERENCE WITH ATTORNEY-CLIENT PRIVILEGE SIXTH AND FOURTEENTH AMENDMENT VIOLATION**

The sanctity of the attorney-client privilege is paramount to any relationship between the attorney and client.  In a criminal case, building trust between a defense lawyer and an indigent client is even more critical given the high stakes of imprisonment.  For George Butner and Karl Fontenot, their ability to communicate was crucial as Mr. Fontenot faced the death penalty and was incarcerated from October 1984 and during both trials.  The ABA Guidelines for Defense Function Third Edition 4-3.1 states,

> (a) Defense counsel should seek to establish a relationship of trust and confidence with the accused and should discuss the objectives of the representation and whether defense counsel will continue to represent the accused if there is an appeal. Defense counsel should explain the necessity of full disclosure of all facts known to the client for an effective defense, and defense counsel should explain the extent to which counsel's obligation of confidentiality makes privileged the accused's disclosures.

> (b) To ensure the privacy essential for confidential communi-cation between defense counsel and client, adequate facilities should be available for private discussions between counsel and accused in jails, prisons, courthouses, and other places where accused persons must confer with counsel.

> (c) **Personnel of jails, prisons, and custodial institutions should be prohibited by law or administrative regulations from examining or otherwise interfering with any communication or correspondence between client and defense counsel relating to legal action arising out of charges or incarceration.**

(emphasis added).[7]  The Tenth Circuit Court of Appeals found that a fundamental denial of counsel occurred when, "its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so, a prejudicial effect on the reliability of the trial process must be presumed." *Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th 1995).  There is no justification

---

[7] The Supreme Court has recognized the ABA Guidelines for the norms for the reasonableness of a defense counsel's actions.  *See Strickland v. Washington*, 466 U.S. 668, 688 (1984).

or basis for the Ada Police Department to have Mr. Fontenot's letters in its possession. And Respondent's argument that there is no violation of attorney-client privilege because the letters were not used against Mr. Fontenot, misses the point. *See* Docket No. 148 at 89-92. These were private communications between a defense counsel and his client about Mr. Fontenot's thoughts and ideas about **his defense.** In the letters, Mr. Fontenot discusses witnesses, strategy, and his thoughts about Mr. Butner and the process. Mr. Butner stated that he never saw these letters and Ms. Hull who had Mr. Butner's files for the appellate process echoed not seeing these communications. *See* Docket No. 123 Exs. 97 & 98. Such actions by the Ada Police Department, "impair[ed] the accused enjoyment of the Sixth Amendment guarantee by disabling his counsel from fully assisting an representing him." *Id.* at 1141.

Respondent's assertions of conversations between Mr. Butner and Mr. Fontenot before the trial court regarding whether Mr. Fontenot took the stand and other communications does not alleviate the possession of privileged correspondence hidden from counsel.[8] If Mr. Fontenot chose to communicate with his counsel via letters, that's his right to do so and that communication is protected under the rules of professional conduct and the Constitution. The number of times Mr. Fontenot and Mr. Butner discussed their defense and the manner in which they chose to do so is privileged from opposing counsel which included law enforcement. The Ada Police Department's confiscation of Mr. Fontenot's privileged letters did not involve jail

---

[8] During his deposition, Mr. Butner explained some of the problems he ran into while talking with Mr. Fontenot. Dkt. #85-9, Pg. 27, lines 11-24. Butner agreed that Mr. Fontenot was limited intellectually and said, "it was his personality too, because he was not, at that time, forward. I mean, he was reserved and – and would not – he was not bubbling over with information." Id. At lines 17-20. Butner testified, "[S]pecifics to Mr. Fontenot, a specific was not in his vocabulary. He was a young person and a – what happened two days ago in Karl's life, he in all probability, could not remember or could not recall." Dkt. #85-9, Pg. 21, lines 4-7. He testified, "I'm not sure Karl grasped at that time the gravity and the – and the issues because he was – he was a little quiet." Id. At lines 21-24.

security or any legitimate law enforcement function. Such actions violated Mr. Fontenot's fundamental counsel.

The importance of this rule is evident by the *per se* violation under the Sixth Amendment. Despite what other communications occurred or did not occur, there is no plausible explanation or justification for keeping such correspondence from defense counsel.  As the case law presented in the Second Amended Petition established, there is a *per se* violation when there is an "intentional prosecution intrusion[] lack[s] a legitimate purpose." *Shillinger*, 70 F.3d at 1140 . Respondent has no answer to this legal argument because there is none.

However, Respondent again attempts to obfuscate the issue by referring to other notes and letters that clearly not privileged nor claimed as such in the Second Amended Petition. *See* Docket No. 148, at 91.  Respondent's attempt to use a 1985 date to allege that there is no connection between the continued bad behavior of the Ada Police Department and its interference with privilege is specious.  Mr. Fontenot cited to Exhibit 95 when discussing the interference with attorney-client privilege. *See* Docket No. 123 at 105-106.  These letters are addressed to "George" and are thirteen pages in length total. *See id.* Ex. 95.

Respondent is correct that the Ada Police Department conducted considerable investigation into the witnesses mentioned in this letter and then failed to disclose exculpatory evidence which clearly falls within *Brady v. Maryland*'s mandate.  Interviewing Ms. Fontenot's ex-girlfriend, Dorothy Edwards, after her name is mentioned in these letters is not mere coincidence.  Her interview contained exculpatory and impeachment evidence that would have aided Mr. Butner's defense.  That her interview is contained within the 300 pages of withheld documents along with Mr. Fontenot's letters is the very interference a *per se* violation seeks to restrict on the prosecution.

He has established that vital privileged details were intercepted by the Ada Police Department with no justification and kept the exculpatory materials from Mr. Butner.  This was an intentional act by the state and obligates relief.   Even if an actual prejudice is required, Mr. Fontenot has established it in the specific reports that would have helped his defense.


IV.     **LACHES IS AN INVALID AFFIRMATIVE DEFENSE AND SHOULD NOT PRECLUDE THIS COURT REVIEWING MR FONTENOT'S CLAIMS ON THE MERITS.**

Respondent urges this Court to abide by the state court's laches ruling because of Mr. Fontenot's delay in filing his state post-conviction application, despite Oklahoma not having a statute of limitations for non-capital state applications.  Respondent begins by suggesting that the present Petition is time-barred by the Antiterrorism and Effective Death Penalty act of 1996 ("AEDPA").  Even were that true, Mr. Fontenot's entitlement to the *Schlup* gateway would circumvent that issue.  Respondent then quickly asserts that Mr. Fontenot has not demonstrated cause and prejudice to overcome the state procedural bar, but Oklahoma has no statute of limitations on non-capital cases, so there is nothing to overcome.  *Moore v. Gibson*, 27 P.3d 483, 484 (Okla.Crim. App. 2001).  In Oklahoma, an application for post-conviction relief is considered timely when filed.  *Id.*

> Any person who has been convicted of, or sentenced for, a crime and who claims: (a) that the conviction or the sentence was in violation of the Constitution of the United States or the Constitution or laws of this state . . . (d) that there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice . . . may institute a proceeding under this act in the court in which the judgment and sentence on conviction was imposed to secure the appropriate relief.

22 O.S. § 1080 (2018).

This procedural bar fails for two reasons.  One, the state's own actions regarding documents at issue, belie the laches argument.  Second, Mr. Fontenot provided extensive evidence to satisfy the cause and prejudice standard along with his actual innocence evidence which removes all procedural bars.  These reasons will establish that laches is not a viable affirmative defense precluding this Court's substantive consideration of the constitutional issues in his Second Amended Petition for Writ of Habeas Corpus.

### A.      Respondent's Assertion Of Laches Is Moot Due To Their Unclean Hands

Respondent cannot argue laches as an affirmative defense for undue delay when their own actions continue to subvert Mr. Fontenot's ability to litigate his claims in a timely manner. Laches is an equity defense based upon the premise that the undo delay penalizes the state. However, their unclean hands have attributed to this delay.  *Yeager v. Fort Knox Sec. Products*, 602 F. App'x 423, 429 (10th Cir. 2015); *see generally Nancy Jones v. Estate of Cole*, 483 Fed. App'x 468, 473-74 (10th Cir. 2012) (discussing Kansas state law that defines unclean hands as "guilty of inequitable conduct").  Unclean hands negate an assertion of laches as the claimant's actions attributed to malfeasance or severe wrongdoing regarding the claims at issue. *See generally*, *Stugis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts*, 908 F.3d. 313, 344-45 (8th Cir. 2018); *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 480 (1st Cir. 2009) (defining unclean hands to apply when, "those who seek equitable relief when they themselves have engaged in misconduct").

Not only is federal habeas corpus an equity action, but the affirmative defense Respondent seeks to invoke is as well. *See Holland v. Florida*, 560 U.S. 631, 644, 646 (2010); *see also Smith v. Baptist Foundation of Oklahoma*, 50 P.3d 1132, 1138 (2002); *Story vs. Hefner*, 540 P.2d 562 (Okla. 1975). For Respondent's laches argument to be considered, they must not

have contributed to the undue delay they now assert.  The failure to notify counsel as to the discovery of the Ada Police Reports along with the plethora of other undisclosed records, documents and police reports during both state post-conviction and federal habeas proceeding substantially undermines Respondent's affirmative defense.

Undersigned counsel had to pursue the Ada Police Reports from Respondent after being told by state actors repeatedly that these records did not exist. *See supra*.  Instead, in the face of a federal subpoena it became apparent that no one looked for the requested records and the magistrate judge acknowledged this in his order. *See* Docket No. #142. (finding that there was no reason the Ada Police Department did not comply with the federal subpoena).  It is long recognized that prosecutors have a continuing obligation to disclose exculpatory evidence. *See Douglas v. Workman,* 560 F.3d 1156, 1173 (10th Cir. 2004) citing *Smith v. Roberts*, 115 F.3d 818, 820 (10th Cir. 1997).   This obligation applies to the Attorney General's Office as well.

As raised in the Second Amended Petition for Writ of Habeas Corpus, the Ada Police Reports contained numerous documents that fall within *Brady* and its progeny's mandatory disclosure requirement.  Yet, much like the voluminous records that continue to appear throughout Mr. Fontenot's litigation of his constitutional claims from trial, appellate review, state post-conviction, and federal habeas corpus, there is no acceptance of the Respondent's role as representative of the state actors for their failure to abide by the state and federal constitutions.

Respondent does not deny that law enforcement and the Pontotoc County District Attorney's Office continued to release *Brady* materials even through this proceeding.  As described in Docket No. 105, pp. 5-7, documents that the prosecution claimed they had no knowledge of were found in their files during the pendency of this proceeding, not some time

long ago.[9] Of course, time has shown this to be par for the course for the cadre in Pontotoc

County. *Williamson vs. Reynolds*, 904 F. Supp. 1529 (E.D. Okla. 1995). Respondent did not

begin the practice of withholding exculpatory documents from Mr. Fontenot, but he has

continued and furthered the effort by withholding evidence and then arguing that Respondent is

harmed by delays caused by the actions Respondent and his prosecutorial predecessors have

taken.

    **B.**     **Mr. Fontenot Meets The Cause And Prejudice Standard If The Procedural Bar Is Found To Be Valid**.

Mr. Fontenot satisfies the cause and prejudice standard which removes a procedural bar

by meeting the elements of his *Brady* claim raised in his Second Amended Petition. Under

*Strickler v. Greene*, 527 U.S. 263 (1999) and *Banks v. Dretke*, 540 U.S. 668 (2004) a viable

*Brady* claim will meet cause and prejudice removing a procedural bar. "[C]ause and prejudice"

runs "parallel [to] two of the three components of the alleged Brady violation itself."

"A petitioner shows 'cause' when the reason for his failure to develop facts in state-court

proceedings was the State's suppression of the relevant evidence; coincident with the third *Brady*

component (prejudice), prejudice within the compass of the 'cause and prejudice' requirement

exists when the suppressed evidence is 'material' for Brady purposes." *Banks* 540 U.S. at 691

*quoting Strickler v. Greene*, 527 U.S. 263 at 282. Therefore, if this Court finds that the

prosecution withheld exculpatory, impeachment, or evidence that aided the defense at trial, and

that evidence was material either to guilt or to sentence, the procedural default of that claim is

removed permitting a substantive review of the constitutional claim.

---

[9] These documents establish both alternate suspects and the threats Mrs. Haraway received while at work.

Mr. Fontenot's *Brady* claim is extensive.   It rests on a plethora of documents, police reports, forensic evidence, and witness statement that Mr. Fontenot has presented in his three habeas corpus petitions. *See* Docket Nos. 4, 77, & 123.   Many of these exhibits consist of evidence that is exculpatory, impeachment and would have aided his trial counsel.  A summary of the extensive argument already presented to this Court demonstrates that the Pontotoc County District Attorney's Office received the prosecutorial from Agent Gary Rogers of the Oklahoma State Bureau of Investigation (OSBI). *See* Docket No. 123, at Pgs. 49-51.   However, the law enforcement investigation conducted by OSBI and the Ada Police Department was quite extensive. *See id.*  Additionally, the Pontotoc County District Attorney's Office assisted in this investigation through Lloyd Bond, their own investigator. *See id.* at Pg. 59.   None of this evidence was disclosed to defense counsel and the pattern and practice of the Pontotoc County District Attorney's Office was not to make it available. *See id.* at Pg. 50.

Defense counsel made numerous discovery requests submitted prior to each trial. Mr. Fontenot was not required to constantly ask for access to this evidence while the prosecution hid it from him despite an OCCA ordering disclosure. *See Banks*, 540 U.S. at 696 ("A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process. 'Ordinarily, we presume that public officials have properly discharged their official duties'").  Once Mr. Butner made those discovery requests, it put the Pontotoc County District Attorney's Office on notice of the specific evidence which would aid the defense. *See United States v. Bagley*, 473 U.S. 667, 682-83 (1985).

For Mr. Fontenot to prevail on his *Brady* claim, he must demonstrate, "[a] "reasonable probability" of a different result is accordingly shown when the government's evidentiary

suppression "undermines confidence in the outcome of the trial." *Douglas v. Workman*, 560 F.3d 1156, 1173 (10th Cir. 200) *quoting United States v. Bagley*, 473 U.S. at 678.

Within the OSBI and Ada Police Reports are documents that creates a reasonable probability of a different result. Both the prosecutorial and the remaining OSBI and Ada Police Reports show that Mr. Fontenot recanted his confession and he told the OSBI Agent who polygraphed him he was at a party and had never been at McAnally's. Not only did he recant his confession but told officers the people he was with that night. Interviews of these people corroborate his account of not leaving the party once he was there. This evidence was critical to impeaching the officers who discussed the confession, show that the confession was fabricated, and provided details of people who could and did verify Mr. Fontenot's alibi.

Further, the events at McAnally's incriminate other individuals who have motive and means to harm Mrs. Haraway. The defense should have received police reports that Mrs. Haraway feared for her safety while at McAnally's and received harassing telephone calls. Employees and customers of McAnally's would have testified to what they saw and heard concerning the extent of her fears.

Relating to the events of McAnally's that night are the various customers who contacted the Ada Police Department as to the time and people they witnessed in the store. These people include Ada Police Officer Richard Holkum, James Boardman, John McKinnis, Gary Haney, and Carrie McClure. Many people recalled a grey truck being at the store much longer that day than the state's theory which rested on the testimony of the Timmons brothers and their uncle Gene Whechel. These additional witnesses cast significant doubt about the prosecution's timeline and the circumstances of Mrs. Haraway's disappearance. More importantly, the cause and manner of her death contradict every point of Mr. Fontenot's confession.

Reports concerning several key alternate suspects were withheld from defense counsel. Detailed reports concerning Floyd DeGraw[10] and the Reeves brothers would have impeached the officers about the thoroughness of their investigation and provided additional investigative avenues for Mr. Fontenot's counsel.  These alternate suspects had connections with Ada at the time of Mrs. Haraway's disappearance. Or had crimes like the robbery of McAnally's or both. Such evidence was exculpatory for Mr. Fontenot because someone else committed the crime given his alibi.

This is but a fraction of the evidence withheld from the defense that would have created a reasonable probability of a different result.  The Court's analysis of materiality must determine whether "[t]he favorable evidence could reasonably be taken to put the case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). A court must review evidence cumulatively, "not item by item." *Id.* at 436.  The prosecution's case rested on Mr. Fontenot's uncorroborated confession and highly circumstantial evidence. N/T 6/14/1988 at 94; P/H 546-547; N/T 6/10/1988 at 178-179.  The evidence described in detail in Mr. Fontenot's Second Amended Petition place the entirety of the case in a different light and obliterates the tenuous prosecution's case against him.  Based upon the state's persistent pattern of withholding exculpatory and impeachment evidence that is material to Mr. Fontenot's case, he satisfies the cause and prejudice standard to remove the procedural bar preventing substantive review of this constitutional claim.

---

[10]  Respondent argues that the OSBI reports about Floyd Degraw were not *Brady* materials as the police discussed it in the newspaper. *See* Docket No. 148, at Pg. 39.  Interestingly enough, the Supreme Court dismissed a similar argument in *Banks v. Dretke* ("We rejected a similar argument in Strickler [.] There, the State contended that examination of a witness' trial testimony, alongside a letter the witness published in a local newspaper, should have alerted the petitioner to the existence of undisclosed interviews of the witness by the police. 527 U.S. 263 at 284, 144 L. Ed. 2d 286, 119 S. Ct. 1936." *Banks v. Dretke*, 540 U.S. 668, 695 (2004).

### C.    Respondent's New Witness

Respondent claims that a new witness came forward to provide evidence of Mr. Fontenot and Mr. Ward harassing Mrs. Haraway days before her disappearance in 1984.   As is a consistent pattern with Respondent, their included witness account is only part of the story. Ferlin Traylor is not an uninterested party who came forward with information and Respondent is well aware of this.   Mr. Traylor is a friend of Chris Ross, former Pontotoc County District Attorney. *See* Docket No. 148, Ex. 21.   While Respondent includes most of Mr. Traylor's statement, it misses key paragraphs which undermine his allegations as to Mr. Fontenot and Mr. Ward.

> Traylor works out at the Chickasaw Nation Wellness Center in Ada, Oklahoma. Through working out, Traylor became associated with Chris Ross, a retired District Attorney, and has known him for over a year. In early December 2018, while working out, Traylor was on the same piece of equipment with Ross. Traylor noticed that Ross looked disturbed and questioned Ross about what was bothering him. Ross explained that Netflix had recently aired a documentary on a murder case in Ada, which happened in 1984, and that the documentary did not paint a good picture of him or the investigation. Traylor told Ross not to worry, they (law enforcement) had the right guys in custody. Traylor was so sure that the two men in custody had done the crime that he would give the two men the death penalty.

> (Since the conversation with Ross in December 2018, Traylor was involved in a head on collision which caused him and the other party to be Medflighted out, via a helicopter, and taken to OU Health Center in Oklahoma City on January 9, 2019. Traylor suffered two broken legs with additional injuries. Traylor spent several days in the hospital. The accident occurred between Ada and Allen.)

>      (The next part is quoted in Respondent's Motion to Dismiss)

> Traylor is aware that an individual named Kenny Last Name Unknown (LNU), who worked at a horse race track in Ada, had been bragged to about the crime from the two individuals charged for the crime. Kenny was handicapped; he had a withered arm. Kenny's son might have also been bragged to about the crime.

*Id.*  Despite Mr. Traylor not calling the police or Mr. Ross, to report this account, it is interesting that the genesis of this account is due to Mr. Ross' negative reaction to a television show. Additionally, Respondent argued against the merits of Mr. Fontenot's police reports of harassment to Mrs. Haraway until Mr. Traylor's account came to light.  Such change in viewpoint demonstrates the baselessness of Respondent's procedural arguments.

## V.     MR. FONTENOT ESTABLISHED THE ACTUAL INNOCENCE GATEWAY THAT REMOVES ALL PROCEDURAL DEFAULTS.

As Mr. Fontenot has repeatedly shown, his is one of the rare cases with a procedural gateway claim of innocence. *Schlup v. Delo*, 513 U.S. 298, 321-322 (1995).  Mr. Fontenot presented newly discovered evidence that was not presented during his trial that calls into question every aspect of the prosecution's weak case against him. "Probable innocence" is established if Mr. Fontenot presents "new facts [that] raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial … ." *Id.*  at 317.  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327; *see also House v. Bell*, 547 U.S. 518, 538 (2006) (requiring a federal court presented with *Schlup* claim "must make 'a probabilistic determination about what reasonable, properly instructed jurors would do'").  Once a federal court makes such a finding, a gateway claim of innocence exists removing any procedural obstacles allowing the substantive review of the Mr. Fontenot's constitutional claims.  *See House* 547 U.S. at 536-537; *Case v. Hatch*, 731 F.3d 1015, 1036 (10th Cir. 2013).  The evidence presented in Mr. Fontenot's Second Amended Petition for Writ of

Habeas Corpus puts the entirety of his case in a different light meriting the removal of any procedural hurdles in his case.

A summary of some of the new evidence presented shows that Mr. Fontenot was at a party during the time that Donna Denice Haraway went missing. The facts of the party were brought up during Mr. Fontenot's trial, but what is newly discovered evidence of innocence is that witnesses place him there for the entirety of the night. The prosecution alleged that Mr. Fontenot and Mr. Ward left the party at some point to travel to McAnally's. The prosecution rests this on the testimony of Timmons brothers and their uncle Gene Whechel who saw a woman get into a grey-primered truck with a blond man. Dkt. No. 148, Pg. 55.

The new evidence that removes Mr. Fontenot from any events at McAnally's are two-fold, party witnesses who remember him being at the party the entire evening which include Bruce DePrater, Stacy Shelton, Eric and Chris Thompson. Additionally, Mr. Fontenot attempted to tell his defense attorney of witnesses who could corroborate his attendance at the party. *See supra*. He also told OSBI Agent Featherstone during his polygraph examination. More importantly, no eyewitness places Mr. Fontenot at McAnally's convenience store either before or after the time of Mrs. Haraway's disappearance.[11] Instead, witnesses recall seeing the grey-primered truck outside of the convenience store prior to the. Further, a witness recalls a man standing behind the counter with Mrs. Haraway immediately before her abduction.

The second set of evidence that removes Mr. Fontenot from McAnally's are the numerous customers who provided information as to what occurred at the convenience store in

---

[11] According to the prosecution's case-in-chief, the window of when Ms. Haraway was abducted was very small. Based on when the Timmons-Whechel arrived and Ada Police responded leave only thirty minutes for Mrs. Haraway to drive away in the grey-primered truck. This time would be estimated to be between 8:30 pm and 9 p.m.

the late afternoon and evening.  Despite Respondent's assertions that earlier times do not matter, it is critical to evaluating the prosecution's case during trial.  The new customers found in the Ada Police Reports provide a better understanding of the events.  Not only do they describe men who were in the store but describe the grey-primered truck being at the store for a much longer time than the prosecution asserted.  Whomever was in the truck did not just drive up and abduct Mrs. Haraway but was there for at least an hour prior before the events the Timmons brothers and Mr. Whechel describe.  This evidence undermines the state's theory and provided exculpatory evidence of alternate suspects who were at the scene of the crime.

Additional new evidence comes from the OSBI reports of Mrs. Haraway's close friends and family who told Ada Police and OSBI Agents that Mrs. Haraway was afraid of being at the store and had been stalked while there.  These are her family and co-workers who knew that there was a viable threat that goes to the victim's state of mind in the weeks leading up to her disappearance and subsequent murder.  Witnesses recount the extent of her fear as she asked about buying a gun.

Further, alternate suspects were uncovered in Texas and surrounding areas of Oklahoma. These suspects had either motive, opportunity, or both to harm Mr. Haraway.  OSBI Agents put considerable time and energy investigating Floyd Degraw.  Mr. Degraw lied about his whereabouts, had a history of harming women, and provided incriminating information to law enforcement.  OSBI decided that Mr. Degraw as an alternative suspect which makes his police reports highly relevant to Mr. Fontenot's case.

Other newly discovered evidence from the Medical Examiner's Office on the potential for Mrs. Haraway to have been pregnant, various witnesses' inconsistencies about the grey truck

and police and prosecution misconduct further undercut the viability of the prosecution's case against Mr. Fontenot.

The sole evidence that incriminated Mr. Fontenot was his confession.  A confession that Ada Police admitted corroborated no evidence they could find. P/H 546-547; N/T 6/10/1988 at 178-179.  Once Mrs. Haraway's remains were found, the medical examiner's cause of death of a single gunshot would decimate the confession. *See* Docket No. 137 Ex. 46.  These newly discovered facts provided by documents and witnesses undercut every aspect of the prosecution's case against Mr. Fontenot.  Therefore, his case fits well within the *Schlup* exception of an actual innocence case which excuses all procedural defects.

All the evidence presented at trial must be evaluated along with the newly discovery evidence presented herein. *See House* 547 U.S. at 537-538.  The federal court must conduct a cumulative assessment of the prosecution's evidence at trial, along with the newly discovered evidence when considering whether actual innocence is proven.

> Our review in this case addresses the merits of the Schlup inquiry, based on a fully developed record, and with respect to that inquiry Schlup makes plain that the habeas court must consider "'all the evidence,'" old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under "rules of admissibility that would govern at trial."

*See id.*  Mr. Fontenot's newly discovered evidence supports the removal of all procedural bars and overlaps with his constitutional claims.

Precedent has long established that if an inmate suffers constitutional violations and is actually innocent of his crimes, the procedural bars will not prohibit the substantive analysis of those claims. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (holding that a procedural bar will fail if a constitutional violation "has probably resulted in the conviction of one who is actually innocent [of the offense of which he has been convicted]"); *see also Kuhlmann v.*

*Wilson*, 477 U.S. 436, 454-455, n. 17 (1986) (allowing successive petitions with rejected constitutional claims finding that "fair probability that, in light of all the evidence . . ., the trier of the facts would have entertained a reasonable doubt of his guilt."); *McClesky v. Zant*, 499 U.S. 467, 494-495 (1991) (excusing "abusive petition" exception in federal habeas); *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 11-12 (1992) (actual innocence trumps failure to develop facts in state court).  Mr. Fontenot has proven that the newly discovered evidence is such that no reasonable juror would convict him.   He is entitled to the actual innocence gateway that removes all procedural defects allowing this Court to review his constitutional claims on the merits.

WHEREFORE Mr. Fontenot requests that this Court deny Respondent's Motion to Dismiss Mr. Fontenot's Second Amended Petition for Writ of Habeas Corpus and grant relief upon the grounds raised in his Second Amended Petition.

Respectfully submitted,

/S/ *Tiffany R. Murphy*
Tiffany R. Murphy
Arkansas Bar No. 2015057
790 N. Cliffside Drive.
Fayetteville, AR 72701
(479) 575-4573

/S/ *Robert Ridenour*
Robert Ridenour
Assistant Federal Defender
OBA #16038
One West Third Street, Ste. 1225
Tulsa, OK  74103
(918) 581-7656

**CERTIFICATE OF SERVICE**

I hereby certify that on May 14, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Oklahoma by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


By: /S/ *Robert Ridenour*
ROBERT RIDENOUR