No.  CIV-16-069-JHP-KEW

---

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

---

KARL FONTENOT,

Petitioner,

-vs-

SCOTT CROW, Interim Director,

Respondent.

---

MOTION FOR STAY AND BRIEF IN SUPPORT

---

MIKE HUNTER
ATTORNEY GENERAL OF OKLAHOMA

MATTHEW D. HAIRE, OBA #14916
THEORDORE M. PEEPER, OBA#19909
ASSISTANT ATTORNEYS GENERAL

313 NE 21ˢᵗ Street
Oklahoma City, OK  73105
(405) 521-3921; (405) 522-4534 (FAX)
Service email:  fhc.docket@oag.ok.gov
matthew.haire@oag.ok.gov
ted.peeper@oag.ok.gov
ATTORNEYS FOR RESPONDENT

---

September 13, 2019

## TABLE OF CONTENTS

Page

ARGUMENT AND AUTHORITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**PROPOSITION I**

       THERE IS A LIKELIHOOD OF SUCCESS ON APPEAL. . . . . . . . . . . . . . . . 4

       A.     This Court Accepted Proffered Proof From Petitioner That Was Neither New Nor Reliable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       B.     This Court Insufficiently Considered the Circumstances of Petitioner's Delay. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       C.     This Court Failed to Properly Defer to State Factual Findings and Legal Conclusions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       D.     Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**PROPOSITION II**

       THE STATE WILL SUFFER IRREPARABLE INJURY IF THE STAY IS NOT GRANTED.  FURTHER, GRANTING THE STAY WILL SERVE THE PUBLIC INTEREST AND WILL NOT SUBSTANTIALLY INJURE PETITIONER. . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

i

## <u>TABLE OF AUTHORITIES</u>

### <u>FEDERAL CASES</u>

*Calderon v. Thompson*,
    523 U.S. 538 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Davis v. Workman*,
    695 F.3d 1060 (10th Cir. 2012).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Eaton v. Pacheco*,
    931 F.3d 1009 (10th Cir. 2019).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12, 13

*Frost v. Pryor*,
    749 F.3d 1212 (10th Cir. 2014).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

*Gardner v. Galetka*,
    568 F.3d 862 (10th Cir. 2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Gilbert v. Scott*,
    941 F.2d 1065 (10th Cir. 1991).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Harrington v. Richter*,
    562 U.S. 86 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Harris v. Allbaugh*,
    No. 15-CV–141-JHP-FHM,  2018 WL 1697843 (N.D. Okla. Apr. 6, 2018). . . . . . . . . . 7

*Harris v. Kuba*,
    486 F.3d 1010 (7th Cir. 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hilton v. Brunskill*,
    481 U.S. 770 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*House v. Bell*,
    547 U.S. 518 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*McClendon v. City of Albuquerque*,
    79 F.3d 1014 (10th Cir. 1996).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*McDaniel v. Brown*,
    558 U.S. 120 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*McQuiggin v. Perkins,*
    569 U.S. 383 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

*Schlup v. Delo,*
    513 U.S. 298 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6

*Spain v. Podrebarac,*
    68 F.3d 1246 (10th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Spirko v. Mitchell,*
    368 F.3d 603 (6th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Lee,*
    399 F.3d 864 (7th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Pickard,*
    No. 00-40104-01/02-RDR, 2009 WL 939050 (N.D. Kan. Apr. 6, 2009). . . . . . . . . . . . . 10

**STATE CASES**

*Fontenot v. State,*
    881 P.2d 69 (Okla. Crim. App. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 12, 13

**STATUTES**

28 U.S.C. § 2254. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

28 U.S.C. § 2254(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12, 13

28 U.S.C. § 2254(d)(1)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

28 U.S.C. § 2254(e)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12, 13

**RULES**

10th Cir. R. 8.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

10th Cir. R. 32.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. App. P. 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. App. P. 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. App. P. 32.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KARL FONTENOT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. CIV-16-069-JHP-KEW |
| | ) | |
| SCOTT CROW, Interim Director,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## MOTION FOR STAY AND BRIEF IN SUPPORT

COMES NOW the Respondent, Scott Crow, by and through Matthew D. Haire and Theodore M. Peeper, Assistants Attorney General as representatives of the State of Oklahoma, and moves for a stay of this Court's Judgment entered on August 27, 2019 (Doc. 152).  Petitioner received a conditional grant of habeas corpus after this Court found Petitioner's long delay in bringing his federal claims was excused from three (3) procedural bars because:   (a) "*Brady*" error was present; (b) the state bar of *laches* was insufficient to bar relief; and (c) Petitioner had presented new and reliable evidence of "actual innocence" considered so powerful it was "'more likely than not, no reasonable juror would have convicted him.'" (Doc. 151, p. 22) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)); *see also* Doc. 151, pp. 48, 190.  This Court then granted on the merits, in *de novo* fashion, every claim raised by Petitioner in the petition, even determining that "no rational trier of fact could find [Petitioner's] guilt beyond a reasonable doubt on the evidence at trial, even if the confession is deemed properly admitted" (Doc. 151, p. 163).  Respondent seeks this stay to preserve the *status quo* as Respondent seeks review of this Court's ruling, and not for purposes of unnecessary

---

[1] Scott Crow has replaced Joe Allbaugh as Interim Director of the Oklahoma Department of Corrections.

delay or prejudice to Petitioner.  During such *status quo*, Respondent will argue to the appellate court that the instant opinion unreasonably determined facts and failed to apply clearly established federal law, producing an incorrect outcome in this case.  The stringent legal and factual requirements of federal law barring Petitioner's action were not carried out.  And the petition for writ of habeas corpus should have been dismissed.

In support of this Motion, Respondent shows the following:

1.      Petitioner opposes this Motion.

2.      On September 13, 2019, Respondent timely filed a Notice of Appeal to the United States Court of Appeals for the Tenth Circuit from this Court's conditional grant of federal habeas relief.

3.      Respondent submits that due to the circumstances and facts of this case, as discussed below, there is a substantial likelihood of success of Respondent's appeal on the merits.

4.      If the stay were not granted, irreparable injury will result from the order directing the State to conduct a new trial within one-hundred twenty (120) days from the issuance of the Court's Opinion and Order.  Although the Court of Appeals for the Tenth Circuit will duly docket Respondent's appeal, there is little likelihood that the briefing schedule for this appeal will be completed by the one-hundred twenty (120) days, let alone any potential oral argument as well as deliberation by the appellate court.  Should the State of Oklahoma retry Petitioner within the next one-hundred twenty (120) days, Respondent's appeal of this Court's Opinion and Order would be rendered moot.   Simply appointing new trial counsel for Petitioner and initiating pre-trial proceedings for a retrial within the one-hundred twenty (120) days would also result in irreparable injury because of the work both parties and the trial court would need to conduct during that period that could be completely obviated by a favorable ruling in the Court of Appeals for the Tenth Circuit.

5.      Granting a stay will not substantially harm Petitioner, who will remain in custody pending resolution of the appeal, should the requested stay be granted, or pending his retrial.

6.      Granting a stay will also greatly serve the public interest as the Opinion and Order requires the retrial of a thirty-five (35) year-old first-degree murder case, which will prove to be both costly and time-consuming.

## ARGUMENT AND AUTHORITY

Rule 23 of the Federal Rules of Appellate Procedure provides that a decision ordering the release of a prisoner pending review of a decision may be stayed by the justice or judge rendering the decision, by the court of appeals, or the United States Supreme Court. *See also* 10th Cir. R. 8.1. Such a stay is also allowable under the provisions of Rule 8 of the Federal Rules of Appellate Procedure. Pursuant to Tenth Circuit Rule 8.1. this Court considers four (4) factors from a moving party:

(1)      the likelihood of success on appeal;

(2)      the threat of irreparable harm if the stay or injunction is not granted;

(3)      the absence of harm to opposing parties if the stay or injunction is granted; and

(4)      any risk of harm to the public interest.

*Spain v. Podrebarac*, 68 F.3d 1246, 1247 (10th Cir. 1995). These same factors have also been recognized by the United States Supreme Court. *Hilton v. Brunskill*, 481 U.S. 770 (1987).

The decision from the Supreme Court in *Hilton* dealt with a habeas corpus prisoner. The Supreme Court stated that the following factors may also be considered in deciding whether to issue a stay:  possibility of flight, the risk to the public, and the State's interest in continuing custody

3

pending a final determination on appeal. *Hilton*, 481 U.S. at 777. These factors all weigh in favor of staying this Court's Judgment pending the outcome of Respondent's appeal to the Court of Appeals for the Tenth Circuit.

## I.

### THERE IS A LIKELIHOOD OF SUCCESS ON APPEAL.

Respondent, respectfully, contends that the Judgment of this Court contains errors that should be reviewed by the Circuit Court of Appeals for the Tenth Circuit. Respondent believes such errors are so serious as to warrant reversal of this Court's decision. What follows below is not an exhaustive discussion as to the reasons why Respondent contends that its Motion to Dismiss should have been granted, but is sufficient to demonstrate the requisite likelihood of success on appeal. Respondent will argue to the Court of Appeals for the Tenth Circuit that this Court erroneously found Petitioner successful in this case by utilizing a legally incorrect standard of review. This Court failed to apply deferential standards required of federal courts when reviewing state decisions. Likewise, this Court accepted all of Petitioner's proffered information uncritically, contrary to federally erected criteria. Combined with this error was this Court's failure to recognize, as required by federal law, state-determined facts that were unfavorable to Petitioner that allowed him to pierce procedural hurdles and ultimately overcome a state court judgment. Under proper legal standards, Petitioner's claims are barred, and Respondent's Motion to Dismiss should have been granted.

Petitioner, it should be remembered, had raised no legal claim regarding his conviction at all for nearly eighteen (18) years before filing his first post-conviction application to allege he was "actually innocent" of his crime. Many of the documents (860 pages from the Oklahoma State Bureau of Investigation (OSBI)) and much information upon which Petitioner's habeas petition is

4

based was available to him since 1992.  The Oklahoma Court of Criminal Appeals (OCCA) affirmed Petitioner's conviction in 1995.  *Fontenot v. State*, 881 P.2d 69 (Okla. Crim. App. 1994).  And in 1995, Petitioner agreed to serve a sentence of life without parole for the murder in this case (Doc. 148-1, pp. 4-11).  Respondent has, in part, argued Petitioner waited far too long to bring his claims and that his proffered evidence is neither reliable nor "new" under proper legal standards (Doc. 148). The Court of Appeals for the Tenth Circuit should review whether Petitioner met his extraordinarily high burden of overcoming the statute of limitations and procedural bars to the instant petition.

To pass through the "actual innocence" gateway allowing Petitioner to have his claims raised – and overcome his procedural bars – Petitioner is required to present *new reliable evidence* of his actual innocence.  *Frost v. Pryor*, 749 F.3d 1212, 1231-32 (10th Cir. 2014) (citing *Schlup*, 513 U.S. at 324).  As the Court of Appeals has stated:

> To make a credible showing of actual innocence, a "petitioner must 'support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.'"  This new evidence "must be sufficient to 'show that it is more likely than not that no reasonable juror would have convicted the petitioner in the light of the new evidence.'  This standard is "demanding and permits review only in the extraordinary case."

*Frost*, 749 F.3d at 1231-32 (internal citations omitted).  For an "actual innocence" gateway claim to succeed, like the one Petitioner used in this case, the Supreme Court has stated that only the highest caliber of evidence is to be considered:

> To be credible, such [an actual innocence gateway] claim requires [the habeas] petitioner to support his allegations of constitutional error with new reliable evidence – *whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial*.  Because such evidence is

5

obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

*Schlup,* 513 U.S. at 324 (emphasis supplied). Thus, what Petitioner was required to show in this Court had to be (1) new, (2) reliable, and (3) *so strong that it was more likely than not that no juror would have convicted him*.

And a habeas court should take into account the *delay in producing such evidence*, particularly upon its credibility. *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013). As the Supreme Court has stated, "'the timing of the [petition]' is a factor bearing on the 'reliability of th[e] evidence' purporting to show actual innocence." *Perkins*, 569 U.S. 383, 386 (quoting *Schlup*, 513 U.S. at 332) (brackets in original). The Supreme Court has guided federal courts regarding delay when "actual innocence" is considered:

> Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing. . . . As we stated in *Schulp* "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]."

*Perkins*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 332). It is highly important, then, that delay be considered when one, like Petitioner, makes a request to pass through the "actual innocence" gateway; the less excusable the delay, the less reliable and/or believable the proffered information may become.

"Actual innocence" cases are considered "extraordinary" and highly rare. *Gilbert v. Scott*, 941 F.2d 1065, 1068 n. 2 (10th Cir. 1991). But that is not all.

This is an action pursuant to 28 U.S.C. § 2254. As this Court recognized, but, respectfully failed to adhere to, a federal court in a 28 U.S.C. § 2254 proceeding, must defer to factual findings

made in the state courts; and those facts "are entitled to a presumption of correctness," unless those facts are rebutted by clear and convincing proof (Doc. 151, p. 10 n.4) (citing 28 U.S.C. § 2254(e)(1)). *See Davis v. Workman*, 695 F.3d 1060, 1067 (10ᵗʰ Cir. 2012); *Harris v. Allbaugh*, No. 15-CV-141-JHP-FHM, 2018 WL 1697843, *1 (N.D. Okla. Apr. 6, 2018) ("Under 28 U.S.C. § 2254(e)(1), a state court's factual findings are presumed correct unless a habeas petitioner rebuts that presumption "'by clear and convincing evidence.'") (unpublished).[2]   And the highly deferential demand of 28 U.S.C. § 2254(d) may never be cast aside, for it comprises a standard of review that cannot be waived, nor may it be ignored – particularly when a state court has already decided an issue on the merits. *See Eaton v. Pacheco*, 931 F.3d 1009, 1014-16 and n.7 (10ᵗʰ Cir. 2019); *Gardner v. Galetka*, 568 F.3d 862, 879 (10ᵗʰ Cir. 2009) ("[T]he correct standard of review under AEDPA is not waivable. It is, unlike exhaustion, an unavoidable legal question we must ask, and answer, in every case."). This Court has even noted that:

> the standards set forth in § 2254 are "difficult to meet by design[,] . . . require federal habeas courts to give state court decisions the "benefit of the doubt[.]" . . . [A]s a precondition to obtaining federal habeas relief a state prisoner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."

*Harris*, at *4 (internal citations omitted). The convictions in Petitioner's case had already been reviewed by the state courts on the merits. *See Fontenot v. State*, 881 P.2d 69 (Okla. Crim. App. 1994). These state court decisions, and the state court record as a whole, triggered tight and narrow rules requiring deference to state legal and factual findings. Where it was critical to do so, this Court

---

[2] Unpublished decision cited for persuasive value only, pursuant to Fed. R. App. P. 32.1 and 10ᵗʰ Cir. R. 32.1.

neither acknowledged nor distinguished the state's factual and legal conclusions.

Hence, under federal law, (1) Petitioner came to this Court yoked with an extremely difficult burden of producing *new* and *reliable* facts in order to surpass his procedural bars, (2) this Court was tethered to a high degree of deference under 28 U.S.C. § 2254, particularly to state-found facts, in analyzing whether Petitioner had met that burden, (3) and Petitioner's ability to pierce through procedural bars – all of which were directly linked to his inaction over so many years – was dependent upon whether Petitioner actually produced new, reliable, and credible evidence in light of the applicable legal standards of review. Failure of this Court to consider Petitioner's inordinate delay and apply appropriate deference to the state court's rulings wrongly permitted Petitioner habeas relief, and this is why Respondent has a high likelihood of success on appeal.

A.     **This Court Accepted Proffered Proof From Petitioner That Was
       Neither New Nor Reliable.**

This Court accepted Petitioner's proffered "evidence" of "innocence" uncritically. Perhaps most obviously, for example, this Court accepted Petitioner's baseless factual theory regarding the supposed pregnancy of Ms. Haraway (*see* Doc. 151, pp. 46-48). Petitioner theorized, for showing his "actual innocence," that because Ms. Haraway had allegedly given birth during the period of time she was missing and he was already incarcerated, he had to be innocent of her murder. Under the strict "actual innocence" standards, this Court apparently agreed, and found it "impossible" for Petitioner to have killed Ms. Haraway under this circumstance (Doc. 151, p. 47). This Court considered "evidence" of Ms. Haraway's pregnancy from two (2) lines of an anthropology report showing "[m]arks on the pelvis" that "indicated she had given birth to at least one child[,]" a 1978 article about the subject, and hearsay from friends (Doc. 151, pp. 46-48). Respondent rebutted all

of this – including evidence that Petitioner's counsel had access to all of the Medical Examiner's Report and Petitioner's concession that a fetal birth could never be proved for certain due to the lapse of time – as not meeting federal demands (*see* Doc. 148, pp. 54-56).   Nevertheless, this Court determined Ms. Haraway's alleged pregnancy to be a "startling revelation" that "undermines the state's entire theory as to the motive of Mrs. Haraway's kidnapping and what happened to her in the months leading up to her death" (Doc. 151, p. 47).   Petitioner presented no affidavit from anyone who actually saw the bones of Ms. Haraway's pelvis, or from a close relative to confirm her condition.   Nor did Petitioner produce any actual proof – perhaps the child that was supposedly born – that the purported pregnancy actually occurred.   These are the types of unreliable and untrustworthy "facts" – and there are more – which this Court found "credible," and within the category of "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Frost*, 749 F.3d at 1231-32 (internal citations omitted). This type of weak and untested proof helped Petitioner meet what is supposed to be a "demanding" standard and place him in the most "extraordinary" of cases in which "'it is more likely than not that no reasonable juror would have convicted the petitioner in light of the new evidence.'"   *Frost*, 749 F.3d at 1232 (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)).

Similar errors also need to be reviewed regarding Petitioner's alleged alibi.   Petitioner allegedly presented "new" evidence of where he was the evening of the murder.   This Court looked to Petitioner's handwritten "recantation" from decades ago, and witnesses from an alleged party Petitioner purports he attended at the time of the murder who recall his presence, to find a persuasive alleged alibi and that the State failed to provide him this information at the time of his trial (Doc. 151, pp. 22-29).   But this Court overlooked trial testimony of Gordon Calhoun, the host of the party

in question, who testified that Petitioner was *not* at the party in question (N/T Tr. I 144, 150-51). Further, Petitioner would always have known his own whereabouts; thus, it could not now be "new," nor could this have been the type of evidence "withheld" from him. *See Harris v. Kuba*, 486 F.3d 1010 (7th Cir. 2007) (reasoning that evidence is suppressed only if the evidence was not otherwise available to the defendant through the exercise of due diligence and "Harris knew where he was (and was not) at the time" and therefore, "Harris's own alibi was not concealed from him and is therefore not properly a claim under *Brady*."); *United States v. Lee*, 399 F.3d 864, 865 (7th Cir. 2005) (addressing a defendant's claim that the prosecutor violated *Brady* by failing to produce a pair of pants that the defendant had worn and in which the firearm was recovered, the Seventh Circuit found the claim to be without merit, reasoning that *Brady* deals with the concealment of exculpatory evidence unknown to the defendant and because "Lee was aware of his own pants," the claim was not properly one under *Brady*); *see also United States v. Pickard*, No. 00-40104-01/02-RDR, 2009 WL 939050, *11 (N.D. Kan. Apr. 6, 2009) (despite government's failure to produce evidence, no *Brady* violation where alibi evidence was available to defense from other sources and defense was aware of essential facts necessary to obtain evidence) (citing *Spirko v. Mitchell*, 368 F.3d 603, 611 (6th Cir. 2004) (unpublished)).[3]

　　　　Petitioner's claim that eyewitness testimony at trial was too weak, and therefore showed Petitioner's "actual innocence," was also problematic. Karen Wise, for instance, testified to the jury at Petitioner's 1988 trial that she was not exactly sure whom she saw at J.P.'s and could not make any positive identification (Doc. 148, p. 53) (citing N/T 6/8/1988, 177, 193-194). Now, Petitioner

---

[3] Unpublished decision cited for persuasive value only, pursuant to Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

presents evidence from Wise that is nearly the same – only stronger (Doc. 148, p. 153) (citing Doc. 123, p. 35).   But Petitioner's jury heard an unsure witness at his trial.[4]   This Court did not acknowledge this testimony or the fact that Petitioner was convicted despite Wise's doubts.   This Court's failure to acknowledge trial testimony while accepting untested hearsay information generated many years later to support his "actual innocence" gateway claim must be reviewed by the Court of Appeals for the Tenth Circuit.

**B.     This Court Insufficiently Considered the Circumstances of Petitioner's Delay.**

The amount of time between Petitioner's last state sentencing judgment and his next post-conviction application in state court is very worthy of review in determining whether he both overcame the state bar of *laches* and fit through the narrow "actual innocence" gateway.   *Perkins*, 569 U.S. at 399.   Petitioner waited nearly eighteen (18) years; all of the factual and legal implications of Petitioner's long delay is critical for it was the most important portion of this Court determining whether Petitioner surpassed the bars to relief.

The Supreme Court has guided federal courts on delay as an aspect of federal review in habeas cases.   This Court overlooked Petitioner's long delay, by granting Petitioner a right that does not exist in order to excuse his delay.   This Court believed Petitioner had to "personally" know of the existence of material that was available to him, and seemingly excused all of his delay because he was allegedly mentally unstable, and also because his counsel at the time had allegedly taken some of his records (Doc. 151, p. 14).   That is not the law.   The AEDPA, for instance, informs a

---

[4] Even Petitioner's proffered affidavit reveals his defense counsel had access to the information he deems more important in this proceeding.   During the 1988 trial, Wise appears to admit that she spoke to Petitioner's counsel on the very subject (*see* Doc. 151, p. 39 (quoting Doc. 123, Exh. 13)).

habeas petitioner that a petition must be brought within one year from "the date on which the factual predicate of the claim or claims presented *could have been discovered* through the exercise of due diligence." 28 U.S.C. § 2254(d)(1)(D) (emphasis supplied).  Petitioner, by and through his counsel,[5] had knowledge of the factual predicate of nearly all of his claims on or before 1992 when the OCCA ordered release of the OSBI documents at Petitioner's request.  This was important, because what this Court considered "new" evidence was actually not, and the entire "actual innocence" analysis was erroneously skewed.  Because Petitioner had access to virtually all of the material at issue for nearly eighteen (18) years before seeking collateral relief, Respondent has a sufficient likelihood of success on appeal.

C.    **This Court Failed to Properly Defer to State Factual Findings and Legal Conclusions.**

Respondent, respectfully, believes this Court's treatment of Petitioner's confession was erroneous and greatly amenable to review.   This Court heavily relied upon circumstances surrounding Petitioner's confession in determining both his "actual innocence" and allegations of "*Brady*" violations.  But this Court was required to defer to the findings of the OCCA, particularly when it has reached the merits of the decision being reviewed. 28 U.S.C. §§  2254(d); 2254(e)(1); *see McDaniel v. Brown*, 558 U.S. 120, 133; *Eaton*, 931 F.3d at 1014-16 and n.7.  In the judgment under review, the OCCA did reach the merits and made factual findings regarding many of the allegations Petitioner brought to this Court about his confession and alleged "*Brady*" violations. *Fontenot*, 881 P.2d at 74-82.  This Court, however, deferred to none of the state findings of fact or

---

[5]  The Court did not consider Respondent's proof that Petitioner *did* have counsel, even though he had no federal or state right to that assistance through most of the period about which he complained (*see* Doc. 109, pp. 2-5, 109-1; Doc. 148, pp. 37-38, 148-4).  This factual error is critical and subject to review.

conclusions of law. The state court determined Petitioner's confession was voluntary, reliable, and not the product of coercion.[6] This Court's opinion does not discuss any of the OCCA's factual or legal findings as it was required to do under the AEDPA. *See Harrington v. Richter*, 562 U.S. 86, 101-102 (2011). Proper application of deference to the OCCA's factual findings and legal conclusions will result in a substantial likelihood of success.

This Court's factual findings have now been used to permit Petitioner to pass through state and federal procedural bars and have his petition reviewed. When Respondent, through the State of Oklahoma, is entitled to deference under the law, it should be entitled also to review of this Court's rulings appearing to take it away. Proper deferential findings would not have permitted Petitioner's petition to succeed because he did not present the proof necessary to allow him to overcome the time bar applied to him, the state bar of *laches*, or fall within any "actual innocence" exception. That Petitioner has failed to meet the burden of proof in light of the record, leads to a different result; that is, Respondent's Motion to Dismiss should have been granted.

Absent too is the weighing of all negative facts, or those tending to rebut Petitioner's allegations, such as Petitioner's incriminating admission to another inmate that, "I knew we would get caught" (Tr. III 205). This Court does not discuss or give any weight to the record of Petitioner's 1988 trial in determining the materiality of claims made by Petitioner. Instead, this Court granted

---

[6] The OCCA found that Petitioner's confession was corroborated by other evidence, voluntary, uncoerced, and it was not affected by any police misconduct – even in light of Petitioner's claim he was "fed . . . facts" in 1992 by police misconduct. *Fontenot*, 881 P.2d at 76-79. The OCCA set forth on the state court record nine (9) factual ways Petitioner's confession had been corroborated and likewise made determinative factual findings on the other issues that are the exact opposite of this Court's findings. Thus, the OCCA had already encountered these issues before, and on the merits. This Court was required to give great deference to what the OCCA had already decided in this case, and on the state court record. 28 U.S.C. §§ 2254(d); 2254(e)(1); *see McDaniel*, 558 U.S. at 133; *Eaton*, 931 F.3d at 1014-16 and n.7.

relief, in part, on hearsay about an alleged "snitch" who did *not* testify at Petitioner's trial (Doc. 151, pp. 58-59). This Court did not acknowledge or discuss the important fact in its analysis that the "snitch" *never testified* at the 1988 trial; thus, the information in the hearsay affidavit and elsewhere in Petitioner's petition could not have had any affect on the jury's verdict under review by this Court.

Further, this allegation was based primarily[7] on an allegation from the untested affidavit of the "snitch's" husband years later that the "snitch" had a deal with prosecutors. Such information is simply not credible enough to fit within the rare "actual innocence" exception (Doc. 151, p. 108). Nor did the Court consider how this information, arriving years later after the "snitch's" death, should have weighed in favor of upholding Respondent's *laches* bar, rather than against it. Because these facts weigh in favor of dismissing this matter, Respondent has a likelihood of success on appeal.

**D.      Conclusion.**

Respondent need not show that he will be meritorious on appeal in order for a stay to be granted. Rather, Respondent need only demonstrate that there are "questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996) (internal quotations omitted). That has been established here. Respondent desires a fair opportunity to present his arguments to the Court of Appeals for the Tenth Circuit. A stay of this Court's Judgment is necessary for that purpose.

---

[7] The vast majority of the other information upon which Petitioner based this type of claim was never "new" as he had access to it since 1992.

14

## II.

### THE STATE WILL SUFFER IRREPARABLE INJURY IF THE STAY IS NOT GRANTED.   FURTHER, GRANTING THE STAY WILL SERVE THE PUBLIC INTEREST AND WILL NOT SUBSTANTIALLY INJURE PETITIONER.

If the stay is not granted, Respondent's appeal will either become moot upon retrial of Petitioner by the State of Oklahoma or proceedings will be initiated to retry Petitioner, and the efforts of the Court and the parties will be rendered moot by a successful decision on the merits by the Court of Appeals for the Tenth Circuit.  This could potentially result in unnecessary work for the parties, and the trial court, all of which might be avoided by a favorable decision.  Oklahoma has a great interest in the preservation of its state court judgments and sentences.  *See Calderon v. Thompson*, 523 U.S. 538, 539 (1998).

Avoidance of unnecessary disruption of Oklahoma's criminal justice system is in the public interest as it supports respect for the rule of law.  Should a motion for stay be denied, the lawful conviction and sentence of Life Without Parole against Petitioner will be set aside and the State forced to suffer the expenses and efforts necessary to prove to a third competent jury that Petitioner is guilty and deserving of punishment, without the State enjoying review of this Court's order by the Court of Appeals.  This would amount to irreparable harm to Respondent.

Petitioner, however, cannot show that he would be prejudiced by a stay pending resolution of the appeal.  If this motion for stay is denied, Petitioner will continue to be incarcerated pending his retrial; Petitioner has strong reasons to flee a system he claims wrongly convicted him of murder and incarcerated him for many years.  Moreover, there is nothing to indicate that Petitioner's ability to defend himself at the retrial would be prejudiced by the delay occasioned by the pending appeal

to the Court of Appeals for the Tenth Circuit.

Finally, the public interest would be advanced by a stay of this Court's Judgment. This is a first-degree murder and kidnaping case. Petitioner has already been twice convicted and twice sentenced to death by two (2) juries, and finally agreed to serve a Life Without Parole sentence for the murder in this case. A stay will prevent initiation of unnecessary proceedings to retry Petitioner if the Court of Appeals grants Respondent's appeal. A successful appeal would save the public time and money in its pursuit of justice in Petitioner's case and would save the witnesses from having to return to court once again for potential proceedings that might never be essential if Respondent's appeal prevails. Especially, this Court should consider the great emotional toll on the surviving family members of the victim in this case, who have already been forced to relive the very painful circumstances of this murder so many times. By contrast to all these circumstances, an unsuccessful appeal would merely put the parties back in the present condition for the State to retry Petitioner.

## CONCLUSION

Based upon the foregoing argument and authority, Respondent's motion for a stay of this Court's August 27, 2019, Judgment (Doc. 152), pending appeal to the United States Court of Appeals for the Tenth Circuit, should be granted.

Respectfully submitted,

**MIKE HUNTER**
**ATTORNEY GENERAL OF OKLAHOMA**

**s/ MATTHEW D. HAIRE**
**MATTHEW D. HAIRE, OBA #14916**
**ASSISTANT ATTORNEY GENERAL**
313 NE 21st Street
Oklahoma City, OK 73105
(405) 521-3921
(405) 522-4534 Fax
Service email:  fhc.docket@oag.ok.gov

**s/ THEODORE M. PEEPER**
**THEODORE M. PEEPER, O.B.A. #19909**
**ASSISTANT ATTORNEY GENERAL**
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
(405) 522-4534 (Fax)
Service email: fhc.docket@oag.ok.gov

**ATTORNEYS FOR RESPONDENT**

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of September, 2019, I electronically transmitted the attached document to the Clerk of using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Robert Ridenour, OBA # 16038
Assistant Federal Defender
One West Third Street, Ste. 1225
Tulsa, OK 74103

Tiffany R. Murphy, Arkansas Bar # 2015057
790 N. Cliffside Drive
Fayetteville, AR 72701

**s/ MATTHEW D. HAIRE**
**s/ THEODORE M. PEEPER**

17