**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **KARL FONTENOT,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )   **Case No. 16-CV-69-JHP-KEW** |
| | ) |
| **SCOTT CROW, WARDEN,** | ) |
| | ) |
| **Respondent.** | ) |

**<u>RESPONSE TO PETITIONER'S REQUEST FOR
UNCONDITIONAL WRIT OF HABEAS CORPUS</u>**

The Attorney General of the State of Oklahoma, Gentner F. Drummond, appearing on behalf of the above-named Respondent, in response to Petitioner's *Request for Unconditional Writ of Habeas Corpus* ("Request"), filed in this case (Doc. 197), respectfully requests this Court deny Petitioner's Request and offers the following Brief in Support.[1] As Respondent will explain more fully below, this Court lacks jurisdiction to consider Petitioner's Request for the following reasons: 1) the terms of the conditional writ issued in this matter were satisfied; 2) Petitioner is not "in custody pursuant to the judgement of a state court" within the meaning of 28 U.S.C. § 2254; and 3) the *Younger* abstention doctrine prohibits this Court from interfering with retrial proceedings currently pending in state district court.

**<u>ARGUMENT AND AUTHORITY</u>**

On July 10, 2026, Petitioner filed the instant Request, asking this Court to "issue an unconditional writ of habeas corpus barring further prosecution . . . by the State of Oklahoma." (Doc. 197 at 2). In support of this request, Petitioner claims that the State of Oklahoma "has

---

[1] The instant Request filed by Petitioner will be referred to as (Doc. 197 at__). Citations to any other documents filed in this Court will likewise refer to the specific document number and to the electronically stamped CM/ECF header pagination.

abjectly failed" to retry Petitioner consistent with the conditional writ of habeas relief issued by

this Court and subsequently affirmed by the Tenth Circuit Court of Appeals. (Doc. 197 at 2); *see*

*Fontenot v. Allbaugh*, 402 F. Supp. 3d 1110, 1239-1240 (E.D. Okla. Aug. 21, 2019) (unpublished)

["*Fontenot I*"]; *Fontenot v. Crow*, 4 F.4th 982, 1082-1083 (10th Cir. 2021) ["*Fontenot II*"]. More

specifically, Petitioner's numerous complaints within his Request largely fall into the following

two categories: 1) the State has "done everything in . . . [its] power to delay setting an actual trial

date[;]" and 2) during the pending retrial proceedings, the State "conceded that it has no new

evidence in its prosecution" and stipulated that "it is impossible to have a fair trial due to the" age

of this case. (Doc. 197 at 2). In essence, Petitioner appears to claim that these allegations are

"exceptional circumstances" that convey continued jurisdiction upon this Court to revise its

original remedy of a conditional writ permitting the State to initiate retrial proceedings and instead

impose an unconditional one, completely barring re-prosecution. (Doc. 197 at 2-4). As shown

below, Petitioner's Request lacks merit and should be denied. In support hereof, Respondent

submits the following procedural history:

> **November 1984:** Petitioner was charged by Information in Pontotoc County
> District Court Case No. CRF-1984-183 with Robbery with a Dangerous Weapon,
> in violation of OKLA. STAT. tit. 21, § 801 (Supp. 1982) (Count I); Kidnapping, in
> violation of OKLA. STAT. tit. 21, § 741 (1981) (Count II); and Murder in the First
> Degree, in violation of OKLA. STAT. tit. 21, § 701.7 (Supp. 1982) (Count IV)[2], all
> arising from the 1984 robbery, abduction, and murder of Donna Denice Haraway.
> *Fontenot I*, 402 F. Supp. 3d at 1121
>
> **September 1985-August 1987:** After a joint trial with co-defendant, Thomas Ward,
> a jury convicted Petitioner on all counts and sentenced him to death for Ms.
> Haraway's murder. The jury also assessed twenty years imprisonment for Robbery

---

[2] Petitioner also faced a charge of First-Degree Rape, in violation of OKLA. STAT. tit. 21, § 1114 (Supp. 1983) (Count III); however, a preliminary hearing magistrate determined there was insufficient evidence to bind Petitioner over for this crime. *Fontenot I*, 402 F. Supp. 3d at 1121. The State successfully appealed this finding; however, the charge was ultimately dismissed by the State. *See Fontenot I*, 402 F. Supp. 3d at 1121; *State ex rel. Peterson v. Ward*, 707 P.2d 1217 (Okla. Crim. App. 1985).

with a Dangerous Weapon, and ten years imprisonment for Kidnapping. *Fontenot v. State*, 742 P.2d 31, 32 (Okla. Crim. App. 1987) ["*Fontenot III*"]. On direct appeal, the Oklahoma Court of Criminal Appeals ("OCCA") reversed Petitioner's convictions and sentences due to the erroneous admission of interlocking co-defendant confessions and remanded the case for a new trial. *Id*. at 32-33.

**June 1988-June 1994:** At the conclusion of Petitioner's separate retrial, he was again convicted on all counts and received sentences similar to those handed down in previous trial proceedings. *Fontenot v. State*, 881 P.2d 69, 73-74 (Okla. Crim. App. 1994) ["*Fontenot IV*"]. During direct appeal proceedings following Petitioner's retrial, the OCCA affirmed Petitioner's convictions as to all counts, as well as his sentences for the crimes of Robbery and Kidnapping; however, it remanded Petitioner's murder conviction for resentencing due to the trial court's failure to instruct the jury that life without parole was a punishment option. *Fontenot IV*, 881 P.2d at 74 n.2, 86. During resentencing proceedings, Petitioner waived his right to jury resentencing in exchange for a negotiated sentence of life without parole. *Fontenot I*, 402 F. Supp. 3d at 1122.

**July 2013-October 2015:** After decades of idle inaction, Petitioner unsuccessfully sought post-conviction relief in Pontotoc County District Court and the OCCA. *Fontenot I*, 402 F. Supp. 3d at 1122-1123.

**February 2016-August 2019:** After the conclusion of unsuccessful post-conviction proceedings, Petitioner sought federal habeas relief from this Court, resulting in a finding that Petitioner made a sufficient showing of actual innocence pursuant to *Schlup v. Delo*, 513 U.S. 298 (1995) and *McQuiggin v. Perkins*, 569 U.S. 383 (2013). *Fontenot I*, 402 F. Supp. 3d at 1126, 1129-1149; *Fontenot II*, 4 F.4th at 1056-1057. This Court utilized this actual innocence finding as a gateway to address the merits of the nine substantive grounds for relief alleged in Petitioner's Second Amended Habeas Petition. *Fontenot I*, 402 F. Supp. 3d at 1129-1149; *Fontenot II*, 4 F.4th at 1057-1059. Without the benefit of a merits response from Respondent, this Court found merit in each habeas claim and granted a conditional writ, ordering the State to either retry or release Petitioner from custody within 120 days of entry of the judgment. *Fontenot I*, 402 F. Supp. 3d at 1158-1240.

**September 2019:** Respondent perfected a timely appeal of this Court's ruling to the Tenth Circuit Court of Appeals. *See Fontenot II*, 4 F.4th at 1018.

**November 4, 2019:** The Tenth Circuit Court of Appeals stayed this Court's judgment in relation to the timeline to initiate retrial proceedings; however, it denied Respondent's request to stay Petitioner's release from custody. *Fontenot II*, 4 F.4th at 1018.

**December 19, 2019:** Petitioner was released from the custody of the Oklahoma Department of Corrections but remained under conditions of release pending the

3

outcome of Respondent's appeal. *Fontenot II*, 4 F.4th at 1018. These conditions have, since the initiation of retrial proceedings, expired. (*See* Doc. 197-4 at 17-18).

**July 13, 2021:** The Tenth Circuit issued an opinion wherein a majority of the panel agreed that Petitioner was entitled to habeas relief in the form of "permanent release from custody or a new trial," solely based upon Petitioner's claim that the State violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963).[3] *Fontenot II*, 4 F.4th at 1082-1083. For reference, the crux of Petitioner's *Brady* claim was that the Pontotoc County District Attorney's Office, at the time of Petitioner's 1984 prosecution, neglected to adequately review all exculpatory and impeachment evidence gathered by police and instead, received from law enforcement only a subset of investigator work ("the prosecutorial") with evidence relevant to the suspect(s) involved. *Id*. at 1013. Due to allegedly deficient law enforcement training, in conjunction with the prosecutors' failure to fully understand the scope of their obligations under *Brady*, Petitioner argued that he was deprived of materials upon which he could have relied. *Id*. at 1013-1014.

**June 6, 2022:** The United States Supreme Court denied Respondent's petition for writ of *certiorari* from the Tenth Circuit's decision. *See Crow v. Fontenot*, 142 S. Ct. 2777 (2022) ["*Fontenot V*"].

**August 30, 2022:** The Oklahoma Attorney General's Office appointed District 5 District Attorney, Kyle Cabelka, to initiate retrial proceedings against Petitioner on behalf of the State of Oklahoma.

**September 26, 2022:** Following the Supreme Court's June 6, 2022, denial of *certiorari*, due to a clerical error, the Tenth Circuit did not issue its mandate until this date. (Doc. 193).

**October 12, 2022:** To correct the delay in the issuance of its mandate, the Tenth Circuit recalled the September 26, 2022 mandate and directed "the Clerk's Office to reissue it *nunc pro tunc* to June 6, 2022." (Doc. 195). The Tenth Circuit also *sua sponte* extended "the 120-day period" to reinitiate retrial proceedings in Petitioner's

---

[3] The Tenth Circuit specifically stated:

Because our disposition of the Brady issue resolves this appeal, we do not reach the district court's analysis regarding any of [Petitioner's] constitutional claims. We note, however, that regarding several of those claims, the district court failed to accord proper AEDPA deference under § 2254(d) and (e) to the various state court decisions in this matter. ***Nothing in this opinion, or in our decision to affirm the grant of habeas relief, should be construed as affirmation or approval of the district court's approach to and resolution of those remaining constitutional claims.***

*Fontenot II*, 4 F.4th at 1061 n.50 (emphasis added) (internal citations omitted); *see also id*. at 1082 ("We thus affirm the district court's finding of nonharmless error based on *Brady* violations, without reaching the rest of [Petitioner's] constitutional claims.").

case, directing the State that if it wished "to retry . . . [Petitioner] again, it must commence proceedings . . . within 20 days of" October 12, 2022—i.e., by November 1, 2022. (Doc. 195).

**October 28, 2022:** The State of Oklahoma filed a *Motion to Set New Trial Date and a Request for Initial Status*, seeking to commence retrial proceedings in Petitioner's Pontotoc County District Court case, as contemplated by the conditional writ of habeas corpus. (*See* Doc. 197-2).

Additional dates will be discussed as necessary.

**A. This Court lacks jurisdiction over the instant Request because Petitioner was released from custody after the vacation of his conviction and the State of Oklahoma reinitiated prosecution within the period delineated by the Tenth Circuit's October 12, 2022 Order.**

As an initial matter, "[a] federal writ of habeas corpus does not 'generally bar a retrial of the petitioner on the charges underlying his defective conviction.'" *Douglas v. Workman*, 560 F.3d 1156, 1176 (10th Cir. 2009) (quoting *Capps v. Sullivan*, 13 F.3d 350, 352 (10th Cir. 1993)). "The effect of the writ is to vacate the conviction and release the petitioner from custody." *Capps*, 13 F.3d at 352. In "disp[osing] of matters as law and justice require," 28 U.S.C. § 2243, federal courts most frequently grant habeas relief in a manner that "require[s] the least intervention into the state criminal process." *Henderson v. Frank*, 155 F. 3d 159, 168 (3d Cir. 1998); *see also Capps*, 13 F.3d at 352 ("In fact, rather than barring a new trial, the district court normally should facilitate it by suspending the writ for a time reasonably calculated to provide the state an adequate opportunity to conduct the new trial."). Practically speaking, aside from granting a writ of habeas corpus and prescribing time limits for a state to either release the petitioner or correct the underlying problem, states largely retain discretion to fashion the precise remedy in a given case. *See Bastida v. Braniff*, 444 F.2d 396, 398 (5th Cir. 1971). This is because the goal of a habeas proceeding is not compensatory; "it is to determine whether a person is being confined in violation of basic norms of legality." *Allen v. Duckworth*, 6 F.3d 458, 460 (7th Cir. 1993); *Gibbs v. Frank*, 500 F.3d 202,

207 (3d Cir. 2007) ("[T]he Supreme Court [has] acknowledged that it has 'adhered to the principle that habeas corpus is, at its core, an equitable remedy.'" (quoting *Schlup*, 513 U.S. at 319)).

There are two types of federal habeas writs: unconditional and conditional. Unconditional writs effectively order the release of a habeas petitioner unconditionally and depending on the underlying error, may specify the release is with prejudice to rearrest and retrial. In contrast, conditional writs—such as that issued in this case—provide the State with the option of either releasing the petitioner, typically without prejudice to retrial, or curing the error that led to the writ's issuance. *See, e.g., Dugas v. Coplan*, 428 F.3d 317, 342 n.37 (1st Cir. 2005). Stated differently, conditional writs generally require the government to release a petitioner in the absence of some sort of remedial action, such as retrial. *Herrera v. Collins*, 506 U.S. 390, 403 (1993); *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) ("[T]his Court has repeatedly stated that federal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court."); *see also Wilkinson v. Dotson*, 544 U.S. 74, 87 (2005) (Scalia, J., concurring) (conditional writs "enable habeas courts to give States time to replace an invalid judgment with a valid one"). Importantly, "the sole distinction between a conditional and an absolute grant of the writ of habeas corpus is the former lies latent unless and until the state fails to perform the established condition, at which time the writ springs to life." *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006) ("Conditional grants of writs of habeas relief are final orders exactly like absolute grants, and they ordinarily operate automatically, that is, without the need for the district court to act further.").

In most cases, like the one at bar, a federal district court issuing a conditional writ will specify the amount of time the government has to either take remedial action or release the petitioner; if no timeline is specified, the government typically must do so within a reasonable

period. *See Richmond v. Lewis*, 506 U.S. 40, 52, (1992) (holding modified by *Brown v. Sanders*, 546 U.S. 212 (2006)). Moreover, a federal court typically retains jurisdiction to determine whether a state has complied with a conditional writ's terms; however, once those terms have been met, this avoids the actual writ's issuance and **concludes the federal court's jurisdiction over the matter**. *Pitchess v. Davis*, 421 U.S. 482, 490 (1975) (per curiam) ("[n]either Rule 60(b), 22 U.S.C.A. § 2254, nor the two read together permit a federal habeas court to maintain continuing supervision over a retrial conducted pursuant to a conditional writ granted by the habeas court."); *Franklin v. Lucero*, No. 22-2125, 2023 WL 2962260, *4 (10th Cir. April 19, 2023) (unpublished); *Jensen v. Pollard*, 924 F.3d 451, 454 (7th Cir. 2019) ("When a district court issues a conditional habeas writ, it retains jurisdiction to determine compliance. But once the State complies with the writ, the district court loses jurisdiction."); *see also Allah-U-Akbar v. Bradshaw*, 154 F.4th 482, 489 (6th Cir. 2025) ("'We recognize that a state's compliance with a conditional writ through vacatur of a petitioner's unconstitutional conviction or sentence within the window of time permitted by the habeas court's order generally will divest the court of jurisdiction.'" (quoting *Eddleman v. McKee*, 586 F.3d 409, 413 (6th Cir. 2009))).

As this Court is aware, the nature of the habeas relief granted in relation to Petitioner's *Brady* claim came in the form of a conditional writ requiring the State to either release or retry Petitioner within 120 days. *Fontenot I*, 402 F. Supp. 3d at 1158-1240; *Fontenot II*, 4 F.4th at 1082-1083. As indicated in the procedural history outlined above, this timeline was altered by the Tenth Circuit due to a clerical error, resulting in a delay in the issuance of the mandate in this case. (*See* Doc 195). To remedy this, the Tenth Circuit notified the parties that its July 13, 2021, judgment took effect on October 12, 2022, and provided that "if the State wishes to retry [Petitioner] again, it must commence proceedings to do so within 20 days of the date of this order." (Doc. 195). By

7

virtue of this language, the Tenth Circuit did not order that Petitioner's trial be completed within a fixed period of time, and the State fully complied with this directive by its timely October 28, 2022, filing requesting a new trial date and an initial status conference. (*See* Docs. 194, 195, 197-2). Furthermore, Petitioner was physically released from custody on December 19, 2019, prior to the reinstitution of trial proceedings; to date it is Respondent's belief that Petitioner *still* remains out of custody without supervision or conditions.[4] (*See* Doc. 197-4 at 46-47; Exhibit 1, Motion to Set Bond). These details indicate that the State's compliance with the terms of the conditional writ in this case are plain, and this Court no longer exercises jurisdiction in this matter. (*See* Doc. 195).

Importantly, the cases Petitioner cites in support of his claim that this Court retains jurisdiction to effectively change the nature of the conditional writ issued in this case are unpersuasive. Petitioner appears to argue that the scope of a federal court's jurisdiction in this context, which "includes certain collateral consequences such as removing a felony conviction, re-prosecution, or parole status" *also* extends to the manner in which subsequent retrial proceedings are conducted in state court after the vacation of the offending conviction. (*See* Request at 3). In support of this claim, Petitioner cites *Gentry v. Deuth*; however, he fails to acknowledge that the collateral consequences discussed in *Gentry* were those stemming from the *underlying criminal conviction that was the subject of habeas relief* because the government failed to comply with all

---

[4] During court proceedings on November 30, 2023 in Tulsa County District Court, the State indicated that since the Tenth Circuit's decision in this case, Petitioner had not been under any supervision, emphasizing "now that this case is back in State court, and because of where we're at, [Petitioner] in some way needs to be put back into the custody of the State of Oklahoma." (Doc. 197-4 at 17-18). The State's subsequent Motion for Bond filed January 7, 2026, during the time Pittsburg County Judge Mike Hogan presided over retrial proceedings, indicated Petitioner was arrested in February, 2025 for petit larceny and a warrant was issued for his arrest due to failing to appear for a municipal court date. (Exhibit 1 at 3). The State requested the state district court "set an adequate and appropriate bond[,] as well as any bond requirements to ensure that the public is protected . . . ." (Exhibit 1 at 4). To date, this motion remains outstanding.

of the conditional writ's terms. 456 F.3d at 693-694. Specifically, in finding that the district court's

subsequent nullification of the petitioner's criminal conviction was appropriate despite the fact

that she had already been released from custody, the Sixth Circuit held

> the Commonwealth obviously had no duty under the district court's order to take any action with respect to her person. However, [her] status as a convicted felon remained in force, as the Commonwealth did not nullify her conviction, and thus her . . . motion reasonably asked the court to enforce its order by making the conditional writ absolute. Therefore, we find that the district court retained jurisdiction to enforce its conditional grant of a writ of habeas corpus.

456 F.3d at 692. In other words, the petitioner in *Gentry* was requesting the district court to enforce

its order because

> [t]he Commonwealth unquestionably failed to grant [petitioner] a new trial, and therefore it failed to abide by the condition that the district court had established. As there was no need to release [petitioner] from incarceration, the only action required was to expunge [her] record of her unconstitutional felony conviction. The Commonwealth took no such action. [Petitioner] therefore filed her . . . motion asking for the essential relief contemplated by the conditional order, for the court's . . . order implicitly expected that the Commonwealth would vacate the prior judgment pursuant to seeking a new trial, and thus the Commonwealth's failure to seek a new trial effectively circumvented the district court's purpose.
>
> * * *
>
> [T]he law is absolutely clear that the writ releases the successful petitioner from the state's custody and, as we have discussed above, such release includes relief from the conviction's collateral consequences when it was the conviction itself that was found to be unconstitutional. As a practical, logical, and necessary matter, relief from the collateral consequences of an unconstitutionally obtained state criminal conviction effectively requires expungement of the conviction from the petitioner's record, and expungement of the record implies nullification of the unconstitutional conviction.

*Id*. at 692, 696.

Clearly, *Gentry* is distinguishable from the circumstances of Petitioner's case. Unlike the

government's actions there, here, after this Court issued a conditional writ, the State timely

appealed and requested a stay of this ruling, which was partially denied in the sense that Petitioner

was physically released from state custody. *Fontenot II*, 4 F.4th at 1018. Upon the Tenth Circuit's affirmance of this Court's grant of habeas relief, after the clerical error regarding the delay in issuing the mandate was resolved, Petitioner's conviction was vacated and the State of Oklahoma timely initiated retrial proceedings in state district court. (*See* Doc. 197-2) Simply put, all of the terms of the conditional writ were satisfied and Petitioner's current complaints in relation to his retrial proceedings are not within the realm of the "collateral consequences" contemplated in *Gentry*. *See Pitchess*, 42 U.S. at 490 (no necessity for a federal habeas court to maintain continued supervision over retrial proceedings granting by a conditional writ).

Petitioner's reliance on *Sibron v. New York*, 392 U.S. 40, 55-58 (1968), in support of the claim that "collateral consequences include any additional restrictions on [P]etitioner's liberty due to the direct result of an overturned conviction," fares no better. (Response at 2-3). This is because Petitioner fails to acknowledge that *Sibron* actually concerned the issue of mootness in the context of a criminal conviction that remained on the record of an offender who had already discharged his sentence; it did not address the specific issue at hand: whether this Court retains federal habeas jurisdiction to effectively retract its conditional writ permitting retrial and replace it with an unconditional one prohibiting it, after the State has complied with all conditions. *Compare Sibron*, 392 U.S. at 51-58 (holding criminal case involving a discharged sentence is moot only if "it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction[,]" and noting collateral consequences in this context include the use of the conviction to impeach credibility, enhance future sentences, or deny United States citizenship).

Petitioner nevertheless attempts to get around this jurisdictional issue by alleging the State's actions in re-prosecuting his case are malicious. As support for this assertion, Petitioner

largely claims: 1) the State has engaged in unreasonable delays in retrial proceedings in various ways; and 2) the State's case rests upon exceedingly weak evidence. Petitioner characterizes these allegations as "exceptional circumstance[s]" that seemingly support a conclusion that the State has not complied with the conditional writ in this case; Petitioner also appears to argue that this alleged noncompliance justifies the issuance of an unconditional one. Petitioner provides no authority that would revive this Court's jurisdiction after the conditional writ was satisfied. Because this Court lacks jurisdiction, the reasons for the delay in Petitioner's re-prosecution are immaterial. In any event, as discussed more fully below, not only do Petitioner's claims fail to acknowledge that the delays in the State's re-prosecution were largely due to *two successful appeals finding two different district court judges failed to correctly apply Oklahoma law*, they also misrepresent or omit key details that show the State is fully engaged in litigating the issues presented by Petitioner's re-prosecution.

> As an initial matter, The Tenth Circuit has held
>
> for a federal court to exercise its habeas power to stop a state criminal proceeding "special circumstances" must exist. In general, the constitutional violation must be such that it cannot be remedied by another trial, or other exceptional circumstances such that the holding of a new trial would be unjust.

*Capps*, 13 F.3d at 352-353 ("In this case, because nothing in the record suggests the constitutional violation was not redressable in a new trial, the district court . . . abused its discretion"). In other words, unconditional writs barring re-prosecution typically involve scenarios where the nature of the error is incurable. *Gentry*, 456 F.3d at 692. Examples of such scenarios include instances where re-prosecution would violate the Double Jeopardy Clause or a petitioner's right to a speedy trial. *See Burks v. United States*, 437 U.S. 1, 18 (1978); *Barker v. Wingo*, 407 U.S. 514, 522 (1972) (noting the right to a speedy trial "leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived"); *see also Satterlee v. Wolfenbarger*, 453 F.3d 362,

370 (6th Cir. 2006), *cert. denied*, 459 U.S. 1281 (2007) ("in extraordinary circumstances, such as when the state inexcusably, repeatedly, or otherwise abusively fails to act within a prescribed time period or if the State's delay is likely to prejudice the petitioner's ability to mount a defense at trial, a habeas court may forbid re-prosecution.") (quotation marks and citation omitted).

However, in instances "where nothing in the record suggests that the constitutional violation on which habeas corpus relief is predicated could not be redressed by holding a retrial, granting an unconditional writ constitutes an abuse of discretion." *Workman*, 560 F.3d at 1176 (finding grant of a conditional writ, as opposed to an unconditional one, for the "State's continuing *Brady* violations" when "nothing in the record . . . [indicated] irremediable error" was not an abuse of discretion). As the following procedural history shows, the State's actions in re-prosecuting Petitioner are neither malicious nor unethical; Petitioner's exceptional circumstances claim is premised on a combination of speculation and failure to confront certain unhelpful facts.

1.  **Procedural History of Pending Retrial Proceedings in Petitioner's case.**

After the State's timely reinitiation of trial proceedings, on November 29, 2022, the Pontotoc County District Court entered an Order of Recusal in Petitioner's case. (Exhibit 2, Order of Recusal). As a result, the Oklahoma Supreme Court appointed Tulsa County Associate District Judge Clifford J. Smith to preside over retrial proceedings. (Exhibit 3, Order dated December 2, 2022). On August 1, 2023, the State filed two pleadings: 1) *Motion for Hearing on Admissibility of Recorded Confession by Defendant on 10-19-84*; and 2) *Motion to Declare Witnesses Unavailable and Allow Use of Transcripts from Previous Testimony*; Petitioner filed written responses to each on October 20, 2023. *State v. Fontenot*, Case No. S-2024-205, slip. op at 3-4 (Okla. Crim. App. Oct. 2, 2025) (unpublished) ["*Fontenot VI*"].

12

On November 30, 2023, Judge Smith conducted hearings on both of the State's motions, placing emphasis on resolving the motion concerning whether Petitioner's confession to police would be admissible in Petitioner's retrial. At a later hearing held on December 15, 2023, Judge Smith ultimately determined that although he "was not bound by the federal habeas courts' findings, [he] would give 'great persuasive authority' to the federal district court's habeas conclusions," such that "the issue of the reliability of . . . [Petitioner's] confession was fully litigated by the parties and determined to be fatally unreliable." *Id*. at 4 (internal quotations omitted). However, Judge Smith did not, at that time, make a definitive ruling on Petitioner's request that the confession be suppressed.

Weeks later, on February 9, 2024, Petitioner filed a two-page *Motion to Dismiss with Prejudice*, essentially recapping what transpired at the hearings on November 30, 2023, and December 15, 2023, urging that his case be dismissed with prejudice. Approximately two months after the December hearing, on February 23, 2024, the parties convened for a final ruling on Petitioner's motion to suppress his confession. Before Judge Smith announced his ruling, Petitioner signaled that the parties had reached agreed-upon factual stipulations.[5] After accepting these stipulations, Judge Smith sustained Petitioner's motion to suppress his confession, explicitly acknowledging "*[t]his gives rise on part of the State to appeal*." (Doc. 197-6 at 4-5 (emphasis

---

[5] These stipulations were as follows:
> Stipulation Number 1. We stipulate to the findings of facts and the conclusions made by the Tenth Circuit in its July 13, 2021, opinion.
> Number 2. We stipulate that there is no new -- there has been no new evidence developed since the Tenth Circuit's opinion was handed down.
> And Stipulation Number 3. In light of the Tenth Circuit's findings, the absence of any new evidence since the Tenth Circuit's opinion was handed down, the loss of so much of the evidence from the original trial and the unavailability of many of the witnesses has compromised both sides' ability to move forward with this case.

*Fontenot VI*, at 4-5.

13

added)). Subsequently, the State, by and through the Oklahoma Attorney General's Office, timely perfected an appeal to the OCCA pursuant to OKLA. STAT. tit. 22, § 1053(6) (Supp. 2022). Notably, three days after the February 23, 2024 hearing, Petitioner filed a *Motion for Finding of Actual Innocence in Accordance with Courtney v. State* ("Actual Innocence Motion").

On October 8, 2024, the State filed an appellate brief in the OCCA arguing that the trial court abused its discretion in prematurely suppressing Petitioner's confession prior to trial because the issue of the confession's corroboration was a question to be determined at the time of trial, and not before. Petitioner responded to the State's brief on December 20, 2024.[6] Finding merit in the State's position, the OCCA, in an October 2, 2025 unpublished Summary Opinion, reversed the trial court's suppression order and remanded the case for further proceedings. *Fontenot VI*, at 8-13. In doing so, the OCCA highlighted: 1) the Tenth Circuit's ruling ordering Petitioner's "release from custody unless the State commenced new trial proceedings against him within a certain time[;]" and 2) the fact that the State had elected to retry him within the time limits prescribed. *Fontenot VI*, slip op. at 9. The OCCA also noted that under Oklahoma law, the practical effect of an order for new trial places "the parties in the same position as if no trial had been had" and "[a]ll testimony must be produced anew." *Id*. (quoting OKLA. STAT. tit. 22, § 951(A) (2021)). The OCCA further emphasized:

> [Petitioner's] new trial has not commenced. The material the Tenth Circuit had before it was gleaned from the prosecution's file created during its investigation of Haraway's murder [and] consisted of some witness statements, as well as some additional information obtained many years after the investigation. While the State did stipulate to the "findings of facts and conclusions" made by the Tenth Circuit and that "there has been no new evidence" since the Tenth Circuit's opinion, those

---

[6] In addition to his response brief, Petitioner also filed a *Motion to Dismiss Appeal and Brief in Support*, arguing, in essence, that the trial court's ruling was merely advisory and did not yet give rise to the State's right to appeal the decision below. The OCCA construed the ruling below as a final order and denied the defendant's efforts to dismiss the appeal on procedural grounds. *Fontenot IV*, at 8.

stipulations were for purposes of the subject hearing only. This is so because at this point in the retrial process, neither party knows what witnesses it will call or if its witnesses are available. There has been no evidence at all presented in the new trial.

*Id*. at 10.

On October 15, 2025, Cleveland County District Judge Thad Balkman, the Presiding Judge of the South-Central Administrative Zone, referred the matter to the Oklahoma Supreme Court for another judicial reassignment;[7] thereafter, Petitioner's case was assigned to District Judge Mike Hogan of Judicial District 18. On November 12, 2025, the parties convened for a scheduling conference, and a Scheduling Order was entered setting a pretrial conference date of May 22, 2026 and a June 15, 2026 trial date. (Exhibit 4, Scheduling Order). Thereafter, on November 19, 2025, Judge Hogan entered a minute order stating:

> The Court discussed the issue of a new jury panel, venue and scheduling issues. The parties agree to start a Jury Trial in this matter with a brand new jury panel; therefore, the Jury Trial is continued from beginning on June 15, 2026 . . . to beginning on July 20, 2026 . . . and [sic] be a ten (10) day trial. The parties are to set an Evidentiary Hearing in this matter prior to the Pre-Trial Conference Hearing setting. All parties agree [that] a *Jackson v. Denno* hearing and a hearing on corroboration issues will be needed in this matter. Pre-Trial Conference Hearing is to remain set on May 27, 2026 . . . .

(Exhibit 5, November 19, 2025 Minute Order). Additionally, on December 15, 2025, Judge Hogan set a hearing on various motions for January 20, 2026.[8] (Exhibit 10, December 15, 2025 Minute Order).

---

[7] During the pendency of the State's appeal, Associate District Judge Clifford Smith retired from the bench, effective May 1, 2025, thereby necessitating a new judicial reassignment upon remand.

[8] On January 9, 2026, the Oklahoma Attorney General's Office entered appearances as co-counsel for the State of Oklahoma to join DA Cabelka in this prosecution. Additionally, Ryan Stephenson, Assistant Executive Coordinator for the Oklahoma District Attorneys Council, also entered his appearance as co-counsel for the State on the same day. (Exhibit 6, Entry of Appearance as Co-Counsel for the State of Oklahoma; Exhibit 7, Oklahoma Attorney General's Entry of Appearance as Co-Counsel for the State of Oklahoma). Additionally, once State appellate proceedings concluded and retrial proceedings were again underway, Respondent filed responses to Petitioner's

15

At the beginning of the January 20, 2026 setting, the State informed Judge Hogan that it would be requesting his recusal in this case. (Doc. 197-8 at 5-6).  Based on the State's request, Judge Hogan conducted an *in camera* hearing in chambers, as prescribed by Rule 15(a) *Rules for District Courts of Oklahoma*, Title 12, Ch. 2, App. (2024). (Doc. 197-8 5-11, 13-24). After permitting the parties to make arguments on the record, Judge Hogan recessed the proceedings to review transcripts of two prior status conferences held on November 12, 2025, and November 19, 2025, because they formed the basis for the State's disqualification argument. (Doc. 197-8 at 4-11, 13-24). After resuming proceedings, Judge Hogan heard additional argument from the parties on the record and ultimately denied the State's informal disqualification request. (Doc. 197-8 at 19-24).

The parties then briefly discussed a timeline for the State to file a formal disqualification motion, with Judge Hogan indicating that he would set a hearing on this motion on a date that was agreeable to all parties. (*See* Doc. 197-8 at 24). In the days following the January 20, 2026 setting, Judge Hogan also entered a "Minute Order" which documented the proceedings on this date, including the *in camera* disqualification "[h]earing held in chambers, with the [c]ourt [r]eporter present, to address the State's Rule 15 request for this [c]ourt's recusal." (Exhibit 11, January 20, 2026 Minute Order). The Minute Order also documented: 1) Judge Hogan's reasoning for denying the State's informal recusal request ("the [c]ourt does not see any comments . . . that are concerning within the context of a Rule 15 request"); 2) the State's request for "off the record audio recordings" from the November 12, 2025, proceedings, which the State believed could prove relevant to its disqualification request.  These recordings were "to be retrieved by the official

---

motions for dismissal and finding of actual innocence on January 9, 2026. (*See* Exhibit 8, State's Response to Defendant's Motion to Dismiss with Prejudice; Exhibit 9, State's Response to Defendant's Motion for Finding of Actual Innocence).

[c]ourt [r]eporter . . . and provided to [c]ounsel for both parties;" and 3) a briefing schedule in relation to the disqualification issue, specifically indicating the State's intention to file a formal recusal motion, with a response by Petitioner due by January 27, 2026, and a formal disqualification hearing set for February 23, 2026. (Exhibit 11).

Relying on this January 20, 2026 Minute Order, the parties filed pleadings in relation to the disqualification issue in anticipation of the formal disqualification hearing. (*See* Exhibit 12, State's Motion to Disqualify Judge Mike Hogan; Exhibit 13, Karl Fontenot's Response to the State's Motion to Disqualify Judge Mike Hogan; Exhibit 14, State's Reply to Defendant's Response to Motion for Disqualification). Moreover, the State anticipated presenting evidence and argument during this setting to create a record of its disqualification claims, in the event this issue proceeded to Rule 15's re-presentment and appeal stages. *See* Rule 15(b), (c), *Rules for District Courts of Oklahoma*, Title 12, Ch. 2, App. (2024). However, this formal disqualification hearing never materialized because Judge Hogan issued an order on January 29, 2026[9] striking it, indicating that the State's recusal motion must be heard in front of the "Presiding Judge of the East Central Judicial District, Honorable Bret Smith[.]" (Exhibit 15).[10]

On February 10, 2026, the State filed a motion for reconsideration in relation to Judge Hogan's January 29, 2026 Order, arguing that his decision to transfer the disqualification issue to Judge Smith was premature because it wholly skipped the second procedural step delineated in

---

[9] This order was later file-stamped on February 11, 2026. (Exhibit 15, Order filed February 11, 2026).

[10] The Order also denied Respondent's motion for production of court reporter audio recordings, noting "unless a transcript is ordered and transcribed, the audio recording of the court reporter will not be released unless a dispute arises about the accuracy of the transcript[,]" in which case, the "district court will determine the correctness of the transcript pursuant to Rule 1.32(a), *Oklahoma Supreme Court Rules*, Title 12, App. 1." (Exhibit 15).

Rule 15, which required the formal disqualification motion initially be heard by the judge who is the subject of the recusal request.[11] (Exhibit 16). In response, Judge Hogan entered another Order on February 17, 2026, rejecting the State's reconsideration argument, indicating the State was "incorrectly appl[ying] it to the facts of this case." (Exhibit 17, Order on State's Motion for Reconsideration of Order Dated 1/29/26).

As a result of Judge Hogan's January 29, 2026 Order, Judge Smith set the disqualification issue for a hearing on February 23, 2026. The State subsequently filed a motion to strike this hearing, reemphasizing that Judge Hogan had skipped "an essential component of the Rule 15 disqualification process" and highlighting that Judge Hogan's actions were not in compliance with Oklahoma law. (Exhibit 18, State's Motion to Strike Hearing Before District Judge Brett Smith on February 23, 2026) (citing and quoting Rule 15(a), (b), *Rules for District Courts of Oklahoma*, Title 12, Ch. 2, App. (2024)). The State also signaled its intent to perfect an Application for Writ of Mandamus to the OCCA, emphasizing that Judge Hogan's action of striking the February 23, 2026 hearing effectively divested the State of the opportunity to present argument, witnesses, and evidence in support of its disqualification request, which in turn, frustrated the State's ability to "protect and preserve the record *before* it proceed[ed] to . . . [Rule 15's] re-presentment stage." (*See* Exhibit 18 (citing Rule 15 (a), (b), *Rules for District Courts of Oklahoma*, Title 12, Ch. 2, App. (2024); Rule 10.1, 10.6, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2021); *Simpson v. State*, 876 P.2d 690, 703 (Okla. Crim. App. 1994) (noting appellant bears the "responsibility to ensure this Court has a complete record for review.")) (emphasis in original)).

---

[11] Although the filing date for this motion reflects February 10, 2026, the certificate of service indicates it was actually provided to opposing counsel on February 6, 2026. (Exhibit 16, State's Motion for Reconsideration of Order Dated 1/29/26).

On February 27, 2026, the parties received an Order from Judge Smith noting that given the State's forthcoming mandamus action, the matter would not yet be heard.

The State timely perfected its request for extraordinary relief on March 3, 2026 by filing an Application to Assume Original Jurisdiction and Petition for Writ of Mandamus and Brief in Support ("Mandamus Petition"). (Exhibit 19, Application to Assume Original Jurisdiction and Petition for Writ of Mandamus and Brief in Support). On March 24, 2024, Petitioner's counsel filed a request to expedite proceedings, requesting a speedy disposition of the State's Mandamus Petition and on April 7, 2026, the OCCA issued an order directing Judge Hogan to respond to the State's mandamus claim. (Exhibit 20, Motion to Expedite Proceedings; Exhibit 21, Order Directing Response). After Judge Hogan complied with the OCCA's request, on May 15, 2026, the OCCA granted the State's Mandamus Petition, finding that Judge Hogan denied the State a formal recusal hearing guaranteed by Oklahoma law; the OCCA further directed the trial court to formally rule on Petitioner's January 21, 2026 motion to disqualify . . . after permitting [the State] to present evidence and argument during a formal hearing." (Exhibit 22, Response to Court of Criminal Appeals Order Dated April 7, 2026; Exhibit 23, Order Granting Extraordinary Writ).

Pursuant to the OCCA's directive, Judge Hogan set a formal recusal hearing on June 4, 2026; in the time leading up to this date, the State filed a *Renewed Motion for Production of Court Reporter's Audio Recordings* and issued a subpoena duces tecum in an attempt to obtain this evidence prior to the hearing. (Exhibit 24, State's Renewed Motion for Production of Court Reporter's Audio Recordings). In response, the court reporter retained her own counsel and filed a motion to quash the State's subpoena. (Exhibit 25, Special Entry of Appearance and Motion to Quash; Exhibit 26, State's Response to Court Reporter's Motion to Quash Subpoena). During the

19

June 4, 2026 recusal hearing, Judge Hogan initially determined that based on "the limited purpose

of" recusal proceedings, the trial court retrieved the audio recordings requested by the State to

> rule on the State's Renewed Motion for Production of Court Reporter's Audio
> Recordings and the State's Motion to Disqualify . . . . If the Court does not believe
> there are any statements made on the audio recordings that are cause for recusal,
> the audio recordings may be released to both parties. If the Court believes otherwise
> and the Court grants the recusal, the State's Renewed Motion for Production of
> Court Reporter's Audio Recordings will be moot . . . .

(Exhibit 27, June 4, 2026 Minute Order #1). Ultimately, after Judge Hogan conducted this review

of the recordings, although he indicated that he did not discover "any statements violating the Code

of Judicial Conduct, . . . in the interest of judicial economy and out of an abundance of caution,"

he nevertheless recused "from this matter and request[ed]" judicial reassignment. (Exhibit 28, June

4, 2026 Minute Order #2). In other words, the State's efforts to disqualify Judge Hogan from

presiding over retrial proceedings were well-founded and meritorious, and clearly justified the

additional months of litigation it took for the State to ensure a fair forum for both sides.

In the wake of this recusal ruling, Petitioner's matter was promptly reassigned to Judge

Carson Brooks, who set a status conference for the parties on July 28, 2026. (Exhibit 29, Order

Setting Status Conference). Largely due to the appeals and judicial reassignments, there are

multiple pretrial motions in Petitioner's case that remain outstanding, including a *Motion to

Dismiss for Lack of a Constitutional Speedy Trial, Statutory Speedy Trial*, that Petitioner filed on

July 14, 2026. (Exhibit 30).

## 2. The retrial proceedings in this case do not qualify as an exceptional circumstance prohibiting re-prosecution.

As stated, Petitioner appears to argue that in the time since the State timely initiated retrial

proceedings pursuant to the conditional writ issued in this case, it has engaged in "delaying . . . re-

trial at all costs," and this, in conjunction "with the lack of witnesses and evidence satisfies an

exceptional circumstance" that warrants this Court's intervention in the form of prohibiting the State from re-trying petitioner at all. (*See* Doc. 197 at 4). Respectfully, the above-outlined procedural history does not support Petitioner's contention, but it does demonstrate three crucially important points about the State's re-prosecution of Petitioner.

First, Petitioner's retrial proceedings, in total, have lasted approximately three years and eight months. During that time, the State has taken these proceedings extremely seriously and, despite Petitioner's claims otherwise, has advanced two *meritorious* appeals concerning important procedural and evidentiary issues, which took a combined period of approximately two years to be resolved. The State has properly initiated legitimate and meritorious appellate review that is geared towards ensuring: 1) evidence is properly considered for admission at the appropriate time; and 2) the State of Oklahoma receives a fair trial in front of an impartial judge capable of making unbiased evidentiary rulings. These actions are not the type of conduct indicative of noncompliance with the conditional writ issued in this matter, nor is it egregious in the sense that it justifies the issuance of an unconditional one.

Second, the procedural history in this case likewise indicates that the State was not solely responsible for the time that has elapsed since the initiation of retrial proceedings. For example, Judge Smith's retirement, Judge Hogan's refusal to follow correct recusal procedure, and the parties *agreeing* to reset the trial date in this case due to legitimate jury logistical issues, are all examples of delays that cannot be laid solely at the State's feet.

Finally, this history also demonstrates that far from letting this case languish in limbo, the State is actively litigating legal issues in preparation for the anticipated retrial, as evidenced by: 1) responding to motions; 2) requesting hearings; 3) attending status conferences; 4) providing input for scheduling orders; and 5) *requesting a trial date*. (*Compare* Exhibits 4-5, 8-12, 14, 16, 24, 26

21

*and* Exhibit 31, State's Motion for Pre-Trial Discovery *with* Request at 6 ("At no point in the past three and a half years has . . . the State . . . moved to set a discovery deadline, pretrial hearing dates, or a trial date.")). Petitioner's assertion that the State is engaging in unethical misconduct ignores the facts: the State is diligently attempting to prosecute this case while availing itself of the same legal processes afforded to any litigant in a criminal case.

Based on the foregoing, Petitioner's claims in support of his assertion that: 1) the State has not complied with the terms of the conditional writ issued in this case; or 2) the circumstances of his retrial proceedings warrant the issuance of an unconditional one, are unfounded. To be sure, to find otherwise in this case would effectively "transform conditional habeas corpus relief from an opportunity to replace an invalid judgment with a valid one, to a general grant of supervisory authority over state trial courts." *Jennings v. Stephens*, 574 U.S. 271, 277-278 (2015) (internal quotations and citations omitted); *cf. Woodfox v. Cain*, 805 F.3d 639, 648 (5th Cir. 2015) (holding district court abused its discretion in granting unconditional writ despite the fact that "forty years had passed since the crime at issue and a number of witnesses had passed away"; noting that district court "failed to explain why these issues could not be addressed by a *state* court first at retrial" and reasoning that "[f]ederal habeas courts . . . should let state courts address constitutional and evidentiary issues in the first instance.") (emphasis in original). Accordingly, because the State has fully complied with the terms of the conditional habeas writ in this case, this Court's jurisdiction is terminated. Petitioner's Request must be denied.

**B. This Court lacks jurisdiction because Petitioner is not "in custody" within the meaning of 28 U.S.C. § 2254.**

In addition to the above, this Court also lacks jurisdiction over Petitioner because he is no longer "in custody pursuant to the judgement of a state court" which amounts to a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a), (b)(1). In *Maleng v.*

22

*Cook*, 490 U.S. 488 (1989), the United States Supreme Court noted that § 2254's "in custody" language

> [h]as not required that a prisoner be physically confined in order to challenge his sentence on habeas corpus. In *Jones v. Cunningham* . . . we held that a prisoner who had been placed on parole was "in custody" under his unexpired sentence. We reasoned that the petitioner's release from physical confinement under the sentence in question was not unconditional; instead, it was explicitly conditioned on his reporting regularly to his parole officer, remaining in a particular community, residence, and job, and refraining from certain activities.

*Maleng*, 490 U.S. at 491 (citing *Jones v. Cunningham*, 371 U.S. 236, 242 (1963)) (emphasis in the original) (internal citations omitted). *Maleng* also discussed another decision relevant to this issue: *Carafas v. LaVallee*, 391 U.S. 234 (1968). *Carafas* involved a situation where the petitioner was serving time under the sentence that was challenged in his habeas application at the time it was filed, but was subsequently "unconditionally discharged from custody" because the sentence expired "while his appeal from the denial of habeas relief" by a lower court was pending before the Supreme Court. *Maleng*, 490 U.S. at 491 (citing *Carafas*, 391 U.S. at 237-238). The *Maleng* Court noted:

> [In *Carafas*], [t]he State argued that the unconditional discharge rendered the case moot. We rejected this argument, holding that the "collateral consequences" of the petitioner's conviction—his inability to vote, engage in certain businesses, hold public office, or serve as a juror—prevented the case from being moot. We went on to say however, that the unconditional release raised a "substantial issue" as to the statutory "in custody" requirement. While we ultimately found that requirement satisfied . . . [in *Carafas*], we rested that holding *not* on the collateral consequences of the conviction, but on the fact that the petitioner had been in physical custody under the challenged conviction at the time it was filed. The negative implication of this holding is, of course, that once a sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual "in custody" for the purposes of habeas attack on it.

*Maleng*, 490 U.S. at 491-492 (internal citations omitted) (emphasis in original).

Here, the above-outlined history of Petitioner's state and federal proceedings indicates that, in compliance with this Court's conditional writ issued in this case, Petitioner's sentence was vacated and he was physically released from state custody. Currently, he *remains* out of custody and not subject to any state or federal bond, supervision conditions, or restrictions on his freedom—i.e., no "collateral consequences"—and therefore, is not "in custody pursuant to the judgement of a state court." *See* 28 U.S.C. § 2254. Although the State has tried to rectify the complete lack of supervision over Petitioner in requesting that a bond be established for him during the pendency of these retrial proceedings (*See* Doc. 197-4 at 46-47; Exhibit 1), as of yet, that matter has not yet been addressed by the State court. Given Petitioner's nearly unfettered freedom from even minimal supervision or a baseline bond amount, he is certainly not "in custody" for purposes of a habeas jurisdiction inquiry. Petitioner's failure to satisfy this fundamental AEDPA requirement precludes this Court from presently exercising jurisdiction in this case.

## C.  This Court must abstain under *Younger v. Harris*, 401 U.S. 37, 54 (1972).

Finally, the fact that Petitioner has pending retrial proceedings in state district court triggers mandatory abstention under *Younger v. Harris*, 401 U.S. 37, 54 (1971). The abstention doctrine under *Younger* provides that "federal courts should not interrupt ongoing state criminal proceedings when adequate state relief is available." *Walck v. Edmonson*, 472 F.3d 1227, 1232 (10th Cir. 2007). Thus, federal courts must abstain when three elements are met:

> "(1) There is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."

*Walck*, 472 F.3d at 1233 (quoting *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003)). Thus, absent "extraordinary circumstances," federal courts must

abstain when these three elements are present. *Id*. In the present matter, Respondent submits that each of these elements are satisfied: First, there are ongoing criminal retrial proceedings pending in Pontotoc County State District Court[12]; second, Pontotoc County State District Court and the OCCA are adequate *fora* to hear Petitioner's claims; and third, the nature of Petitioner's claims relate to the adequacy of the state criminal justice process, application of state evidentiary rules, and the sufficiency of the evidence making up the State's case, which implicates Oklahoma's important and axiomatic "interests in enforcing its criminal law through proceedings in its state courts . . . ." *Fisher v. Whetsel*, No. 04-6400, 142 F. App'x 337, 339 (10th Cir. July 20, 2005) (unpublished). Further, based on the analysis in Subsection A, *supra*, Petitioner fails to identify any "extraordinary circumstances" that would warrant federal intervention. *See Younger*, 401 U.S. at 54 (creating *Younger* doctrine exceptions when the claimant shows "bad faith, harassment, or any other unusual circumstance that would call for equitable relief."); *Phelps v. Hamilton*, 122 F.3d 885, 889-890 (10th Cir. 1997) (noting petitioner must "come forth with additional, supplemental evidence regarding . . . alleged bad faith to withstand *Younger* abstention" and "mere allegations of bad faith or harassment" will not suffice); *Walck*, 472 F.3d at 1233 (finding extraordinary circumstances where a threatened state prosecution would violate the Double Jeopardy Clause). Consequently, this Court should abstain from adjudicating Petitioner's Request.

## CONCLUSION

For the foregoing reasons, Petitioner this Court lacks subject-matter jurisdiction in the instant matter. Petitioner's Request must be denied.

---

[12] Underscoring the ongoing nature of the criminal retrial proceedings, Petitioner filed a motion in state district court on July 14, 2026, even after the filing of the instant Request for Unconditional Writ of Habeas Corpus (Doc. 197). (*See* Exhibit 30).

25

Respectfully submitted,

**GENTNER F. DRUMMOND**
**ATTORNEY GENERAL OF OKLAHOMA**

**s/ CHRISTINA ANN BURNS**
**CHRISTINA ANN BURNS, OBA # 31006**
**ASSISTANT ATTORNEY GENERAL**
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Fax: (405) 522-4534
Service email: fhc.docket@oag.ok.gov

**ATTORNEYS FOR RESPONDENT**


## <u>CERTIFICATE OF SERVICE</u>

**X**      I hereby certify that on July 24, 2026, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the Following ECF registrants.

Tiffany Murphy
Andrea D. Miller

<u>s/ Christina A. Burns</u>

26