IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KARL FONTENOT,<br><br>Petitioner,<br><br>v.<br><br>SCOTT CROW, WARDEN,<br><br>Respondent. | CIVIL ACTION<br>6:16-cv-00069-RAW |

**PETITIONER'S REPLY TO THE RESPONDENT'S REPONSE TO REQUEST FOR UNCONDITIONAL WRIT OF HABEAS CORPUS**

Comes now, Karl Fontenot, by and through undersigned counsel submitting this reply brief. Mr. Fontenot asserts that despite the Respondent's position, this Court has jurisdiction to determine whether the State has, in fact, complied with this court's order granting a conditional writ of habeas corpus. Respondent argues that the State's initial filing in state court within the timeframe satisfied both this Court's and the Tenth Circuit Court of Appeals' requirements for compliance. (Doc. 200, p. 5). Further, Respondent argues that *Younger v. Harris*, 401 U.S. 37 (1972) precludes this Court's authority to rule. It does not. The *Younger* doctrine does not apply. (Doc. 200, p. 24). However, if it did apply, Mr. Fontenot satisfies the bad faith exception to *Younger* requiring this Court's intervention. Mr. Fontenot will address these issues along with clarifying several factual misrepresentations made by Respondent. By not addressing every point made by Respondent, Mr. Fontenot in no way concedes those points or accedes to Respondent's analysis.

Based on laws from both the Tenth Circuit Court of Appeals and its sister circuits, it is settled that a habeas corpus court will retain jurisdiction over the case to ensure compliance with its conditional order. *See Burton v.* Johnson, 975 F.3d 690, 693 (10th Cir. 1992); *Gentry v. Deuth,* 456 F.3d 687, 692 (6th Cir. 2006); *D'Ambrosio v. Bagley*, 656 F.3d 379, 381(6th Cir. 2011); *Wolfe v. Clark*, 718 F.3d 277, 293 (4th Cir. 2013) ("The purpose of a conditional order, is "essentially accommodations accorded to the state. . . The conditional nature of the order provides the state with a window of time within which it might cure the . . . error." *Satterlee v. Wolfenbarger*, 453 F.3d 362, 369 (6th Cir. 2006) quoting *Phifer v. Warden*, 53 F.3d 859, 864-65 (7th Cir. 1995). As such, habeas courts can bar retrials or re-prosecutions when that conditional order is not met. *See Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1993); *Hannon v. Maschner*, 981 1142, 1145 (10th Cir. 1992). It is within this Court's "jurisdiction to pass upon any issues which are not expressly or impliedly within the scope of that mandate." *Burton*, 975 F.2d at 693. This includes whether or not as part of this Court's and the Tenth Circuit's opinions, that the mandate would preclude further re-prosecution.

This Court's conditional order after granting the Writ of Habeas Corpus stated:

> **ACCORDINGLY**, this Court finds Petitioner has established the actual innocence gateway removing the procedural impairments from his Second Amended Petition for Writ of Habeas Corpus, and all his claims are deemed exhausted. Respondent's Motion to Dismiss Second Amended Petition is **DENIED.** Mr. Fontenot's Second Amended Writ of Habeas Corpus is **GRANTED** and it shall issue, **unless within one hundred twenty (120) days of the entry of this Order the State grants Petitioner a new trial** or, in the alternative, orders his permanent release from custody.

(Doc. 151, p. 190) (emphasis added).

The Tenth Circuit's Opinion echoed the district court's "We AFFIRM the district court's grant of habeas relief and lift our stay of the district court's order granting a new trial. **If the State wishes to try Mr. Fontenot once again for the kidnapping and murder of Ms. Haraway, it**

**must do so within 120 days of the issuance of this order.**" *Fontenot v, Crow*, 4 F.4th 962, 1083 (10th Cir. 2021) (emphasis added). After the Supreme Court denied certiorari, the mandate failed to be properly issue by the clerk of court in accordance with Federal Rule of Appellate Procedure 41(d)(4). *See* Ex. 1. In that order signed by the clerk, it stated,

> Accordingly, we recall the mandate issued September 26, 2022, and direct the Clerk's Office to reissue it *nunc pro tunc* to the June 6, 2022.
>
> In addition, we *sua sponte* extend the 120-day period set forth in our July 13, 2021 opinion and further clarified in orders issued July 23, 2021 and August 6, 2021. If the State wishes to retry Mr. Fontenot again**, it must commence proceedings to do so within 20 days of the date of this order.**

*Id*. (emphasis added). The original intent of this Court along with the Tenth Circuit's opinion was that Mr. Fontenot's trial should have been held within 120 days. This rule that a trial must occur is the standard in this circuit as well as others. *See Capps*, 13 F.3d. at 351 ("unless a new trial [is] held in 90 days"); *Satterlee v. Wolfenbarger,* 453 F.3d 362, 369 (6th Cir. 2006) (circuit affirmed the district court's order granting of immediate release due to the State's failure to comply with the conditional writ); *D'Ambrosio v. Bagley*, 656 F.3d 379, 381 (6th Cir. 2011) (barring re-prosecution after the state failed to hold a trial within 180 days of the district court's order); *Harvest v. Castro*, 531 F.3d 737, 750 (9th Cir. 2008) (circuit ordered unconditional writ after the state failed to comply with 60 day retrial). Both this Court and numerous others seek to ensure the quick compliance by a state in rectifying their constitutional violations with the imposition of a conditional order. Several circuits have allowed expanded time upon request by the state to the federal court. *See Gilmore v. Bertrand*, 301 F.3d 581 (7th Cir. 2002) (per curiam); *Chambers v. Armontrout*, 16 F.3d 257 (8th Cir. 1994); *Harvest v. Castro*, 531 F.3d 737 (9th Cir. 2008); *Moore v. Zant*, 972 F.2d 318, 319 (11th Cir. 1992) (per curiam) When those state actors fail to comply, they are met with the imposition of the bar of re-prosecution.

The ambiguity between this Court's and Tenth Circuit's and the Clerk's order has allowed the very intent of both courts to be ignored while Mr. Fontenot languishes in state court. This was not the intent when his writ of habeas corpus was granted and affirmed. The expansive constitutional violation that deprived him of due process in two prior trials has not been rectified by the actions of Respondent. At minimum, this Court should hold a hearing to ascertain whether the conditional order imposed by this Court and the Tenth Circuit have been complied with by Respondent.

Further, it is clear that the core constitutional violation of this case, the *Brady v. Maryland*[1] violation, establishes exceptional circumstances. This Court may consider exceptional circumstances which make compliance impossible. "In general, the constitutional violation must be such that it cannot be remedied by another trial, or other exceptional circumstances exists such that the hold of a new trial would be unjust." *Capps v. Sullivan*, 13 F.3rd 350, 352 (10th Cir. 1993); see also *Wolfe v. Clarke*, 718 F.3d 277, 290 (4th. Cir. 2013) (recognize that a habeas court could find a "extremely rare and unique circumstance" baring retrial). Respondent ignored the very heart of the problem with their efforts to retry Mr. Fontenot. They lack any new evidence, numerous witnesses have died, while agreeing with the factual conclusions made by the Tenth Circuit regarding the dearth of any evidence against him.

As both this Court and the Tenth Circuit found in minute detail the extensive and pervasive nature of the withheld evidence shattered a weak case against Mr. Fontenot.

> "The absence of this evidence was prejudicial. Its disclosure would have created a reasonable probability of acquittal, for the suppressed evidence is significant enough to disturb an already highly questionable verdict by fostering a reasonable doubt that did not otherwise exist. . . We thus determine that [t]the convictions before us, hanging on the barest of threads and dependent on the omission of exculpatory evidence . . .'"

---

[1] 373 U.S. 83 (1963)

*Fontenot*, 4 F.3d at 1082. Both parties agree that the findings by Tenth Circuit, establishing the pervasive problems with the ability to now have a fair trial forty years after the first constitutional violations took root. Now, Respondent seeks any means to minimize the exceptional circumstances that now exist due to their own actions. They also agree they are entitled to a fair trial. However, neither party can achieve such a trial and Respondent does not deny that. In fact, Respondent has stipulated that there is no new evidence that would change the incredibly weak case against Mr. Fontenot. Respondent also agrees that now this case is even weaker given the loss of factual witnesses and evidence. These are hard facts that make a fair trial an impossibility.

Furthermore, Respondent tries to argue that by filing motions, Mr. Fontenot has delayed these proceedings or agreed to it. However, the State of Oklahoma bears the burden of proof and persuasion yet has not moved in any meaningful way to set a trial date or advance the state proceedings in any substantive way. While Mr. Fontenot has had to repeatedly request trial judges be appointed and ask for trial dates to be set, the State has remained silent.[2] And after Respondent appealed Judge Hogan's order suppressing the confession, Mr. Fontenot offered to concede the error that the trial court made returning the case to Judge Hogan to continue to move the case forward. Instead, on November 5, 2024, Respondent stated it wanted to pursue the appeal. An appeal which delayed the case another eighteen months. Respondent's assertions that they are taking the state proceedings, "extremely seriously" is dubious considering they concede their lack any evidence and their actions caused additional witnesses to die. They continue to act in bad faith in this case as they have done for years.

---

[2] On two occasions, Mr. Fontenot requested the Chief of the Oklahoma Supreme Court appoint a trial judge to move the case along despite the State's best efforts. Those motions were filed on October 14, 2025, and June 15, 2026. Ex. 2.

Finally, Respondent asserts that *Younger v. Harris*, 401 U.S. 37 (1971), precludes this Court from ruling on the Mr. Fontenot's request because of the ongoing state court proceedings. *Younger* is inapplicable to this case as this Court has jurisdiction to determine compliance its order. However, even if it does apply, the bad faith exception would impede *Younger*'s preclusion.

A *Younger* abstention is based on four factors with one exception that must also be evaluated.

> "the Court set out a three-part test for determining whether a federal court should abstain in favor of a state proceeding. Before a federal court abstains, it must determine that: (1) the state proceedings are ongoing; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to present the federal constitutional challenges.."

*Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997) quoting *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). These factors are not met here and therefore; the doctrine does not preclude action by this Court.

However, even if Respondent could satisfy those factors, the analysis does not end there. The Court established that a plaintiff may overcome this test by showing, "in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate." *Perez v. Ledsma*, 401 U.S. 82, 84 (1971). The Tenth Circuit's analysis of what constitutes bad faith on the part of a prosecution is critical to Mr. Fontenot's case. The *Phelps* Court established that, a plaintiff must show three factors of bad faith or harassment.

> There are three factors that courts have considered in determining whether a prosecution is commenced in bad faith or to harass: (1) **whether it was frivolous or undertaken with no reasonably objective hope of success;** (2) whether it was motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights; and (3) **whether it was conducted in such a way**

> **as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions**.

122 F.3d 885 at 889 (emphasis added). Two of these factors are clearly present in the current prosecution establishing the extraordinary circumstance that needs this Court's intervention.

Respondent agrees that this case not only was weak when it was originally tried but there is currently nothing factually new that would change from the prior two trials that Mr. Fontenot endured but now a third meaningless prosecution that has dragged on by the State with no trial date in sight.[3] Obviously, this is a frivolous endeavor with no hope of a conviction. In both this Court's and the Tenth Circuit's opinions pointed out the numerous flaws of Mr. Fontenot's confession. *See Fontenot*, 4 F.4th at 1002-1006 (detailing the factual flaws in the confession). Because the confession is the only evidence the prosecution has, it has fought tooth and nail to keep it viable which is why an eighteen-month delay was necessary in their estimation. The delay served to keep the prosecution stalled while their hopes hung on the OCCA would make the confession mandatory evidence despite its lack of any truthfulness or corroboration. Respondent continues to use every means to delay this case now five years out with no trial date equates a frivolous prosecution in bad faith.

These same facts also constitute a third trial as harassment. With the numerous deceased witnesses who impact both sides, no meaningful testimony can now be taken with the impact of all the new factual evidence gleaned from the more than thirty years of prosecution misconduct in depriving all of it from the defense. Mr. Fontenot should not endure a third trial when the prosecution is delaying and obfuscating the state court proceedings. This Court has the authority

[3] Both parties stipulated to the factual findings of the Tenth Circuit Court of Appeals and the lack of any new evidence.

and evidence to stop a meritless prosecution that is demonstratively moving in bad faith. There is no violation of *Younger* here, but a plethora of reasons to bar further state proceedings against Mr. Fontenot.

Respectfully submitted

DATED: August 18, 2026

By: /s/ *Tiffany R. Murphy*
TIFFANY R. MURPHY
Arkansas Bar No. 2015057
790 N. Cliffside Drive
Fayetteville, AR 72701
d.malovent@gmail.com

ANDREA DIGILIO MILLER, OBA17019
Oklahoma Innocence Project
800 N Harvey Avenue, Suite 317
Oklahoma City, Oklahoma 73102
Telephone: (405) 208-6161
e-mail: admiller@okcu.edu
Attorneys for Petitioner Karl Fontenot

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Oklahoma by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By: /S/ Andrea Digilio Miller
ANDREA DIGILIO MILLER